| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lewis R. Landau (CA Bar No. 143391)<br>Attorney-at-Law<br>22287 Mulholland Hwy., # 318<br>Calabasas, California 91302<br>Voice & Fax: (888) 822-4340<br>Email:  Lew@Landaunet.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

</div>

| In re:<br><br>  Lisa Frances Platt,<br><br><br><br><br><br><br><br>                                      Debtor(s). | CASE NO.: 2:18-bk-21394 BB<br>CHAPTER: 11 |
|---|---|
| | <div align="center">**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)**</div> |
| | DATE: 10/15/2019<br>TIME:  10:00 am<br>COURTROOM: 1539 |

| **Movant:**  Platinum Loan Servicing, Inc. |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 09/24/2019

Lewis R. Landau, Attorney at Law
_____
Printed name of law firm (if applicable)

Lewis R. Landau
_____
Printed name of individual Movant or attorney for Movant

/s/ Lewis R. Landau
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 2                          F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☒ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 205 North Tigertail Road
   *Unit/suite number*:
   *City, state, zip code*: Los Angeles, CA 90049

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __1__):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter   ☐ 7  ☒ 11  ☐ 12  ☐ 13
   was filed on (*date*) __09/28/2018__.

   b. ☒ An order to convert this case to chapter   ☒ 7  ☐ 11  ☐ 12  ☐ 13   was entered on (*date*) __09/16/2019__.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

   (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

   (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

   (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

   (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

   (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

   (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 3                              **F 4001-1.RFS.RP.MOTION**

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):


6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
9/16/19 Financing Order attaching schedule of liens and payments ECF # 166 attached as Exhibit 6.
Order denying without prejudice Movant's first and only motion for relief from stay attached as Exhibit 7.

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2.  ☒  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☐  Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐  Confirmation that there is no stay in effect.

5.  ☐  The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐  The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☒  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:

   ☒  without further notice, or  ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐  Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒  The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   ☒  without further notice, or  ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐  The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

   ☐  without further notice, or  ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐  Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒  If relief from stay is not granted, adequate protection shall be ordered.

14. ☐  See attached continuation page for other relief requested.


Date:  __09/24/2019__

Lewis R. Landau, Attorney at Law
_____
Printed name of law firm (*if applicable*)
Lewis R. Landau
_____
Printed name of individual Movant or attorney for Movant

/s/ Lewis R. Landau
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Scot Fine _____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as (*state title and capacity*): Chief Executive Officer

    c.  ☐  Other (*specify*):

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached):*

3.  The Movant is:

    a.  ☐  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

    b.  ☐  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

    c.  ☒  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☒  Beneficiary.

    d.  ☐  Other (*specify):*

4.  a.  The address of the Property is:

        *Street address*: 205 North Tigertail Road
        *Unit/suite no.*:
        *City, state, zip code*: Los Angeles, CA 90049

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        See Exhibit 1.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 6                                    **F 4001-1.RFS.RP.MOTION**

5. Type of property (*check all applicable boxes*):

a. ☒ Debtor's principal residence     b. ☐ Other residence
c. ☐ Multi-unit residential     d. ☐ Commercial
e. ☐ Industrial     f. ☐ Vacant land
g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

a. ☐ Sole owner

b. ☒ Co-owner(s) (*specify*): through revocable trust with Wayne H. Platt

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☐ The Debtor ☐ did ☐ did not list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

    The deed was recorded on (*date*) _____.

7. Movant holds a ☐ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 1____.

b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 2____.

c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property: See detailed beneficiary demand a true, accurate and correct copy of which is attached hereto as Exhibit 3.

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 3000192.64 | $ | $ 3000192.64 |
| b. | Accrued interest: | $ | $ | $ 651791.85 |
| c. | Late charges | $ | $ | $ 66000 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ [incl. in 8(e)] |
| e. | Advances (property taxes, insurance): | $ | $ | $ 475093.65 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): 9/11/19 | $ | $ | $ 4,193,078.14 |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

a. Notice of default recorded on (*date*) 04/19/2018____ or ☐ none recorded.

b. Notice of sale recorded on (*date*) 07/30/2018____ or ☐ none recorded.

c. Foreclosure sale originally scheduled for (*date*) 08/31/2018____ or ☐ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled. **[postponed pending stay]**

e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*      Page 7      **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit  3     is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒  (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $ 27,500                   for the month of
    September         20 19 .

   b. Number of payments that have come due and were not made:  24   . Total amount: $ 660,000

   c. Future payments due by time of anticipated hearing date (*if applicable*):

    An additional payment of $ 27,500               will come due on (*date*) 10/01/2019 , and on the 1st    day
    of each month thereafter. If the payment is not received within 10     days of said due date, a late charge of
    $ 2,750               will be charged to the loan.

   d. The fair market value of the Property is $ 9,500,000           , established by:

    (1) ☒  An appraiser's declaration with appraisal is attached as Exhibit  4    .

    (2) ☐  A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

    (3) ☐  A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

    (4) ☐  Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

    Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Mr. Cooper Mortgage Co | $ | $ 3,544,820.12 |
| 2nd deed of trust: | Movant | $ | $ 4,228,261.34 |
| 3rd deed of trust: | Elderlife Financial Lending, LLC | $ | $ 666,205.88 |
| ~~Judgment liens:~~ | 4th DOT: Stingray | $ | $ 24,260 |
| Taxes: | IRS and LACTC [POC #1 $44,314] | $ | $ 109,699 |
| Other: | 5th: Luxury Asset Capital | $ | $ 350,000 |
| **TOTAL DEBT: $** 8,923,246.34 | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit  5 & 6   and consists of:

    (1) ☐  Preliminary title report.

    (2) ☒  Relevant portions of the Debtor's schedules.

    (3) ☒  Other (*specify*): 9/16/19 Financing Order ECF # 166 [liens 1-3 include accruals through 10/15/19]

   g. ☒  **11 U.S.C. § 362(d)(1) - Equity Cushion:**
    I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 1,726,919               and is  17     % of the fair market value of the Property. *[Equity cushion decreases to 9% after including 8% sale costs].*

   h. ☒  **11 U.S.C. § 362(d)(2)(A) - Equity:**
    By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 576,754    *[$0 after sale costs]*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 8                    **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ _760000_____ (estimate based upon __8_____% of estimated gross sales price)

j. ☒ The fair market value of the Property is declining because:
The equity cushion is declining because accruals on senior liens and taxes not paid and case pending for one year.  Per Debtor's MORs #s 1-10, no post-petition payments made on secured debt.

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                         $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                                              $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                                  $[                              ]

TOTAL POSTPETITION DELINQUENCY:                                  $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                        Page 9                                        **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
            Chapter: _____  Case number: _____
            Date dismissed: _____  Date discharged: _____  Date filed: _____
            Relief from stay regarding the Property ☐ was ☐ was not  granted.

        2. Case name: _____
            Chapter: _____  Case number: _____
            Date dismissed: _____  Date discharged: _____  Date filed: _____
            Relief from stay regarding the Property ☐ was ☐ was not  granted.

        3. Case name: _____
            Chapter: _____  Case number: _____
            Date dismissed: _____  Date discharged: _____  Date filed: _____
            Relief from stay regarding the Property  ☐ was ☐ was not  granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                      Page 10                      **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


   09/23/2019        Scot Fine
   *Date*              *Printed name*                         *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                  Page 11                  **F 4001-1.RFS.RP.MOTION**

**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Movant,
Platinum Loan Servicing, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

|  |  |
|---|---|
| In re<br><br>Lisa Frances Platt,<br><br><br><br><br><br>Debtor. | Case No.: 2:18-bk-21394 BB<br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY**<br><br>Date:    October 15, 2019<br>Time:    10:00 a.m.<br>Place:   Courtroom 1539; Judge Bluebond<br>         United States Bankruptcy Court<br>         255 East Temple Street, 15th Floor<br>         Los Angeles, CA 90012 |

The following memorandum of points and authorities by Platinum Loan Servicing, Inc.

("PLS") is filed in support of the foregoing motion for relief from stay in the chapter 11 case filed

by Lisa Frances Platt ("Debtor"). For all these reasons, PLS requests that the Court grant the

motion.

///

///

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## RELIEF FROM STAY SHOULD BE GRANTED BECAUSE PLS IS INADQUATELY

4

## PROTECTED, THE DEBTOR LACKS EQUITY IN THE TIGERTAIL PROPERTY

5

## AND THE CASE WILL BE CONVERTED TO CHAPTER 7

6

*1. Case Summary.*

7    Debtor filed her chapter 11 petition on September 28, 2018.  In Debtor's chapter 11 status

8    conference report [ECF # 32], Debtor admitted that this case was filed due to Movant's

9    foreclosure sale and that the goal of the case was to promptly sell the Debtor's multimillion dollar

10   residence located at 205 North Tigertail Avenue, Los Angeles, California ("Tigertail").  PLS's

11   appraisal confirms the Tigertail Property is currently valued at $9,500,000. *See* Exhibit 4.  As

12   confirmed in her status report, Debtor had been listing the property *since October 2017* – now

13   two (2) years of alleged efforts to sell or refinance while not making a mortgage payment.

14   While in chapter 11, and instead of expeditiously moving to sell the Tigertail Property, the

15   Debtor opted to pursue a refinancing strategy.  In retrospect, this strategy was an abject failure

16   and may have been designed to simply buy the Debtor time to live in the Tigertail Property rent

17   free for the last year.  After a year in chapter 11 and the accrual of enormous amounts of unpaid

18   interest and administrative expenses, the time has come to grant creditors relief from stay to

19   protect their interests in the Tigertail Property.

20   Debtor's first order authorizing her to refinance the Tigertail Property was entered on June

21   13, 2019 [ECF # 133] ("First Financing Order") and gave the Debtor until July 22, 2019 to close

22   the financing or suffer the appointment of a chapter 11 trustee.  When the financing did not timely

23   close, on July 24, 2019 the Court ordered the appointment of a chapter 11 trustee [ECF # 142].

24   Sam S. Leslie ("Trustee") was thereafter appointed chapter 11 trustee.  On September 16, 2019

25   and with the Trustee's cooperation, the Court entered its Order Approving Amended Stipulation

26   for Second Order Approving Post-Petition Financing, a true and correct copy of which is attached

27   hereto as Exhibit 6 ("Second Financing Order").

28

**013**

1    Pursuant to the Second Financing Order, the Debtor was given until September 18, 2019

2 to close the financing and the Trustee was required to file a declaration by September 23, 2019

3 confirming that the financing closed.  The financing did not timely close and the Trustee did not

4 file the required declaration by September 23, 2019.  Per the terms of the Second Financing

5 Order, "The failure to timely file and serve the "no later than September 23, 2019" declaration

6 shall also trigger the conversion of the case to Chapter 7".  *See* Exhibit 6 ¶ G.  Thus, the "trigger"

7 event has occurred and the chapter 11 case shall convert to chapter 7.

8    As set forth in Exhibit A to the Second Financing Order and as of October 15, 2019, the

9 following mortgages and liens encumber the Tigertail Property:

10    1.    Debtor's first priority mortgage is a $3,544,820 obligation to "Mr. Cooper

11 Mortgage Co." ("Cooper") accruing interest at **$13,595 per month** (excluding late fees).

12    2.    PLS's second priority mortgage balance is $4,228,261, accruing interest at

13 **$31,038 per month** (excluding late fees).

14    3.    A third priority mortgage to Elderlife Financial Lending, LLC totals $666,206 and

15 accrues interest at **$11,624 per month**.

16    4.    There are at least three other liens: IRS ($65,385); Stingray ($24,260); and Luxury

17 Asset Capital ($350,000).

18    5.    The Los Angeles County Tax Collector filed Proof of Claim # 1 for $44,314 in

19 unpaid taxes (although the Second Financing Order states that property taxes are current).  Debtor

20 also failed to pay utilities resulting in a DWP utility services claim for $45,065 [POC # 7].

21    6.    In addition, Debtor has claimed a $100,000 homestead exemption in the Tigertail

22 Property.  *See* ECF # 24.

23    Thus, the Debtor is accruing approximately ***$60,000 monthly in unpaid interest*** on the

24 Tigertail Property liens while the case remains pending and unresolved.  Over the one (1) year

25 pendency of the case, that accrual ***totals $720,000 of equity lost*** due to the Debtor's inaction in

26 either selling, refinancing or renting the Tigertail Property.  As set forth herein, PLS is now

27 inadequately protected against further loss and the Debtor lacks equity in the Tigertail Property.

28 PLS again requests that the Court grant relief from stay.

**014**

*2. PLS's First Motion for Relief Denied Without Prejudice in Favor of Sale or Refi.*

On January 15, 2019 PLS moved for relief from stay [ECF # 86] on the grounds of lack of adequate protection, the Debtor's failure to make mortgage payments, insufficient insurance coverage and Debtor's January 4, 2019 withdrawal of her application to employ a real estate broker [ECF # 75].  The Court deferred PLS's motion for relief from stay in a February 5, 2019 tentative ruling stating, "Set deadline by which debtor will need to have filed motion to sell property.  Continue hearing to give debtor a reasonable (further) opportunity to market and sell the property."  The Court set an April 8, 2019 deadline for Debtor to file a sale motion and continued the relief from stay hearing to April 9, 2019.  *See* ECF # 101.

On April 1, 2019 the Debtor's spouse filed a declaration confirming that the Debtor terminated the MLS listing for the Tigertail Property and switched from a sale strategy to a refinancing strategy.  *See* ECF # 111.  On April 10, 2019 the Court denied without prejudice PLS's motion for relief from stay giving the Debtor until April 30, 2019 to file either a sale motion or financing approval motion.  *See* ECF # 114.  On April 30, 2019 the Debtor filed her refinancing motion [ECF # 117] and set the matter for hearing on June 5, 2019, leading to the June 13, 2019 entry of the Court's First Financing Order [ECF # 133] which required closing the financing by July 22, 2019.  When the Debtor defaulted on that deadline, the Trustee was appointed. ***The foregoing confirms that the Debtor has utterly wasted the last year in chapter 11 making absolutely no case progress, accruing a massive amount of unpaid interest on secured debt and administrative expense all while living rent free at the expense of creditors.***

*3. Relief from Stay is Warranted Under 11 U.S.C. §§ 362(d)(1), (2).*

The accrual of a year of interest on the Cooper lien senior to PLS and the accrual of unpaid interest to PLS leads to PLS being inadequately protected constituting cause for relief from stay pursuant to 11 U.S.C. § 362(d)(1).  Based on PLS's $9,500,000 appraisal [Exhibit 4 hereto], PLS's equity cushion stands at 17%, excluding consideration of carrying costs and costs of sale in the event that PLS forecloses.  Assuming 8% costs of sale ($760,000), PLS's equity cushion drops to 8%.  An 8% equity cushion does not provide adequate protection of PLS's interests.  *See* In re Mellor, 734 F.2d 1396, 1401 (9th Cir.1984) (10% equity cushion satisfies the

adequate protection standard); <u>Pacific First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)</u>, 164 B.R. 99, 104 (9th Cir. B.A.P. 1994) (11.45% equity cushion provided adequate protection).

The Debtor has failed to make 24 monthly mortgage payments to PLS and PLS had to make a $385,824 advance to Cooper to avoid a foreclosure of the senior lien.  "[T]he failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code." *See* <u>In re Everton Aloysius Sterling</u>, 543 B.R. 385, 392 (Bankr. S.D. N.Y. 2015 ); *citing* <u>In re Schuessler</u>, 386 B.R. 458, 480 (Bankr. S.D. N.Y. 2008); <u>Campora v. HSBC Bank USA, N.A. (In re Campora)</u>, 2015 WL 5178823, at *5, 2015 U.S. Dist. LEXIS 117862, at *17 (E.D.N.Y. Sept. 3, 2015) ("A debtor's failure to make post-petition mortgage payments constitutes sufficient cause to modify an automatic stay."); <u>In re Elmira Litho, Inc.</u>, 174 B.R. 892, 903 (Bankr. S.D. N.Y. 1994) ("Without quantifying the decline in value, the creditor can often establish its prima facie case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments."); <u>In re Bushee</u>, 319 B.R. 542, 552 (Bankr. E.D. Tenn. 2004) (*citing* <u>Price v. Del. State Police Fed. Credit Union (In re Price)</u>, 370 F.3d 362, 373 (3d Cir. 2004) ("A persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay.")); <u>In re Vicente</u>, 446 B.R. 26, 32 (Bankr. D. Mass. 2011) (chapter 7 debtor's failure to make thirty-five mortgage payments constituted cause to terminate the automatic stay under § 362(d)(1)).  The Debtor's failure to make mortgage payments to Cooper and PLS has seriously impaired PLS's interests in its collateral and that impairment is now an urgent issue to avoid a loss from further delay.

The monthly accrual of $45,000 in unpaid senior interest to Cooper and PLS renders PLS inadequately protected.  Once it obtains relief from stay, PLS will need to republish its Notice of Sale to set a foreclosure sale because more than a year has passed since the first foreclosure sale date.  After foreclosure, it will still likely take several months to recover possession of the Tigertail Property and position the property for prompt sale.  Per the appraisal report attached hereto as Exhibit 4, if properly priced, the Tigertail Property will take approximately ninety (90)

**016**

days to market and sell.  Thus, PLS is likely at least six (6) months away from selling the Tigertail Property once it obtains relief from stay.  With the additional accrual of senior interest to Cooper, taxes and costs of sale, PLS clearly lacks adequate protection in its collateral.

In addition, now that conversion of the case to chapter 7 has been "triggered" under the Second Financing Order, relief from stay is also warranted under 11 U.S.C. § 362(d)(2) based on the Debtor's lack of equity in the Tigertail Property.  All liens total $8,923,246 as of October 15, 2019.  *See* Motion at 8.  Based on the $9,500,000 appraisal, the net equity is only $576,754, which is just 6% of the valuation.  That 6% net equity is certain to be consumed by costs of sale.  *See* ECF # 34 (CBRE employment application confirming 4.5% broker fee).  However, with the continuing diminution of the net equity at the rate of $60,000 per month through interest accrual, it is clear that the Debtor lacks equity in the Tigertail Property.

The Court gave the Debtor multiple opportunities over the last year to resolve the estate's financial problem through either a sale or refinance of the Tigertail Property.  The Debtor has squandered those opportunities by initially marketing the property at an excessive price of $10,900,000 [ECF # 34 at 11] and then withdrawing the property from sale in favor of a refinancing transaction that has proven itself utterly incapable of closure, even with the assistance of the Trustee.  During this entire period, the Debtor has received the benefit of living in a multimillion dollar mansion, without paying a dime to any of her multiple mortgage holders.  Nor has the Debtor rented the Tigertail Property to generate payments to her secured creditors to maintain the *status quo*.  Instead, the Debtor has abused the chapter 11 process to the detriment of every other party involved in the case.  The time has come for the Court to grant relief from stay to PLS so that PLS may protect its interests by realizing on its collateral before that collateral suffers deterioration to the point of a certain loss.

For all these reasons, the Court should grant the motion.

Dated:  September 23, 2019

**Lewis R. Landau**
**Attorney at Law**

By:*/s/ Lewis R. Landau*
Lewis R. Landau
Attorney for Movant

# EXHIBIT 1

 

This page is part of your document - DO NOT DISCARD

## 20170252183

 

Pages:
0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/03/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 64.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 64.00 |



**LEADSHEET**



201703030970014

**00013430537**



008181002

**SEQ:**
**01**

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

E48 75667

**019**

Priority Title

**Recording Requested By**
Marquee Funding Group, Inc. BRE #01870113
& NMLS #267442
Scot R. Fine BRE #01110594 &
NMLS #328235


**When Recorded Mail To**
Marquee Fundng Group, Inc.
24025 Park Sorrento, Suite 150
Calabasas  CA  91302

Title Order No. E75667

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. 9988

This Deed of Trust, made this **23rd** day of **February 2017**, among the Trustor, **Wayne H. Platt and Lisa F. Platt, as Trustees of the Platt Family Trust U/D/T dated November 7, 2000** (herein "Borrower"), **Marquee Funding Group, Inc.** (herein "Trustee"), and the Beneficiary, **S & R Income Fund I, LP as to an undivided 100.000% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

### GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Los Angeles**, State of California: SEE EXHIBIT "A" ATTACHED HERE TO AND MADE A PART HEREOF.

**APN: 4403-011-006**, which has the address of **205 North Tigertail Road Los Angeles CA 90049** (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

### THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **02/23/2017**, in the principal sum of U.S. **$3,000,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9988/Platt Family Trust
Page 1 of 6

**020**

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join  in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower on the Property or at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Platinum Loan Servicing, Inc., 24025 Park Sorrento Suite 150 Calabasas CA 91302** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this

Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

---

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

---

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No._____, Official Records of County Recorder of _____ County, California. The original Trustor _____

Trustee _____ and the original

the original Beneficiary _____ and

Mail to: _____

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

The Platt Family Trust U/D/T Dated November 7, 2000 by:

Borrower    Wayne H. Platt, Trustee          Date    2/24/17

The Platt Family Trust U/D/T Dated November 7, 2000 by:

Borrower    Lisa F. Platt, Trustee          Date    2/24/17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____

On _____  before
me,_____
personally appeared

_____

_____

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____                    (Seal)

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty,** all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Signature of Beneficiary (the "LENDER")            Date         Signature of Beneficiary (the "LENDER")            Date

When recorded, mail to

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of Los Angeles )

On February 24, 2017 before me, Tamara Solovy Baehr (Notary Public)
           Date                    Here Insert Name and Title of the Officer

personally appeared Wayne H Platt and Lisa F Platt
                        Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

TAMARA SOLOVY-BAEHR
Commission # 2145677
Notary Public - California
Los Angeles County
My Comm. Expires Mar 10, 2020

Place Notary Seal Above

─────────────────── OPTIONAL ───────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: : _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual      ☐ Attorney in Fact | ☐ Individual      ☐ Attorney in Fact |
| ☐ Trustee      ☐ Guardian or Conservator | ☐ Trustee      ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**026**

Exhibit A

## LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1, OF TRACT 19365, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CALIFORNIA, AS PER MAP RECORDED IN BOOK 530, PAGE(S) 8, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4403-011-006

# EXHIBIT 2

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 9988                    Date: 02/23/2017
**Marquee Funding Group, Inc. BRE # 01870113 & NMLS # 267442**                    Calabasas, California
**Scot R. Fine BRE # 01110594 & NMLS # 328235**

205 North Tigertail Road Los Angeles CA 90049
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$3,000,000.00 (**this amount will be called "principal"), plus interest, to the order of **S & R Income Fund I, LP as to an undivided 100.000% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **03/02/2017**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☑ Interest Only    ☐ Fully Amortized    ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 11 | Monthly beginning May 1, 2017 | 11.00% | $27,500.00 |
| 1 | April 1, 2018 | 11.00% | $3,027,500.00 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **04/01/2018** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Platinum Loan Servicing, Inc., 24025 Park Sorrento Suite 150 Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$25.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the**

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

first Six (6) month(s) of the term, a prepayment penalty equal to the difference between Six (6) month(s) of interest and the date of prepayment shall be due tendered.

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate, shall be effective unless it is in writing."

The Platt Family Trust U/D/T Dated November 7, 2000 by:     The Platt Family Trust, U/D/T Dated November 7, 2000 by:

| | | |
|---|---|---|
| _(signature)_ | 2/24/17 | _(signature)_     2/24/17 |
| Borrower   Wayne H. Platt, Trustee | Date | Borrower   Lisa F. Platt, Trustee     Date |

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

_____

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____     _____

_____     _____

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

9988/Platt Family Trust
Page 2 of 3

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

9988/Platt Family Trust
Page 3 of 3

# EXHIBIT 3

## Platinum Loan Servicing Inc.
24025 Park Sorrento Suite 150
Calabasas, CA 91302
(818) 222-5222

9/11/2019

Wayne H. Platt, Trustee
205 NorthTigertail Road
Los Angeles, CA 90049
Account: 9988

## BENEFICIARY'S DEMAND FOR PAYOFF

Dear Wayne H. Platt, Trustee

You are authorized to use the following amounts to pay off the above-mentioned loan.  All necessary legal documents will be forwarded to the trustee for Full Reconveyance upon receipt of payment in full.

| Payoff Date | 9/11/2019 |
|---|---|
| Maturity Date | 4/1/2019 |
| Next Payment Due | 11/1/2017 |
| Interest Rate | 11.000% |
| Interest Paid-To Date | 10/1/2017 |
| Principal Balance | $3,000,192.64 |
| Unpaid Interest | $0.00 |
| Accrued Interest From 10/1/2017 To 9/11/2019 | $651,791.85 |
| Unpaid Late Charges | $5,500.00 |
| Accrued Late Charges | $60,500.00 |
| Unpaid Charges   *For additional details see itemization attached | $475,048.65 |
| Prepayment Penalty | $0.00 |
| Other Fees *For additional details see itemization attached | $45.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$4,193,078.14** |

Please add **$1,034.80** for each additional day past **9/11/2019**.

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.  **Please note that this demand expires on Platinum Loan Servicing Inc.**, at which time you are instructed to contact this office for additional instructions (DEMAND FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

Make disbursement check payable to: **Platinum Loan Servicing Inc.**

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Sincerely,

Karen Larson
Loan Servicing Manager
(818) 222-5222

## ITEMIZATION OF UNPAID CHARGES

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|---------------|----------------|------------------|-----------|
| 05/09/2018 | Advanced SBS Fees | 0.000% | $7,582.24 | $0.00 | $7,582.24 |
| 07/17/2018 | Advance to the 1st | 11.000% | $385,824.66 | $49,749.95 | $435,574.61 |
| 09/05/2018 | Advanced Legal Fees | 0.000% | $19,642.15 | $0.00 | $19,642.15 |
| 09/05/2018 | Advanced Legal Fees | 0.000% | $2,425.00 | $0.00 | $2,425.00 |
| 11/05/2018 | Landau Fees | 0.000% | $594.00 | $0.00 | $594.00 |
| 07/22/2019 | Advances Trustee fees | 0.000% | $6,743.24 | $0.00 | $6,743.24 |
| 09/04/2019 | Advanced Insurance | 11.000% | $585.98 | $1.43 | $587.41 |
| 09/05/2019 | Apprasil Fee | 0.000% | $1,900.00 | $0.00 | $1,900.00 |
| | | | | Total | $475,048.65 |

## ITEMIZATION OF OTHER FEES

| Description | Amount |
|-------------|--------|
| Demand Fee | $0.00 |
| Reconveyance Fee | $45.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| Total | $45.00 |

# EXHIBIT 4

1

### DECLARATION OF JUSTIN DRUIAN

2    I, Justin Druian, do hereby declare:

3         1.        My name is Justin Druian and I am a certified and licensed California Real Estate

4    Appraiser.  My Office of Real Estate Appraisers identification number is AR028441.

5         2.        I have no connections with or interests in the property of Lisa Platt.  On September

6    11, 2019 I completed an appraisal report for 205 N. Tigertail Road, Los Angeles, California 90049

7    ("Tigertail Property") for a fixed contract price.

8         3.        Attached hereto is a true, correct and complete copy of my appraisal report dated

9    September 5, 2019 which is incorporated herein by reference.  The facts, assumptions, conditions

10   and opinions stated therein are true, correct and accurate to the best of my knowledge and belief.

11   As set forth in detail therein, I conclude that the market value for the Tigertail Property was

12   $9,500,000 as of the date of the report.

13        I declare under penalty of perjury under the laws of the United States of America that the

14   foregoing is true and correct to the best of my knowledge and belief.

15        Executed this 23rd day of September 2019.

16

17

18

19   _____

    Justin Druian

20

21

22

23

24

25

26

27

28

| Borrower | N/A | | | | | | File No. | 02802JD |
|---|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | | |
| City | Los Angeles | County | Los Angeles | | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | | |

**TABLE OF CONTENTS**

Exterior-Only ........................................................................................................... 1
Additional Comparables 4-6 .................................................................................. 7
General Text Addendum ......................................................................................... 8
Market Conditions Addendum to the Appraisal Report ................................... 12
Location Map ............................................................................................................ 13
Aerial Map ................................................................................................................ 14
Subject Property Profile ........................................................................................ 15
Plat Map ................................................................................................................... 16
Subject Photos ........................................................................................................ 17
Additional Subject Photos ..................................................................................... 18
Comparable Photos 1-3 ......................................................................................... 19
Comparable Photos 4-6 ......................................................................................... 20
Comparable MLS Photos ....................................................................................... 21
Additional Comparable Photos ............................................................................. 22
Additional Comparable Photos ............................................................................. 23
Appraiser's License ................................................................................................ 24
E & O Insurance ...................................................................................................... 25
UAD Definitions Addendum ................................................................................... 26

**037**

Exterior-Only Inspection Residential Appraisal Report | File # 02802JD | N/A

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| SUBJECT | | | | |
|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | City Los Angeles | State CA | Zip Code 90049 |
| Borrower N/A | Owner of Public Record See attached addenda. | | County Los Angeles | |
| Legal Description | Tract # 19365 Lot 1 | | | |
| Assessor's Parcel # 4403-011-006 | | Tax Year 2018 | R.E. Taxes $ 44,314 | |
| Neighborhood Name Brentwood | | Map Reference 631-G3 | Census Tract 2623.03 | |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0 | ☐ PUD | HOA $ 0 | ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | | | |
| Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe) | | | | |
| Lender/Client Marquee Funding Group, Inc. | Address 24025 Park Sorrento Suite, 150, Calabasas, CA 91302 | | | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No | | | | |
| Report data source(s) used, offering price(s), and date(s). DOM 20;The subject was recently listed on 01/30/2019 for $10,900,000 (MLS #19429412; | | | | |
| Hurwitz James Company; Bob Hurwitz; 310-701-0880. | | | | |

| CONTRACT | |
|---|---|
| I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. | |
| Contract Price $ | Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No | Data Source(s) |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No | |
| If Yes, report the total dollar amount and describe the items to be paid. | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| NEIGHBORHOOD | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values | ☐ Increasing ☒ Stable ☐ Declining | | | PRICE | AGE | One-Unit 70 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit 10 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | Low 2,735 | 0 | Multi-Family 10 % |
| Neighborhood Boundaries | Boundaries are north by Canyons, south by W Sunset Blvd, east by 405 | | | | | | High 22,700 | 89 | Commercial 10 % |
| Freeway and west by 26th St. | | | | | | | Pred. 8,057 | 6 | Other 0 % |
| Neighborhood Description | See Attached Addenda | | | | | | | | |
| Market Conditions (including support for the above conclusions) | See Attached Addenda | | | | | | | | |

| SITE | | | | | |
|---|---|---|---|---|---|
| Dimensions 103.92 x 215.16 x 100.01 x 242.8 | Area 23070 sf | | Shape Rectangular | View N;Res; | |
| Specific Zoning Classification RA-1 | | Zoning Description SFR/Very Low I Residential - Source : Zimas | | | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | | | | | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe | | | | | |
| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
| Electricity | ☒ | | Water ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer ☒ | | Alley None | | |
| FEMA Special Flood Hazard Area ☐ Yes ☒ No | FEMA Flood Zone X | FEMA Map # 06037C1590F | | FEMA Map Date 09/26/2008 | | |
| Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe | | | | | |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe | | | | | |

| IMPROVEMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner | | | | | | | |
| ☐ Other (describe) | Data Source for Gross Living Area NDC DATA; Itech MLS | | | | | | |
| General Description | | General Description | | Heating/Cooling | | Amenities | Car Storage |
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | ☒ FWA ☐ HWBB | | Fireplace(s) # 3 | ☐ None |
| # of Stories 2 | | ☐ Full Basement ☐ Finished | | ☐ Radiant | | Woodstove(s) # 0 | ☒ Driveway # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | ☐ Partial Basement ☐ Finished | | ☐ Other Gas | | ☒ Patio/Deck Cvd | Driveway Surface Concrete |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Exterior Walls Stucco/Avg | | ☒ Central Air Conditioning | Fuel | ☒ Porch CvdEntry | ☒ Garage # of Cars 2 |
| Design (Style) French | | Roof Surface Comp/Avg | | ☐ Individual | | ☒ Pool and Spa | ☐ Carport # of Cars 0 |
| Year Built 2002 | | Gutters & Downspouts Part G&D/Avg | | ☐ Other | | ☒ Fence Average | ☐ Attached ☐ Detached |
| Effective Age (Yrs) 15 | | Window Type Vinyl/Avg | | | | ☒ Built-in GstUnit | |
| Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe) | | | | | | | |
| Finished area above grade contains: 11 Rooms | | 6 Bedrooms | 6.0 Bath(s) | 6,891 Square Feet of Gross Living Area Above Grade | | | |
| Additional features (special energy efficient items, etc.) See Attached Addenda | | | | | | | |
| Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C3;Maintenance is average and the subject is in average condition with no deferred maintenance observed that would impair marketability or value. | | | | | | | |
| Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No | | | | | | | |
| If Yes, describe. | | | | | | | |
| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe. | | | | | | | |

Freddie Mac Form 2055 March 2005 | UAD Version 9/2011 | Page 1 of 6 | Fannie Mae Form 2055 Ma...

**038**

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Exterior-Only Inspection Residential Appraisal Report    File # 02802JD

| | | | | |
|---|---|---|---|---|
| There are | 0 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 0 to $ 0 . | | |
| There are | 11 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 6,200,000 to $ 15,450,000 . | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 205 N Tigertail Rd Los Angeles, CA 90049 | 173 N Anita Ave Los Angeles, CA 90049 | 208 N Tigertail Rd Los Angeles, CA 90049 | 815 N Tigertail Rd Los Angeles, CA 90049 |
| Proximity to Subject | | 0.29 miles SW | 0.06 miles E | 0.96 miles N |
| Sale Price | $ | $ 9,555,000 | $ 9,250,000 | $ 9,750,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 1492.97 sq.ft. | $ 1538.59 sq.ft. | $ 1500.00 sq.ft. |
| Data Source(s) | | CRMLS#18408696;DOM 195 | NDC/MLS#Unknown;DOM Unk | CRMLS#18388336;DOM 18 |
| Verification Source(s) | | Doc#534468/OLP$11,800,000 | Doc#1184009/OLP$9,250,000 | Doc#1114505/OLP$9,995,000 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s06/19;c06/19 | | s11/18;c11/18 | | s11/18;c10/18 | |
| Location | N;MinorTruTraf; | N;Res; | 0 | N;MinorTruTraf; | | N;MinorTruTraf; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 23070 sf | 26502 sf | 0 | 28509 sf | 0 | 8055 sf | +1,126,000 |
| View | N;Res; | N;Res; | | N;Res; | | B;CynOcean; | -750,000 |
| Design (Style) | DT2;French | DT2;Spanish | 0 | DT2;Traditional | 0 | DT2;Contemp | 0 |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q2 | -500,000 |
| Actual Age | 17 | 89 | 0 | 79 | 0 | 1 | 0 |
| Condition | C3 | C3 | | C3 | | C1 | -500,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 11 6 6.0 | 10 5 5.1 | +20,000 | 10 5 6.0 | 0 | 13 6 7.2 | -80,000 |
| Gross Living Area | 6,891 sq.ft. | 6,400 sq.ft. | +122,500 | 6,012 sq.ft. | +219,500 | 6,500 sq.ft. | +97,500 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2gbl2dw | 3cp3dw | +12,500 | 2ga2dw | | 2ga2dw | 0 |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Pool/Spa | Pool / Spa | Pool / Spa | | Pool / Spa | | Pool / Spa | |
| Additional Features | Guest House | Guest House | | Tennis Court | 0 | None Noted | +500,000 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 155,000 | ☒ + ☐ - | $ 219,500 | ☐ + ☒ - | $ -106,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 1.6 % Gross Adj. 1.6 % | $ 9,710,000 | Net Adj. 2.4 % Gross Adj. 2.4 % | $ 9,469,500 | Net Adj. 1.1 % Gross Adj. 36.4 % | $ 9,643,500 |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    NDC; FARES; Realist; iTech and/or CRMLS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    NDC; FARES; Realist; iTech and/or CRMLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NDC, Realist, ITech | NDC, Realist, ITech | NDC, Realist, ITech | NDC, Realist, ITech |
| Effective Date of Data Source(s) | 09/05/2019 | 09/05/2019 | 09/05/2019 | 09/05/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales    N/A

Summary of Sales Comparison Approach    Please See Attached Addenda.

Indicated Value by Sales Comparison Approach $    9,500,000

Indicated Value by: Sales Comparison Approach $ 9,500,000    Cost Approach (if developed) $ 9,631,379    Income Approach (if developed) $

The most weight was given to the Sales Comparison Approach, The Cost Approach, while is not required and less reliable in SFR's was developed to lend additional support to the Sales Comparison Approach. The Income Approach is not considered a reliable methodology for SFR's and was not developed in the final reconciliation for value.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 9,500,000 , as of 09/05/2019 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055 March 2005    UAD Version 9/2011    Page 2 of 6    Fannie Mae Form 2055 Ma

039

**ADDITIONAL COMMENTS**

Please See Attached Addenda

---

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Opinion Of Site Value Is Abstracted (Extraction

Method).

**COST APPROACH**

| ESTIMATED | ☐ REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 6,500,000 |
|---|---|---|---|---|---|---|---|

Source of cost data    Building-Cost.net

DWELLING    6,891 Sq.Ft. @ $    450.00    =$    3,100,950

Quality rating from cost service    3    Effective date of cost data    09/2019

0 Sq.Ft. @ $    =$

Comments on Cost Approach (gross living area calculations, depreciation, etc.)

GuestHse/Poo/Spa    =$    750,000

60% to 70% of Land to Improvement Ratio is not uncommon for "Like

Garage/Carport    400 Sq.Ft. @ $    225.00    =$    90,000

Properties" in this market area, posing no marketing detriment. Physical

Total Estimate of Cost-New    =$    3,940,950

Depreciation is based upon Effective Age and Deferred Maintenance

| Less | Physical | Functional | External |

from a 65 year base.  Publicly recorded gross living area (GLA) is 6302

Depreciation    909,571    =$(    909,571)

SF; and MLS measurements were 6891 SF. Site value exceeds 30% of

Depreciated Cost of Improvements    =$    3,031,379

market value. This is common in this market area.

"As-is" Value of Site Improvements    =$    100,000

Estimated Remaining Economic Life (HUD and VA only)    50    Years    INDICATED VALUE BY COST APPROACH    =$    9,631,379

**INCOME**

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $    X Gross Rent Multiplier    = $    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)    Income approach was not developed nor is it necessary or required to arrive at

market value. This market is driven by sales and not income.

**PROJECT INFORMATION FOR PUDs (if applicable)**

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes    ☐ No    Unit type(s)    ☐ Detached    ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases    Total number of units    Total number of units sold

Total number of units rented    Total number of units for sale    Data source(s)

Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes    ☐ No    If Yes, date of conversion

Does the project contain any multi-dwelling units?    ☐ Yes    ☐ No    Data Source(s)

Are the units, common elements, and recreation facilities complete?    ☐ Yes    ☐ No    If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes    ☐ No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

---

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Exterior-Only Inspection Residential Appraisal Report
File # N/A
02802JD

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:   The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE:   The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:   The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:   The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**APPRAISER'S CERTIFICATION:**    The    Appraiser    certifies    and    agrees    that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Exterior-Only Inspection Residential Appraisal Report    File # 02802JD    N/A

20. I identified the lender/client in this appraisal report who is the individual, corporation, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Justin Druian & Associates | |
| Signature | Signature |
| Name  Justin Druian | Name |
| Company Name  Justin Druian & Associates | Company Name |
| Company Address  241 S. Beverly Dr | Company Address |
| Beverly Hills, CA 90212 | |
| Telephone Number  (818) 355-7168 | Telephone Number |
| Email Address  jdfromsa@gmail.com | Email Address |
| Date of Signature and Report  09/11/2019 | Date of Signature |
| Effective Date of Appraisal  09/05/2019 | State Certification # |
| State Certification #  AR028441 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  11/06/2019 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

205 N Tigertail Rd
Los Angeles, CA 90049
APPRAISED VALUE OF SUBJECT PROPERTY $    9,500,000

SUBJECT PROPERTY
☐ Did not inspect exterior of subject property
☐ Did inspect exterior of subject property from street
Date of Inspection

LENDER/CLIENT
Name  Brentwood Property Appraisal, Inc.
Company Name  Marquee Funding Group, Inc.
Company Address  24025 Park Sorrento Suite, 150, Calabasas,
CA 91302
Email Address

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Exterior-Only Inspection Residential Appraisal Report    File # 02802JD    N/A

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 205 N Tigertail Rd | 107 N Cliffwood Ave | | | | | |
| | Los Angeles, CA 90049 | Los Angeles, CA 90049 | | | | | |
| Proximity to Subject | | 0.48 miles SW | | | | | |
| Sale Price | $ | | $ 9,800,000 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ | sq.ft. | $ 1083.11 sq.ft. | | $ sq.ft. | | $ sq.ft. |
| Data Source(s) | | CRMLS#18413528;DOM 34 | | | | | |
| Verification Source(s) | | Doc#97663/OLP$9,998,000 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | Conv;0 | | | | | |
| Date of Sale/Time | | s02/19;c01/19 | | | | | |
| Location | N;MinorTruTraf; | A;SdsTraffic; | +1,960,000 | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 23070 sf | 20220 sf | 0 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT2;French | DT3;Traditional | 0 | | | | |
| Quality of Construction | Q3 | Q2 | -500,000 | | | | |
| Actual Age | 17 | 1 | 0 | | | | |
| Condition | C3 | C1 | -500,000 | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 11  6  6.0 | 12  7  9.0 | -120,000 | | | | |
| Gross Living Area | 6,891 sq.ft. | 9,048 sq.ft. | -539,500 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 4000sf4000sfin | -1,000,000 | | | | |
| Rooms Below Grade | | 1rr0br3.0ba0o | 0 | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FAU/Central | FAU/Central | | | | | |
| Energy Efficient Items | None Noted | None Noted | | | | | |
| Garage/Carport | 2gbi2dw | 4ga4dw | -50,000 | | | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | | | | |
| Pool/Spa | Pool / Spa | Pool / Spa | | | | | |
| Additional Features | Guest House | None Noted | +500,000 | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | -249,500 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 2.5 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 52.8 % | $ 9,550,500 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NDC, Realist, ITech | NDC, Realist, ITech | | |
| Effective Date of Data Source(s) | 09/05/2019 | 09/05/2019 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    N/A

Analysis/Comments    Please See Attached Addenda

Form 2055UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Supplemental Addendum**

File No. 02802JD

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |

**USPAP 3-YEAR DISCLOSURE:**

Within the three-year period immediately preceding acceptance of this assignment, the appraisers have performed no services, as an appraiser or in any other capacity, relative to the property that is the subject of this assignment.

**• URAR : Subject - Sale/Listing History Amount, Date, Data Source & Record Number**

The subject was recently listed on 01/30/2019 for $10,900,000 (MLS #19429412; Hurwitz James Company; Bob Hurwitz; 310-701-0880). Subject was on the market for 20 days before it cancelled on 002/19/2019. MLS comments *"Fabulous 6 bedroom estate property in prime location on lower Tigertail with neighboring $20 million plus properties. Behind gates and boasting fabulous ocean and canyon views this custom European inspired home welcomes you with a striking entry, soaring ceilings, great volume and grand staircase. Walls of glass open to a large veranda ideal for entertaining, sparkling pool and spa, and rolling Downton Abbey style lawns. The fantastic master suite is complete with fireplace, charming private balcony and amazing views. Two story living room, dining room, family room with fireplace and vast gourmet kitchen. Separate office and guest suite downstairs. The rear yard features outside steps leading to a separate, private and unique guest suite/screening/entertainment room. A rare offering on over 100 feet of frontage on what has become Celebrity row in Brentwood. Per appraisal the main house is 6891 sq ft and guest house additional 798 square feet".*

Subject was listed prior to that on 02/08/2018 for 210 days in the amount of $10,900,000 before it was withdrawn on 09/04/2018 and expired on 11/01/2018. MLS comments *"CUSTOM-BUILT IN 2002 SITS THIS EUROPEAN-INFLUENCED MANSE BEHIND GATES WITH OVER 100 FEET OF FRONTAGE ON THE BEST PART OF LOWER TIGERTAIL ROAD. FEATURING BUCOLIC OPEN CANYON AND OCEAN VIEWS FROM THE MAJORITY OF ROOMS. THE PUBLIC ROOMS (LIVING, DINING, BREAKFAST, FAMILY) ALL OPEN TO AN EXPANSIVE VERANDA OVERLOOKING ENDLESS FLOWING LAWNS, POOL/SPA, AND PRIVATE VIEWS. A LOWER LEVEL OUTDOOR SCREENING ROOM/PARTY ROOM/GUEST FACILITY WITH BATH IS COMPLETELY SEPARATE FROM THE HOME. HIGH CEILINGS THROUGHOUT. DRAMATIC ENTRY WITH SWEEPING STAIRCASE. ASTONISHING SUNLIT 2STY LIVING ROOM. SEPARATE LARGE OFFICE AND FAMILY ROOM WITH FIREPLACE. 5 BEDROOM UPSTAIRS AND GUEST SUITE DOWNSTAIRS. HUGE MASTER WITH GREAT VIEW BALCONY, FIREPLACE, WALK-IN. DUAL LAUNDRY FACILITIES. MAKE THIS YOUR TIGERTAIL TROPHY PROPERTY".*

Subject was listed prior to that on 08/31/2017 for 161 days in the amount of $11,995,000 and cancelled on 02/08/2018.

**• Exterior-Only: Current Owner**

PLATT,WAYNE H & LISA F TR/PLATT FAMILY TRUST

**• Exterior-Only : Neighborhood - Boundaries**

Boundaries are north by Canyons, south by W Sunset Blvd, east by 405 Freeway and west by 26th St.  Accessibility is adequate as are availability to utilities and arterial thoroughfares and freeways.  Unless otherwise noted, all comparables are from the same city or legislated "area" as the subject property.

**• Exterior-Only : Neighborhood - Description**

This canyon community consists mostly of SFRs individually built to varying degrees of owner specification. They are of various ages, size, quality, design, appeal and utility with a very broad range of sale prices noted being typically influenced by the foregoing differences as well as by views and a high degree of buyer subjectivity. Sites are generally hilly and range from substandard to superadequate with various degrees of lot utility. Views range from none, to local canyon to panoramic city and even ocean views. Commercial activity, employment and public facilities, (schools, police, hospitals, fire stations, etc.) are within reasonable proximity. Arterial traffic and narrow roads may adversely affect some residences. No atypical social or environmental trends were observed at this time though the market area is susceptible to the influences of nature commonly associated with canyon living.

**• Exterior-Only : Neighborhood - Market Conditions**

Interest rates have been decreasing. Market data on closed sales indicates that the subject's market area has stabilized after years of appreciation. This is evidenced by comparing the closed sales to one another other market statistics (See Below). Market demand for this neighborhood is strong noting some of the comparables sold over list price due to competitive bidding. Marketing times are typically less than 90 days, longer times are noted for ineffectively priced properties. There is a shortage in this market area in this market area resulting fewer sales.  With that being said, more than one of the comparables utilized in the market grid closed over six months from the effective date of this report. Given stable market conditions, it is the appraiser's opinion that the "dated" sale utilized in this report were both suitable and necessary for comparative analysis, posing no impairment to arriving at a reliable and credible value conclusion. Zillow.com median price trends also indicate stable over the past year:



**Supplemental Addendum**

| | | | | | | | File No. | 02802JD |
|---|---|---|---|---|---|---|---|---|

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | | |
| City | Los Angeles | County | Los Angeles | | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | | |

• **Exterior-Only : Site - Adverse Site Conditions or External Factors**

The subject is noted to have minor thru traffic. No negative impact was noted.

The subject and all comparables are located in close proximity to busy roads, commercial, schools and the 405/10 Freeway, however the subject is noted to have adequate buffering from other residential properties and no negative market influences were noted. Most comparables have similar buffering and is also not effected. No significant factors relating to the subject's site, topography, shape, size, or drainage were noted.

Zoning was taken from Zimas.

• **Exterior-Only : Improvements - Additional Features**

Subject information was taken from MLS. Subject was noted as 6891 sf, 6bed/6 bath with a 2 car garage and a 798sf guest house.

The client requested that this "As Is" Appraisal assignment be written on a FNMA 2055 Form being conducted on a 'Drive-by' basis with an exterior only inspection. Therefore, interior access was not available to this appraiser. Nonetheless, the client, in keeping with UAD guidelines, also requires the Appraiser to "Describe the condition of the property" which includes an assessment of its "interior" quality and condition which is well beyond the scope of this Appraiser's physical inspection. Subsequently, without the benefit of an interior inspection, it is this Appraiser's protocol to search for and analyze any publicly recorded features of the Subject property; to try and find any available MLS information that is potentially relevant; to review any prior appraisals legally available to this Appraiser; and to also make attempts to conduct interviews with brokers or owner/occupants (when available and allowable) that may be knowledgeable. Whatever information can be derived from any of these sources (when available to this Appraiser), combined with the observed condition of the Subject's exterior, forms the "reasonable basis" for the several 'extraordinary assumptions' made upon the Subject's interior. This Appraiser also makes the extraordinary assumption that Subject property shares in the common features within the marketing area that appear to be "typical" for residences within the Subject's marketing category of Age, Size and Appeal. Unless otherwise stated, this Appraiser has also made the extraordinary assumption that the Subject property is free, interiorly and exteriorly, of any conditions of health and safety which would typically be considered an unacceptable risk factor for personal injury or safe occupancy, (e.g. non-release security bars over bedroom windows, unsecured fixtures, broken glass, exposed electrical, insufficient heating, a non-secured empty pool, etc.) Accordingly, this appraiser is NOT responsible or liable for any personal injury resultant from any issues that might otherwise be observed during the course of a typical interior and full site inspection that would have warranted disclosure. Furthermore, this appraiser reserves the right to re-analyze the data, to consider alternative approaches and to change the estimate of value (upward or downward) if it is later disclosed that the improvements given value in this report are determined to be all, or in part, notably different than publicly recorded or as reasonably inferred from the exterior inspection and available sources cited above which formed the "reasonable basis" for the extraordinary assumptions utilized in this Appraisal.

(NOTE 1: The same Extraordinary Assumptions utilized in the Market Approach are also employed in the development of the Cost Approach regarding the size of the improvements, the quality of construction and in estimating replacement costs and also accrued depreciation, both physical and/or functional.

(NOTE 2: Per USPAP - DEFINITIONS, an EXTRAORDINARY ASSUMPTION is: "an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions". There is also an accompanying comment which states: "Uncertain information might include physical, legal, or economic characteristics of the subject property; or conditions external to the property, such as market conditions or trends; or the integrity of data used in an analysis.")

(NOTE 3: Due to the nature of an exterior only inspection,  the appraiser notes that adequate utilities are available.  However, their functionality could not be verified due the nature of an exterior only inspection.)

(NOTE 4: The appraiser acknowledges that it could be argued that the subject has a view amenity. However, in the appraiser's opinion, the scope and nature of the view is not significant enough to evoke market reaction in any measurable way. Subsequently, though acknowledged in this report it is given no value and treated in the Grid as "N;Res")

• **Exterior-Only : Subject - Overall Condition of the Property**

Maintenance is adequate and the subject is in average condition with no deferred maintenance observed that would impair marketability or value

• **Exterior-Only : Sales Comparison Analysis - Summary of Sales Comparison Approach**

As previously noted elsewhere in this report, more than one of the comparables utilized in the market grid closed over six months from the effective date of this report. Given stable market conditions, it is the appraiser's opinion that the "dated" sale utilized in this report was both suitable and necessary for comparative analysis, posing no impairment to arriving at a reliable value conclusions.

GRID ADJUSTMENTS: Unless otherwise noted, all Market Grid adjustments are deemed to be self-explanatory; but all adjustments to the comparable sales reflect the appraiser's best estimate of the market's reaction to the differences between the subject property and the comparables.  Though paired sales analysis is conducted to the degree that the available data allows, in most cases, data is too limited to be conclusively definitive and the adjustments are as much "qualitative" (reflecting generally  positive or negative market influences) as they are "quantitative" (irrefutably derived from hard core data and information); and unless otherwise explained, line adjustments do not exceed 10% of the sale price of the comparable being adjusted. This approach adequately serves to ascribe or to depreciate value to any factor that is generally considered to have a measurable impact upon value.  In any case, the adjustment values utilized are reasonable relative to the limited amount of data that is typically available; as well as to anticipated market reaction to various property characteristics as is noted through experience in this and like markets and input from local brokers.

-Location at 20% of the comparables sale price; (Considers proximity to, and variations in, locational factors that typically have an impact, either positively or negatively, upon marketability and value. Common considerations include, but are not limited to:

**Supplemental Addendum**

File No. 02802JD

| Borrower | N/A | | | | | | |
|----------|-----|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |

traffic, schools, government facilities, commercial activity, multi-family residences, accessibility, railroad tracks, airports, recreational facilities, gated communities, etc.)

-Site area adjustments at $75.00 /sf. Adjustments were made only for comparables located on lots under 20,000sf.

-Views adjusted at 7.5% of the comparable sale or list price.

-Quality adjusted at $500,000.

-Age adjustments were not made but account for in the quality adjustment if effective ages were not equal.

-Condition adjusted at $500,000; (Based upon anticipated market reaction, in relative comparison to the subject, to the construction materials utilized, and/or the greater or lesser degree of remodeling or upgrading noted in the comparables at the time of sale as specifically disclosed, visually observed or reasonably deduced. Upgrades,  though oft times different in their characteristics, when not adjusted, are deemed to be similar in overall demand and value to what was observed in the subject property).

-Bedroom adjustments were not made as any additional utility is account for in the GLA adjustment.

-Full Bathroom at $40,000/1/2 Bathroom at $20,000

-Gross Living Area (GLA) is adjusted at $250.00 per square foot   (Rounded - $1,000 minimum adjustment).

-Basement adjusted at 1/2 the GLA adjustment at $125.00 per square foot   (Rounded - $1,000 minimum adjustment).

-2 Car Garage at $50,000/2 Car Carport at $25,000

-Guest House/Tennis Court at $500,000

COMPARABLE COMMENTS:

All comparable data was verified through NDCdata, Fares,  Realist and CLAWMLS.In addition the appraiser verified by exterior/drive by from local access roads of all comparables analyzed below. The appraiser differentiates between the comparables actual DOM until market reaction realized and a comparables cumulative days on market (CDOM).  Typically CDOM reported in MLS includes contingency period, "hold" or "withdrawn" periods or back up status' which allows the days on market to accrue, resulting in an inflated and inaccurate statistic of actual marketing exposure.

**Comparable #1** is used for its date of sale, site, qualtiy and condition. MLS comments "A rare gem from legendary Paul Williams, this stunning Brentwood trophy estate is a masterful blend of old world California Romantica charm & modern sensibilities. Restored to its natural beauty, this is your own San Ysidro ranch, a ticket to classic elegance. Steps from Brentwood & a bike ride to Santa Monica. The estate is set back on an oversized, ultra-private 26.5kSF lot, offering tranquil resort living. Enter gates to extraordinary grounds; gravel driveway leads to grand motor court suited for large parties & car collections. Step through the courtyard & into a world of magnificent taste & quality. Intricate details abound, from redwood ceilings, terracotta tile floors & wrought iron throughout. Main house boasts 4 bedrooms, office, living room, formal dining room, media & game rooms. Complementing are a detached guesthouse & sun filled garden w/pool & fire pits. Don't hesitate; this is a once-in-a-generation opportunity to own an estate of unparalleled pedigree & sophistication". Public records notes this comparable as 4668sf, 4bed/3bath and MLS notes 6400sf, 5bed/5.1 bath which was used for this analysis. Also,  this comparable previously sold on 02/07/2018 for $7,000,000 in "C4" condition.  It was subsequently remodeled and resold for higher which accounts for the increase in value between the sales.

**Comparable #2** is a same street sale used for its site, qualtiy, condition, bath count and to bracket the lower GLA ranges. No MLS was found for this transaction.

**Comparable #3** is used for its location, bed count and to bracket the lower site area. Adjustments were made for its views and superior quality/condition per MLS comments/photos MLS comments "*Located on one of the most iconic streets in Los Angeles, this architectural modern masterpiece is the crown jewel of Brentwood. This fabulous new construction has unobstructed ocean views from every room. With movable walls of Fleetwood glass throughout the house and an abundance of outdoor living space, this property is the embodiment of the quintessential California lifestyle. Chef's kitchen, featuring Wolf and Sub Zero appliances, Dekton counter tops and Australian Oak cabinetry. Built to entertain, this home features a state of the art home theater, yoga studio, fully illuminated onyx bar, temperature-controlled wine cellar, and a robust Crestron home automation system. The upper level holds four en-suite bedrooms including an opulent master, luxurious master bath and designer fixtures and finishes. A true testament to quality and craftsmanship, this home awaits even the most discerning buyer*". Public records notes this comparable as 2057sf, 4bed/2bath and MLS notes 6500sf, 6bed/7.2 bath which was used for this analysis.

**Comparable #4** is used for its site and to bracket the higher GLA ranges. Adjustments were made for its inferior location (sides traffic) and for its superior quality/condition per MLS comments/photos. MLS comments "*Rarely does such a special property become available on one of the most streets in Brentwood Park, this private, brand new Traditional one-of-a-kind estate is truly an exceptional offering. Set behind gates and complete with a large motor court, this smart home boasts the highest levels of taste and finishes. The grand foyer opens to the grand family room with fireplace & built-ins as well as the formal dining room. The open floor plan allows natural light to flow through every room. The chef's kitchen features state-of-the-art appliances, the spacious family room offers plenty of room to lounge by the fire. Large sliding glass pocket doors provide a seamless indoor-outdoor flow. The outdoor space features two cabanas, BBQ, pool & spa. Upstairs features the opulent master suite with dual closets, fireplace and balcony. Downstairs experience a full indoor spa experience w pool, sauna, & steam room. Home movie theater, gym, elevator, family room completes this level*".  Public records notes this comparable as 2867sf, 3bed/3bath and MLS notes 13048sf, 7bed/12bath per prior MLS this comparable is noted to have a 4,000sf basement which was included in GLA. This comparable is 9048sf, 7bed/9bath with a 4,000sf basement which was used for this analysis.

FINAL ARGUMENT:

Value is derived from the actual sale prices and adjusted values of all the sales with all comparables contributing to a reliable value range.  Due consideration was given to all the comparables utilized in the grid for reasons outlined above in their

**Supplemental Addendum**                                                    File No. 02802JD

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |

individual comments.  Most weight was given to Comparable #1 for date of sale, qualtiy and condition. Comparable #2 same street sale, quality, condition and bath count. Comparable #3 for same street sale and bed count and Comparable #4 for date of sale and site area. Under current market conditions, a reasonable marketing time necessary to satisfy this "market value" conclusion is estimated to be no greater than 90 days; within the context of an asking price that is no more than 3% higher than the estimated value in this report.  However, the appraiser cannot be held responsible for unforeseeable events that alter market conditions after the effective date of this appraisal report.

(NOTE: The subject's estimated value is somewhat above the indicated Predominant Value due to its site, GLA and condition. However, the subject is not deemed to be overimproved as there is a representative number of similar residences demonstrating recoverability for living area and quality in their sale prices.)

Exposure time is the estimated length of time the property being appraised would of been on the market prior to the hypothetical consumption of the sale at market value on the effective date of the appraisal. It is a retrospective estimate based upon analysis of past events assuming a competitive and open market. Based on marketing times of sales of other similar homes in this area, an exposure time of up to three months is considered reasonable with the concluded value indicated in this report.


• <u>URAR : Conditions of Appraisal</u>

The appraiser obtained the information, estimates, and opinions that are expressed within this appraisal report from sources that were considered to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties. To the best of the appraiser's knowledge the information contained within this appraisal report is true and correct, and appraiser has not knowingly withheld any significant information. The appraiser reserves the right to re-analyze the data, to consider alternative approaches and to change the estimate of value, if at a future point it is verifiable that the appraiser received and applied misinformation during the preparation of this report and value was thereby influenced, either positively or negatively.  Appraiser notes information provided in the MLS may be considered exaggerated, or "puffery" as required to market a property.

The appraiser is not responsible for matters of a legal nature that may affect the property being appraised. Unless otherwise noted, no original structure permits were reviewed by the appraiser, neither was there any review of any permits and/or Certificates of Occupancy for the noted improvements. The appraisal report is made "As Is" and is based upon on-site inspection and information in the Public Records. It is left to the client's discretion to confirm the legality of all or any of the subject's improvements.

The final value conclusion of this was derived with most consideration given to the Direct Market Data Approach, with secondary consideration given to the Cost Approach and no consideration given to the Income Approach.

**Market Conditions Addendum to the Appraisal Report**    File No. 02802JD

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 205 N Tigertail Rd | City | Los Angeles | State | CA | ZIP Code | 90049 |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

## MARKET RESEARCH & ANALYSIS

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 5 | 4 | 2 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.83 | 1.33 | 0.67 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 8 | 5 | 0 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 9.6 | 3.8 | 0 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 9,750,000 | 9,952,500 | 10,728,500 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 15 | 137 | 22 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 10,246,500 | 10,900,000 | 10,900,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 56 | 78 | 6 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 95% | 91% | 98% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes ☒ No | | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). Seller concessions are not common in this neighborhood.

Are foreclosure (REO sales) a factor in the market? ☐ Yes ☒ No If yes, explain (including the trends in listings and sales of foreclosed properties).
REO sales have not been a factor in this market.

Cite data sources for above information. NDC Data; iTech, CRMLS and/or CLAW MLS;Dataquick-(http://www.dqnews.com)

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The appraiser researched sales from 5000 SF to 15000 SF in this neighborhood. No search function is available to reasonably delineate by condition or quality, and so the data above may be skewed to an extent based on those factors The appraiser notes that in addition to the defined criteria noted above, final conclusions on market trends were tempered by the appraiser's overall experience and knowledge of the local market, as factors may exist in the general marketplace beyond those directly measured by the above analysis for "comparable sales" (as required by this form) which may also impact the Subject property.

## CONDO/CO-OP PROJECTS

If the subject is a unit in a condominium or cooperative project , complete the following: N/A    Project Name: N/A

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | N/A | N/A | N/A | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | N/A | N/A | N/A | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | N/A | N/A | N/A | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | N/A | N/A | N/A | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties. N/A

Summarize the above trends and address the impact on the subject unit and project. N/A

## APPRAISER

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Justin Druian | Supervisory Appraiser Name | |
| Company Name | Justin Druian & Associates | Company Name | |
| Company Address | 241 S. Beverly Dr, Beverly Hills, CA 90212 | Company Address | |
| State License/Certification # | AR028441 State CA | State License/Certification # | State |
| Email Address | jdfromsa@gmail.com | Email Address | |

Freddie Mac Form 71  March 2009    Page 1 of 1    Fannie Mae Form 1004MC  March 2009
**049**
Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |



**050**

**Aerial Map**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |



**051**

| Borrower | N/A |
|---|---|
| Property Address | 205 N Tigertail Rd |
| City | Los Angeles |
| County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. |



**PARCELQUEST**

County Last Updated: 09/06/2019

## Property Location

| | | | |
|---|---|---|---|
| Address: | 205 N TIGERTAIL RD | City: LOS ANGELES | Zip: 90049-2803 |
| APN#: | 4403-011-006 | Use Code: Single Family Residence | County: Los Angeles |
| Tract: | 19365 | Census Tract: 2623.03 | Zone: LARA |
| Map Pages/Grid: | 631/ G3 | Legal Desc: TRACT # 19365 LOT 1 | |
| Total Assessed Value: | 3,664,636 | Tax Amount: 44,314.00 | |
| Percent Improvement: | 27.00 | Tax Year / Assessor Year: 2018 / 2018 | |

## Current Owner Information

| | |
|---|---|
| Current Owner: PLATT,WAYNE H & LISA F TR/PLATT FAMILY TRUST | Owner Address: 205 N TIGERTAIL RD |
| City, State, Zip: LOS ANGELES, CA, 90049-2803 | Owner Occupied: Yes |
| Last Transaction: 02/01/2019 | Deed Type: deed of trust |
| Amount: 358,756 | Document: 0000097241 |

## Last Sale Information

| | |
|---|---|
| Transferred From: | Seller Address: |
| Recording / Sale Date: 10/05/2000 / | Prior Recording / Sale Date: / |
| Most Recent Sale Price: 2,000,000 | Prior Sale Price: |
| Document Number: 0001562373 | Prior Document No.: |
| Document Type: deed of trust | Prior Document Type: |

## Lender Information

| | |
|---|---|
| Lender: | Full/Partial: |
| Loan Amount / 2nd Trust Deed: / | Loan Type: |

## Physical Information

| | | |
|---|---|---|
| Building Area: 6,302 | # of Bedrooms: 6 | Lot Size: sqft / acreage: 23,029 / 0.53 |
| Additional: 0 | # of Bathrooms: 6.00 | Year Built / Effective: 2002 / 2002 |
| Garage: 0 | # of Stories: 1 | Heating: Central |
| First Floor: 0 | Total Rooms: 9 | Cooling: Central Air |
| Second Floor: 0 | # of Units: 1 | Roof Type: |
| Third Floor: 0 | Garage/Carport: 1 Car Garage | Construction/Quality: Primary Material Unlisted / 0 |
| Basement Finished: 0 | Fireplaces: 0 | Building Shape: |
| Basement Unfinished: 0 | Pool/Spa: Yes | View: |

Form MAP.Generic - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Plat Map

| Borrower | N/A |
| Property Address | 205 N Tigertail Rd |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. |



Form MAP.Generic - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Subject Photo Page

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |



**Subject Front**
205 N Tigertail Rd



**Subject Rear**



**Subject Street**

**054**

Additional Subject Photos

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | |

 

**Street Scene**                    **Additional Front View**

**055**

**Comparable Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |



**Comparable 1**
173 N Anita Ave



**Comparable 2**
208 N Tigertail Rd



**Comparable 3**
815 N Tigertail Rd

**056**

Comparable Photo Page

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |



**Comparable 4**
107 N Cliffwood Ave

Form PIC4x6.BC - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Comparable MLS Photos**

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | |
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | |





**Comparable #1**
**173 N Anita Ave**
**MLS Photo**

**Comparable #2**
**208 N Tigertail Rd**
**MLS Photo**





**Comparable #3**
**815 N Tigertail Rd**
**MLS Photo**

**Comparable #4**
**107 N Cliffwood Ave**
**MLS Photo**

**058**

Additional Comparable Photos

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | | |




**Comparable #3**
**815 N Tigertail Rd**

**Comparable #3**
**815 N Tigertail Rd**




**Comparable #3**
**815 N Tigertail Rd**

**Comparable #3**
**815 N Tigertail Rd**




**Comparable #4**
**107 N Cliffwood Ave**

**Comparable #4**
**107 N Cliffwood Ave**

**059**

Additional Comparable Photos

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code 90049 |
| Lender/Client | Marquee Funding Group, Inc. | | | | | |




**Comparable #4**
**107 N Cliffwood Ave**

**Comparable #4**
**107 N Cliffwood Ave**





**GREAT**AMERICAN.
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒  Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:  **RAP4118215-19**                    Renewal of:  **RAP4118215-18**

Program Administrator:        **Herbert H. Landy Insurance Agency Inc.**
                **100 River Ridge Drive, Suite 301  Norwood, MA 02062**

---

Item 1. **Named Insured:**    **Justin A. Druian**

Item 2. **Address:**                **241 South Beverly Dr.**
        City, State, Zip Code:    **Beverly Hills, CA 90212**

Item 3. **Policy Period:** From    **07/01/2019**    To    **07/01/2020**
                *(Month, Day, Year)*    *(Month, Day, Year)*
                (Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability:**

    A. $ __1,000,000__    **Damages** Limit of Liability – Each **Claim**

    B. $ __1,000,000__    **Claim Expenses** Limit of Liability – Each **Claim**

    C. $ __2,000,000__    **Damages** Limit of Liability – Policy Aggregate

    D. $ __2,000,000__    **Claim Expenses** Limit of Liability – Policy Aggregate

Item 5. **Deductible** (Inclusive of **Claim Expenses**):

    A. $ __500__        Each **Claim**

    B. $ __1,000__        Aggregate

Item 6. **Premium:** $    **915.00**

Item 7. **Retroactive Date** (if applicable):    **05/22/2000**

Item 8. **Forms, Notices and Endorsements attached:**
    **D42100 (03/15)  D42300 CA (10/13)  IL7324 (08/12)**
    **D42402 (05/13)  D42412 (03/17)  D42413 (06/17)**

Authorized Representative

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

Condition Ratings and Definitions

C1

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

*Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

**064**

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**065**

# EXHIBIT 5

Case 2:18-bk-21394-BB    Doc 124    Filed 09/26/18    Entered 09/26/18 12:26:54    Desc
Main Document    Page 3 of 86

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| Debtor 1 | **Lisa Frances Platt** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 (Spouse, if filing) | | |
| | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | 2:18-bk-21394-BB | ☐ Check if this is an amended filing |

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| 1.1 | **205 N Tigertail Road** | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|
| | Street address, if available, or other description | ☑ Single-family home | |
| | | ☐ Duplex or multi-unit building | |
| | | ☐ Condominium or cooperative | |
| | | ☐ Manufactured or mobile home | Current value of the entire property?    Current value of the portion you own? |
| | **Los Angeles      CA    90049-0000** | ☐ Land | $11,500,000.00          $11,500,000.00 |
| | City    State    ZIP Code | ☐ Investment property | |
| | | ☐ Timeshare | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | | ☐ Other _____ | **Trust** |
| | | **Who has an interest in the property?** Check one | |
| | **Los Angeles** | ☑ Debtor 1 only | |
| | County | ☐ Debtor 2 only | |
| | | ☐ Debtor 1 and Debtor 2 only | ☑ Check if this is community property (see instructions) |
| | | ☐ At least one of the debtors and another | |
| | | Other information you wish to add about this item, such as local property identification number: | |
| | | **Property Held in Trust** | |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.......................................=>    $11,500,000.00

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

| Fill in this information to identify your case: |
|---|

| Debtor 1 | Lisa Frances Platt | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | 2:18-bk-21394-BB | | |

☐ Check if this is an amended filing

## Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|

**2.1  Beverly Loan Company**
Creditor's Name

9440 Santa Monica Blvd
Suite 301
Beverly Hills, CA 90210
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred _____

**Describe the property that secures the claim:**

**Jewelry**
**Loan No. 492960, 492953, 492794,**
**492713,491360, 491359, and 487118**
As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)    **Loan**

Last 4 digits of account number _____

Column A: **$45,000.00**
Column B: **$100,000.00**
Column C: **$0.00**

**2.2  Eldercare Financial Services**
Creditor's Name

PO BOX 206536
Dallas, TX 75320-6536
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred _____

**Describe the property that secures the claim:**

**205 N Tigertail Road Los Angeles,**
**CA 90049  Los Angeles County**
**Property Held in Trust**
As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Last 4 digits of account number    **3EFS**

Column A: **$500,219.00**
Column B: **$11,500,000.00**
Column C: **$0.00**

Case 2:18-bk-21394-BB    Doc 174    Filed 09/24/19    Entered 09/24/19 06:06:54    Desc
Main Document    Page 12 of 96

| Debtor 1 | Lisa Frances Platt | | | Case number (if known) | 2:18-bk-21394-BB |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| 2.3 | Joanna Stingray | Describe the property that secures the claim: | $24,260.00 | $11,500,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

c/o Coldwell Banker
166 N Canon Dr
Beverly Hills, CA 90210

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ■ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred _____

**Describe the property that secures the claim:**
205 N Tigertail Road Los Angeles, CA 90049  Los Angeles County Property Held in Trust

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number _____

---

| 2.4 | Luxury Asset Capital LLC | Describe the property that secures the claim: | $300,000.00 | $900,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

DBA Pawngo
4100 E Mississippi Ave
Suite 1850
Denver, CO 80246

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred  09/27/18

**Describe the property that secures the claim:**
Jewelry

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)  Loan

Last 4 digits of account number  5208

---

| 2.5 | Marquee Funding Group | Describe the property that secures the claim: | $0.00 | $11,500,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

24025 Park Sorrento
Suite 150
Calabasas, CA 91302

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ■ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred _____

**Describe the property that secures the claim:**
205 N Tigertail Road Los Angeles, CA 90049  Los Angeles County Property Held in Trust Mortgage Broker for Property

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)  Second Mortgage

Last 4 digits of account number  9988

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 4

Debtor 1   **Lisa Frances Platt**

First Name          Middle Name              Last Name

Case number (if known)    **2:18-bk-21394-BB**

| 2.6 | **Mr. Cooper Mortgage Company** | | | | **Describe the property that secures the claim:** | **$3,356,081.67** | **$11,500,000.00** | **$0.00** |

Creditor's Name

**205 N Tigertail Road Los Angeles, CA 90049  Los Angeles County Property Held in Trust**

**8950 Cypress Waters Blvd.**
**Coppell, TX 75019**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)     **First Mortgage**

Date debt was incurred

Last 4 digits of account number     **6064**

| 2.7 | **Platinum Loan Servicing, Inc** | | | | **Describe the property that secures the claim:** | **$0.00** | **$11,500,000.00** | **$0.00** |

Creditor's Name

**Servicer to S&R Income Fund 1, LLC**
**S.B.S. Trust Deed Network**
**31194 La Baya Dr, #106**
**Thousand Oaks, CA 91362**

Number, Street, City, State & Zip Code

**205 N Tigertail Road Los Angeles, CA 90049  Los Angeles County Property Held in Trust**
**Loan Servicer for S&R Income Fund**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred

Last 4 digits of account number     **9988**

| 2.8 | **S & R Income Fund 1, LLC** | | | | **Describe the property that secures the claim:** | **$3,740,086.45** | **$11,500,000.00** | **$0.00** |

Creditor's Name

**S.B.S. Trust Deed Network**
**31194 La Baya Dr #106**
**Thousand Oaks, CA 91362**

Number, Street, City, State & Zip Code

**205 N Tigertail Road Los Angeles, CA 90049  Los Angeles County Property Held in Trust**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

Official Form 106D         Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**         page 3 of 4

Best Case Bankruptcy

**070**

| Debtor 1 | Lisa Frances Platt | | | Case number (if known) | 2:18-bk-21394-BB |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

☐ Check if this claim relates to a
community debt

☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

---

| 2.9 | **S.B.S. Trust Deed Network** | | $0.00 | $0.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**31194 La Baya Drive, #106**
**Thousand Oaks, CA 91362**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

> **For notice purposes only**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred _____    Last 4 digits of account number _____

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $7,965,647.12 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $7,965,647.12 |

---

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

---

# EXHIBIT 6

1  CAROLYN A. DYE
   3435 Wilshire Blvd.
2  Suite 990
   Los Angeles, CA 90010
3  213/368-5000 – Telephone
   213/368-5009 – Facsimile
4  Email: trustee@cadye.com

5

6  Attorney for Sam S. Leslie,
   Chapter 11 Trustee

7



FILED & ENTERED

SEP 16 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning   DEPUTY CLERK

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11

12  In re                            )  Case No. 2:18-bk-21394-BB
                                     )         [Chapter 11]
13  LISA FRANCES PLATT,              )
                                     )
14                   Debtor.         )  ORDER APPROVING AMENDED
                                     )  STIPULATION FOR SECOND
15                                   )  AMENDED ORDER APPROVING POST-
                                     )  PETITION FINANCING
16                                   )
                                     )  [No Hearing Required]
17  _____ )

18

19        The Court, having considered the Amended Stipulation for Second

20  Amended Order Approving Post-Petition Financing (Docket No. 163) and

21  good cause appearing therefor,

22        **IT IS HEREBY ORDERED THAT:**

23        A.    The Stipulation is **APPROVED.**

24        B.    The post-petition financing (as described in the Stipulation) to be

25  received from (1) Iridium, LLC; and (2) Michael Cohen, an individual, (or

26  such additional lender as described in the Stipulation) (collectively the

27  "Lenders") is approved on the terms set forth in the Stipulation and the

28  / / /

                                    -1-

                                                              **073**

exhibit attached thereto, as an actual, necessary cost of preserving the bankruptcy estate, which would directly and substantially benefit the estate.

  C.  The funds obtained from the post-petition financing, from both Lenders, shall be directly deposited into an escrow account, for the benefit of and to be administered by Sam S. Leslie, Chapter 11 Trustee. From that escrow account, payment shall be made to the following parties who hold claims secured against the Debtor's residence located at 205 North Tigertail Avenue, Los Angeles, California (the "Residence"), pursuant to their respective beneficiary demands delivered to escrow (unless such secured creditor(s) has agreed to a different payment arrangement and/or elected to retain a lien against the Residence): As soon as a closing of the loans has occurred, and the exact amount of loan payoff to each of the secured creditors is known, Trustee shall file a declaration attesting to such payments. The parties holding secured liens are:

    Mr. Cooper Mortgage Company

    S&R Income Trust (aka Marquee Funding Group)

    Elderlife Financial Lending, LLC

    Joanna Stingray

    Luxury Asset Capital

    Internal Revenue Service

  D.  Any and all funds remaining after payment to the secured creditors identified in Paragraph C herein in accordance with Exhibit A and any related costs incurred in closing the post-petition financing, shall be transferred to the Debtor in Possession account established by Sam S. Leslie, Chapter 11 Trustee. The remainder of the funds from the post-petition financing shall be held and reserved for payment of administrative fees and costs and any remaining allowed claims against the estate in connection with or prior to any dismissal of this case, in accordance with the

**074**

priority and procedures set forth in the Bankruptcy Code.  A copy of the escrow closing statement shall be provided to the U.S. Trustee, through the Chapter 11 electronic portal, concurrently with the closing.  The United States Trustee reserves <u>any</u> all rights to object to the Debtor's payment of "any related costs in closing the post-petition financing," particularly as to any fees paid to Debtor's loan broker, Lending Bee, whose employment has not yet been authorized by the Court.

E.    The amounts payable to the secured creditors are estimated in Exhibit A attached hereto. The amounts listed on that Exhibit to unsecured creditors shall be subject to confirmation by the Chapter 11 Trustee. Professional fees shall be subject to and payable upon approval of the Court.

F.    The Debtor will have until **September 18, 2019** to close the post-petition financing loans.

G.    Mr. Leslie will file a Declaration, no later than **September 23, 2019**, advising the Court that the post-petition financing loans have closed. The failure to timely file and serve the "no later than **September 23, 2019"** declaration shall also trigger the conversion of the case to a Chapter 7 as that shall be the mechanism to alert all interested parties that the post-petition financing was timely closed.  The failure to timely file and serve the declaration may be presumed to mean that such financing did not timely close.

H.    If the Post-Petition Financing loans are not closed by the deadline, the Court directs and authorizes the U.S. Trustee to appoint a chapter 7 trustee without further notice, opportunity for hearing or further order of the Court.  A Status Conference is set for **December 11, 2019 at 11:00 a.m**.  The Trustee appointed may also use this date and time as a hearing on a motion approve payments to unsecured creditors and to

075

dismiss provided such motion is filed and served not less than 21 days prior to the hearing.

I.    **This order supersedes and replaces any prior order(s) entered in connection with the post-petition financing, and, in particular, the Order entered June 27, 2019 (Docket No. 137).**

###

Date: September 16, 2019

Sheri Bluebond
United States Bankruptcy Judge

-4-

EXHIBIT A

| | SECURED DEBT TO BE PAID BY ESCROW | | | Additional Interest | | |
| Name | Payoff Amount | Additional Interest/Fees thru 9/15 closing | Description | Start Date | End Date | Daily Interest |
|---|---|---|---|---|---|---|
| Mr. Cooper Mortgage Company / Atty: Todd S. Garan | $3,492,598.42 | $38,610.40 | 1st TD - Payoff per escrow co. as of 6/17/19, includes interest thru 6/24/19 | 6/25/2019 | 9/18/2019 | $454.24 |
| SBS/S&R Income Trust (aka Marquee Funding Group) P Platinum Loan Servicing, Inc / Atty: Lewis R. Landau | $4,132,076.29 | $60,007.96 | 2nd TD - Payoff per demand to escrow on 6/18/19; includes interst thru 7/22/19 ($1034.62 daily int) | 7/22/2019 | | $1,034.62 |
| Elderlife Financial Lending, LLC / Atty: Alan White | $608,863.01 | $45,719.37 | 3rd TD ($595,613.01 payoff demand as of 5/22, plus atty fees of $13,250) ($387.45253 daily int. per Alan White) | 5/23/2019 | | $387.45 |
| Joanna Stingray | $24,260.00 | | 4th TD | | | |
| Luxury Asset Capital | $0.00 | | 5th TD - will hold 2nd position lien | | | |
| IRS (Secured) | $65,384.53 | | Tax Lien - Per payoff demand submitted to Escrow on 5/30/19. Does not match Amended Proof of Claim filed on 6/4/19 of $62,534.41. | | | |
| L.A. Co. Treasurer & Tax Collector | $0.00 | | Property taxes - Current balance as of 5/29/19 is $0 | | | |
| Lender Fees | $447,000.00 | | Origination Charge | | | |
| Lender Fees | $2,466.00 | | Process, underwriting, doc prep and file set up fees | | | |
| Escrow Fees | $350.00 | | Notary | | | |
| Escrow Fees | $8,298.00 | | Title/Taxes/Recording Charges | | | |
| Escrow Fees | $5,490.00 | | Escrow Charges | | | |
| Subtotal: | $8,786,786.25 | $144,337.73 | | | | |

REMAINING DEBT TO BE PAID FROM BALANCE OF ESCROW FUNDS (SUBJECT TO CONFIRMATION BY CHAPTER 11 TRUSTEE)

| Name | Amt to use for Payoff | Additional Interest/Fees | Description |
|---|---|---|---|
| Beverly Loan Co. | $45,963.00 | | Jewelry Loan - See email from att'y for creditor |
| Franchise Tax Board | $0.00 | | Notice purposes only |
| Hunt & Henriques | $20,081.30 | | |
| LADWP | $45,065.59 | | Utilities |
| Marquee Funding Group | $0.00 | | Notice purposes only re 2nd TD |
| Med-Net Billing, Inc | $450.00 | | |
| Nationwide Credit, Inc | $4,530.71 | | |
| NCB Management Services, Inc. | $6,385.75 | | |
| Platinum Loan Servicing, Inc | $0.00 | | Notice purposes only |
| Progressive Management Systems | $246.99 | | |
| Radius Global Solutions LLC | $8,988.01 | | |
| Sequoia Financial Services | $606.71 | | |
| SRA Associates LLC | $7,117.74 | | |
| Wagner, Falconer & Judd, Ltd | $36,604.83 | | |
| Daimler Trust | $10,803.01 | | 2015 Mercedes |
| Bureaus Investment Group Portfolio No. 15, LLC | $24,255.06 | | Capital One N.A. |

| CareRelate Inc. (Ronald Shinkman) | $2,643.00 | Performance of Patient Advocacy Services |
| IRS (unsecured) | $20,585.38 | Per amended claim |
| G&B Law, LLP (fka Greenberg & Bass)  (Estimated) | $150,000.00 | $135,287.60 Att'y Fees thru 8/29/19, est. of $15K to finish case |
| OUST Fees (Estimated) | $9,000.00 | Quarterly fees - Est. |
| Ch. 11 Trustee Admin (Estimated) | $200,000.00 | Estimated reserve |
| **Subtotal:** | **$593,327.08** | **$0.00** |
| | | |
| **TOTAL LOANS:** | **$8,950,000.00** | LBC: $7,450,000; Cohen: $1,500,000 (Cohen or other will provide shortfall) |
| | | |
| **TOTAL PAYMENTS:** | **$9,524,451.06** | |
| | | |
| **SURPLUS/DEFICIENCY:** | **-$574,451.06** | |

**REMAINING DEBT NOT BEING PAID PER SUBORDINATION**

| Name | Payoff Amount | Description |
|---|---|---|
| Luxury Asset Capital | $350,000.00 | 5th TD - Luxury Asset subordinates the full amount owed to it and will accept a 2nd position lien, with the following additional terms: (i) all other debts must be paid off (ii) they take security in the jewelry currently held by Beverly Loan, and (iii) they will agree to a 9 month Note on the balance, with interest and principal paid on maturity on March 15, 2020 (ie no cash interest to be paid until maturity) |

079

# EXHIBIT 7



FILED & ENTERED

APR 10 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Lisa Frances Platt<br><br><br><br><br><br><br><br><br>Debtor(s). | Case No.: 2:18-bk-21394-BB<br><br>CHAPTER 11<br><br>**ORDER (i) DENYING MOTION FOR RELIEF FROM STAY AND (ii) DIRECTING U.S. TRUSTEE TO APPOINT CHAPTER 11 TRUSTEE IF CERTAIN DEADLINES ARE NOT MET**<br><br>Date:    April 9, 2019<br>Time:    10:00 AM<br>Courtroom: 1539 |

A hearing in the above-referenced bankruptcy case was held before the Honorable Sheri Bluebond on April 9, 2019 at 10:00 a.m. in Courtroom 1539 on motion for relief from stay in connection with 205 North Tigertail Road, Los Angeles, CA  90049 ("Real Property") filed by Platinum Loan Servicing, Inc. ("Motion for Relief from Stay").  For reasons set forth in the Court's tentative ruling and on the record at the time of hearing,

/ /

/ /

/ /

1  **IT IS HEREBY ORDERED** that:

2      **1.** The Motion for Relief from Stay is DENIED without prejudice.

3      **2. The Office of the United States Trustee is hereby directed to appoint a**

4          **chapter 11 trustee in the above-entitled case if the debtor has not filed**

5          **either a motion to sell her Real Property or for approval of refinancing**

6          **of the secured debt on the property by <u>April 30, 2019</u>.**

7      **3.** If the debtor does file one of the motions identified in paragraph 2 above by

8          April 30, 2019, but a party in interest believes that the motion is frivolous or

9          otherwise lacking in merit, that party may file and serve not later than **May**

10         **6, 2019** papers explaining why it believes that the debtor should not be

11         treated as having met the April 30, 2019 deadline and an ex parte

12         application for appointment of chapter 11 trustee, which application the

13         Court may resolve on the papers without further notice or opportunity for

14         hearing.

15

16                     ###

17

18

19

20

21

22

23

24

25     Date: April 10, 2019

26                               Sheri Bluebond
                              United States Bankruptcy Judge

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

22287 Mulholland Hwy., # 318
Calabasas, California 91302

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/24/2019   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 09/24/2019   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Judge Bluebond, US Bankruptcy Court, 255 E Temple St., Suite 1534, Los Angeles, CA 90012
Debtor and all creditors listed on attached master mailing list, excluding NEF recipients served per item 1 above.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/24/2019 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: Platt | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:18-bk-21394 BB |

**ADDITIONAL SERVICE INFORMATION (if needed):**

NEF Service List (category I):

Paul M Brent on behalf of Creditor Beverly Loan Company
snb300@aol.com

Carolyn A Dye on behalf of Trustee Sam S Leslie (TR)
trustee@cadye.com

James R Felton on behalf of Debtor Lisa Frances Platt
jfelton@gblawllp.com, nknadjian@gblawllp.com

Todd S Garan on behalf of Creditor HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage
Investors, Inc., Mortgage Pass-Through Certificates, MLMI Series 2006-A1; Mr. Cooper (fka Nationstar Mortgage LLC)
as servicer
ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com

Todd S Garan on behalf of Interested Party Courtesy NEF
ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com

Lewis R Landau on behalf of Creditor Platinum Loan Servicing, Inc.
Lew@Landaunet.com

Lewis R Landau on behalf of Interested Party Courtesy NEF
Lew@Landaunet.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Sam S Leslie (TR)
sleslie@trusteeleslie.com, sleslie@ecf.axosfs.com;trustee@trusteeleslie.com

Randall P Mroczynski on behalf of Creditor Daimler Trust
randym@cookseylaw.com

Douglas M Neistat on behalf of Debtor Lisa Frances Platt
dneistat@gblawllp.com, mramos@gblawllp.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Alan I White on behalf of Creditor Elderlife Financial
aiwhitelaw@gmail.com

Alan I White on behalf of Interested Party Courtesy NEF
aiwhitelaw@gmail.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9013-3.1**

Label Matrix for local noticing
0973-2
Case 2:18-bk-21394-BB
Central District of California
Los Angeles
Mon Sep 23 09:58:02 PDT 2019

Beverly Loan Company
c/o P Brent
Steinberg Nutter & Brent
23801 Calabasas Road
# 2031
Calabasas, CA 91302-3316

Daimler Trust
c/o BK Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

HSBC Bank USA, National Association as Trust
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
P.O. Box 17933
San Diego, CA 92177-7921

LEA Accountancy, LLP
3435 Wilshire Boulevard
Suite 990
Los Angeles, CA 90010-1998

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Beverly Loan Company
9440 Santa Monica Blvd
Suite 301
Beverly Hills, CA 90210-4614

Bureaus Investment Group Portfolio No 15 LLC
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk VA 23541-1021

CareRelate Inc
Ronald Shinkman
9621 Woodley Ave
North Hills CA 91343-1903

Department of Water and Power
City of Los Angeles
Attn Bankruptcy
P.O Box 5111
Los Angeles CA 90055-0111

Douglas M. Neistat
Greenberg & Bass
16000 Ventura Boulevard
Suite 1000
Encino, CA 91436-2762

Eldercare Financial Services
PO BOX 206536
Dallas, TX 75320-6536

Franchise Tax Board
Attn: Bankruptcy
P.O. Box 2952
Sacramento, CA 95812-2952

HSBC Bank USA, National Association
Nationstar Mortgage LLC d/b/a Mr. Cooper
Attn: Bankruptcy Dept.
PO Box 619096
Dallas, TX 75261-9096

Hunt & Henriques
Portfolio Recovery Associates, LLC
151 Bernal Road
Suite 8
San Jose, CA 95119-1306

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Joanna Stingray
c/o Coldwell Banker
166 N Canon Dr
Beverly Hills, CA 90210-5304

LADWP
PO Box 30808
Los Angeles, CA 90030-0808

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Lisa Frances Platt
205 N. Tigertail Road
Los Angeles, CA 90049-2803

Luxury Asset Capital LLC
DBA Pawngo
4100 E Mississippi Ave
Suite 1850
Denver, CO 80246-3066

Marquee Funding Group
24025 Park Sorrento
Suite 150
Calabasas, CA 91302-4004

Med-Net Billing, Inc
122 Sheldon Street
El Segundo, CA 90245-3915

Mr. Cooper Mortgage Company
8950 Cypress Waters Blvd.
Coppell, TX 75019-4620

NCB Management Services, Inc.
PO Box 1099
Langhorne, PA 19047-6099

Nationwide Credit, Inc
P.O. Box 14581
Des Moines, IA 50306-3581

Platinum Loan Servicing, Inc
S.B.S. Trust Deed Network
31194 La Baya Dr
#106
Thousand Oaks, CA 91362-6426

Progressive Management Systems
1521 West Cameron Avenue
West Covina, CA 91790-2738

Radius Global Solutions LLC
PO BOX 390905
Minneapolis, MN 55439-0905

S & R Income Fund 1, LLC
S.B.S. Trust Deed Network
31194 La Baya Dr
#106
Thousand Oaks, CA 91362-6426

S.B.S. Trust Deed Network
31194 La Baya Drive, #106
Thousand Oaks, CA 91362-6426

SBA Associates LLC
401 Minnetonka Rd
Somerdale, NJ 08083-2914

Sequoia Financial Services
28632 Roadside Drive
Suite 110
Agoura Hills, CA 91301-6074


United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Wagner, Falconer & Judd, Ltd
325 North Corporate Drive
Suite 100
Brookfield, WI 53045-5828

Wayne Platt
205 N Tigertail Road
Los Angeles, CA 90049-2803


Douglas M Neistat
G&B LAW, LLP
16000 Ventura Blvd.
Suite 1000
Encino, CA 91436-2762

James R Felton
16000 Ventura Blvd Ste 1000
Encino, CA 91436-2762

Sam S Leslie (TR)
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010-1998


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


LOS ANGELES COUNTY TREASURER & TAX COLLECTOR
PO BOX 54110
LOS ANGELES, CA 90054


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Courtesy NEF

(u)Elderlife Financial
4299 MacArthur, Ste 212
Newport Beach

(u)Hurwitz James Company


(u)Platinum Loan Servicing, Inc.

(d)Daimler Trust
c/o BK Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

(d)Lisa Frances Platt
205 N. Tigertail Road
Los Angeles, CA 90049-2803


End of Label Matrix
Mailable recipients    38
Bypassed recipients     6
Total                  44