CRAIG G. MARGULIES (SBN 185925)
ANNA LANDA (SBN 276607)
**MARGULIES FAITH, LLP**
16030 Ventura Blvd., Suite 470
Encino, California 91436
Telephone: (818) 705-2777
Facsimile:  (818) 705-3777
Email: Craig@MarguliesFaithLaw.com
Email: Anna@MarguliesFaithLaw.com

Attorneys for Debtor, Lisa Frances Platt

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LISA FRANCES PLATT,<br><br>Debtor. | Case No.:  2:18-bk-21394-BB<br><br>Chapter:  7<br><br>**OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY) [Dkt. No. 170]; DECLARATIONS IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: December 17, 2019<br>Time: 10:00 a.m.<br>Location: U.S. Bankruptcy Court<br>　　　　　Courtroom 1539<br>　　　　　255 E. Temple Street<br>　　　　　Los Angeles, CA 90012 |

**TABLE OF CONTENTS**                      **Page**

I.    **RELEVANT BACKGROUND**.......................................................................1

II.   **ARGUMENT**..............................................................................................3

   A.  **Creditor's Interests in the Property is Adequate Protected and no Other Cause Justifies Relief from Stay**........................................................3

   B.  **Creditor Is Not Entitled to Relief From the Automatic Stay Under 11 U.S.C. § 362(d)(2) as the Property Had Equity**.................................................11

   C.  **Creditor Has Not Made the Showing Required for the Grant of Extraordinary "In Rem" Relief**...............................................................................12

III.  **CONCLUSION**.........................................................................................14

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                          **Page**

3

Albany Partners, Ltd. V. Westbrook (In re Albany Partners, Ltd.),
    749 F.2d 670, 674 (11th Cir. 1984) ...................................................................10

4

Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.),
    96 F.3d 346, 351 (9th Cir. 1996) ...........................................................................3

5

6

Can-Alta Properties, Ltd. v. State Savings Mortgage Co. (In re Can-Alta
    Properties, Ltd.),
    87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) ...............................................................10

7

Dallas-Fort Worth Regional-Airport Board v. Braniff Airways, Inc.,
    26 B.R. 628, 635 (U.S.D.C. N.D. Tex. 1982) ...............................................11

8

9

First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire
    Holdings, Inc.),
    470 B.R. 864, 871 (B.A.P. 9th Cir. 2012) ...................................................13, 14

10

FSFG Service Corp. v. Kim (In re Kim),
    71 B.R. 1011, 1015 (Bankr. C.D. Cal. 1987) ...............................................5

11

12

In re Chameleon Systems, Inc.,
    306 B.R. 666 (Bankr. N.D. Cal. 2004) ...........................................................10

13

In re Curtis,
    40 B.R. 795, (Bankr. D. Utah 1984) ...............................................................4

14

15

In re Dorsey,
    476 B.R. 261, 265-66 (Bankr. C.D. Cal. 2012). ......................................14

16

In re Holt,
    2010 Bankr. LEXIS 2846, 2010 WL 3294693, *6 (Bankr. D. Mont. 2010) ...............5

17

18

In re Hughes,
    2008 WL 4596638, *2 (Bankr. D. Kan. 2008) ...............................................3

19

In re Johnson,
    346 B.R. 190, 195 (9th Cir. B.A.P., 2006).    ...............................................13

20

21

In re McClure,
    2015 Bankr. LEXIS 1076, 2015 WL 1607365, *6 (Bankr. C.D. Cal.
    2015) ...................................................................................................................5

22

23

In re McCombs,
    88 B.R. 261 (Bankr. C.D. Cal. 1988) ...............................................................8

24

In re McKillips,
    81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) ...................................................5

25

26

In In re Mellor
    734 F.2d 1396, 1401 (9th Cir. 1984) ...............................................................5

27

28

In re Mense,
 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) ............................................................ 10

In re Norton,
 347 B.R. 291, 298 (Bankr. E.D. Tenn. 2006) ........................................................... 7

In re Planned Systems, Inc.,
 78 B.R. at 860 (Bankr. S.D. Ohio 1987) ............................................................ 5, 6

In re Plumberex Specialty Prods., Inc.,
 311 B.R. 551, 561 (Bankr. C.D. Cal. 2004) ...................................................... 4, 10

In re Setzer,
 47 B.R. at 345 ............................................................................................... 4, 10

In re Siciliano,
 167 B.R. 999, 1010 (Bankr. E.D. Pa 1994) ............................................................ 3

In re Smithfield Estates. Inc.,
 48 B.R. 910, 914 (Bankr. D.R.I. 1985) ................................................................ 6, 7

In re Sun Valley Ranches, Inc.,
 38 B.R. 595, 597 (Bankr. D. Idaho 1984). ............................................................. 7

In re Trinton/Richmond Associates,
 103 B.R. 764 (Bankr. E.D. Va. 1989) .................................................................... 9

In re Van Ness,
 399 B.R. 897, 900 (Bankr. E.D. Ca. 2009) ...................................................... 12, 13

In re Westchase I Assoc.,
 126 B.R. 692 (Bankr. W.D.N.C. 1991) .................................................................. 8

Lomas Mortgage USA, Inc. v. Elmore (In re Elmore),
 94 B.R. 670, 673 (Bankr. C.D. Cal. 1988) ............................................................. 6

Marsch v. Marsch (In re Marsch),
 805 F.2d 937, 939 (9th Cir. 1986) ....................................................................... 10

Pacific First Bank v. Boulders on the River, Inc. (In re Boulders on the
 River, Inc.),
 164 B.R. 99, 104 (9th Cir. B.A.P. 1994) ................................................................ 5

Setzer v. Hot Productions, Inc. (In re Setzer),
 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985) ........................................................ 4, 10

Stewart v. Gurley,
 745 F.2d 1194, 1196 (9th Cir. 1984) .................................................................... 11

State of Idaho v. Arnold (In re Arnold),
 36 F.3d 825, 828 (9th Cir. 1994) ..................................................................... 7, 10

Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex
    Specialty Prods., Inc.),
    311 B.R. 551, 557 (Bankr. C.D. Cal. 2004) ................................................................4

United Savings Assoc. of Texas v. Timbers of Inwood Forest,
    484 U.S. 365 (1988) ........................................................................................6, 7, 8, 9

**STATUTES**                                                                                    **Page**

11 U.S.C. § 105 ...............................................................................................................12

11 U.S.C. § 362(d)(1) .........................................................................3, 4 7, 8, 9, 10, 14

11 U.S.C. § 362(d)(2) ..............................................................................11, 12, 14

11 U.S.C. § 362(d)(4) ..............................................................................12, 13, 14

11 U.S.C. § 506(a).............................................................................................................8

**RULES**                                                                                       **Page**

Federal Rule of Bankruptcy Procedure 7001 ...................................................13

Federal Rule of Bankruptcy Procedure 9014 ...................................................13

1  **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE;**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE; CHAPTER 7 TRUSTEE, SECURED**

3  **CREDITORS; AND OTHER INTERESTED PARTIES:**

4       Lisa Frances Platt ("Debtor") in the above-captioned bankruptcy case identified as

5  Case Number 9:18-bk-21394-PC (the "Bankruptcy Case"), respectfully submits this

6  Opposition to the Motion for Relief from Automatic Stay Under 11 U.S.C. § 362 (the

7  "Motion", Dkt. No. 170) filed by creditor Platinum Loan Servicing, Inc. ("Creditor").  For the

8  reasons set forth below, the Debtor requests that the Motion be denied in its entirety.

9                                              **I.**

10                              **RELEVANT BACKGROUND**

11       The Debtor is an individual. Debtor filed a Chapter 11 Bankruptcy Petition on

12  September 28, 2018.  Debtor owns and resides at real property located at 205 North

13  Tigertail Road, Los Angeles, California 90049 ("Property").   On September 24, 2019,

14  Creditor filed this Motion, which was originally set for hearing on October 15, 2019.  On or

15  about October 1, 2019, junior lien holder Elderlife Financial as well as the Chapter 11

16  Trustee filed oppositions to the Motion.  On October 1, 2019, Debtor's case was converted

17  to a Chapter 7.  This Court granted an extension until December 6, 2019 for the Trustee

18  to file any additional oppositions to the Motion. The hearing on the Motion was continued

19  to December 17, 2019.  On November 21, 2019, Debtor's former counsel, G&B Law LLP

20  filed a Motion to Withdraw as Counsel.  On December 6, 2019, Debtor retained Margulies

21  Faith LLP as new Bankruptcy Counsel.

22       The Debtor sought bankruptcy and the protection afforded by the automatic stay to

23  obtain relief from collection efforts so that she can instead focus her time and attention on

24  reorganization.  The Debtor further seeks to preserve the value of her assets, and maintain

25  the Property, for the benefit of the Debtor's estate and its creditors.  Accordingly, the Debtor

26  determined that the Bankruptcy Case was the necessary and proper mechanism by which

27  to accomplish these goals.  Throughout her bankruptcy, Debtor has been actively pursuing

28

1  a refinance or the sale of her Property to properly reorganize and repay her secured and

2  unsecured debts.

3      **There has been a change in circumstances which the Court and all**

4  **interested parties need to be aware of**.  The Debtor has obtained an appraisal of her

5  Property from a licensed and certified real estate appraiser that values the Property at

6  $12,000,000 as of October 25, 2019.  A true and correct copy of the "10/25/19 Appraisal"

7  is attached hereto as **Exhibit "A."**  On or about December 6, 2019, Debtor and her

8  spouse secured refinancing that would directly repay Creditor as well as the first lien

9  holder.  An escrow has been opened through Central Escrow LA.  A true and correct

10 copy of the Estimated Borrower Statement is attached hereto as **Exhibit "B."**  True and

11 correct copies of the signed Loan Documents are attached hereto as **Exhibit "C."**

12 Through this refinance, Debtor is to receive a new loan in the amount of $7,750,000

13 ("New Loan").  Debtor estimates that the amount owed to the first lienholder in order to

14 satisfy its debt is approximately $3,300,000.  The amount owed to Creditor is

15 approximately $4,000,000.  The liens in third, fourth, fifth, sixth and seventh positions will

16 likely subordinate their secured claims to the New Loan in order to avoid being wiped out

17 completed in the pending foreclosure by Creditor.

18      This refinance further evidences the value of the Property at approximately

19 $12,000,000 as the new lender received a separate independent appraisal directly when

20 offering the New Loan.  At a traditional 65% loan to value ratio, the amount of the New

21 Loan implies the new lender used a value of approximately $12,000,000.  By providing

22 the loan in the amount of $7,750,000, the new lender would be protected by a 35%

23 equity cushion.  Although Debtor's Bankruptcy Case was converted to a Chapter 7,

24 allowing the automatic stay to remain intact will allow her to effectively refinance her

25 Property in the most effective manner and amplify the value to be received for all

26 creditors.

27 / / /

28

1    While Debtor recognizes that this Opposition is untimely filed, Debtor was

2    previously represented by other counsel.  Debtor just recently retained current counsel,

3    which immediately filed this Opposition.   In the absence of bad faith or prejudice to

4    Creditor, this Court granted an extension through December 6, 2019 for the Trustee to file

5    any additional oppositions to the Motion.  Debtor submits that it would similarly not be

6    deemed prejudicial for her late Opposition to be considered.  In the event Creditor alleges

7    otherwise, Debtor requests this Court grant Creditor an extension to file it's Reply.

8                                                     II.

9                                              **ARGUMENT**

10   **A.    Creditor's Interest in the Property is Adequately Protected and no**

11   **Other Cause Justifies Relief from Stay**

12       **1.    Creditor Has Failed to Present a *Prima Facie* Case That "Cause" for**

13           **Relief Exists Under 11 U.S.C. § 362(d)(1) Due to a Lack Of Adequate**

14           **Protection**

15       The Motion fails to meet the standard of 11 U.S.C. § 362(d)(1) because it

16   demonstrates neither "lack of adequate protection" nor other "cause" justifying relief from

17   stay.  Section 362(d)(1) of the Bankruptcy Code allows for relief from stay for "cause,"

18   including lack of adequate protection of an interest in property of a party in interest.  11

19   U.S.C. § 362(d)(1).  Bankruptcy Courts have such broad discretion to either lift or maintain

20   the automatic stay that "even when the requirements of § 362(d)(1) . . . are satisfied, a

21   bankruptcy court may, in its discretion, withhold relief from the automatic stay."  In re

22   Siciliano, 167 B.R. 999, 1010 (Bankr. E.D. Pa 1994); see also In re Hughes, 2008 WL

23   4596638, *2 (Bankr. D. Kan. 2008) (citing to In re Siciliano, supra).  The decision whether

24   to grant or deny relief from the automatic stay is determined on a case-by-case basis and

25   "is committed to the sound discretion of the bankruptcy court." Benedor Corp. v. Conejo

26   Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351 (9th Cir. 1996).

27

28

1    Here, Creditor falls short of establishing the elements entitling it to relief from stay

2  for "cause" under Section 362(d)(1).  Specifically, Creditor seeks relief from the automatic

3  stay under 11 U.S.C. § 362(d)(1), under the premise that Creditor's interest in the collateral

4  is allegedly not adequately protected because the value of the equity cushion in the

5  Property exceeding Movant's debt senior to Creditor's debt is insufficient.  However, the

6  Motion clearly provides that there is a 17% equity cushion, which is approximately

7  $1,726,919 based on Creditor's value of the Property and the amount of debts known to

8  Creditor.  This is an exceptional equity cushion in the Property located in an area that is

9  not declining in value.  Using the 10/25/19 Appraisal obtained by the Debtor, there is an

10  even greater equity cushion of approximately 35% or $4,226,918.54.

11              **i. Creditor Has Not Met the Burden of Producing Sufficient**

12              **Evidence to Establish a *Prima Facie* Case Under 11 U.S.C. §**

13              **362(d)(1) As There Is An Adequate Equity Cushion**

14    It is axiomatic that a party seeking relief from stay has the burden of presenting a

15  *prima facie* case demonstrating a factual and legal right to the relief it seeks.  <u>Truebro, Inc.</u>

16  <u>v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)</u>, 311 B.R. 551,

17  557 (Bankr. C.D. Cal. 2004) ("To obtain relief from the automatic stay, the party seeking

18  relief must first establish a *prima facie* case that "cause" exists for relief under § 362(d)(1)");

19  <u>see also</u> <u>In re Curtis</u>, 40 B.R. 795, (Bankr. D. Utah 1984) ("one who seeks relief from the

20  automatic stay must, in the first instance, establish a legally sufficient basis, *i.e.*, 'cause'

21  for such relief").  The policy foundations underlying the rule that a party seeking relief under

22  § 362(d)(1) bears the burden of producing evidence establishing a legally sufficient basis

23  for such relief are clear.  It would be both illogical and inefficient to require the debtor to

24  demonstrate the nonexistence of every conceivable cause for relief under § 362(d)(1).  <u>See</u>

25  <u>Setzer v. Hot Productions, Inc. (In re Setzer)</u>, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985).

26    Unless the quantum of proof on the issue of cause under § 362(d)(1) reaches a

27  certain threshold, no *prima facie* case is established, and the debtor is not required to

28

OPPOSITION TO MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)
Page - 4

introduce evidence to meet and rebut the *prima facie* case. <u>FSFG Service Corp. v. Kim (In re Kim)</u>, 71 B.R. 1011, 1015 (Bankr. C.D. Cal. 1987) ("A debtor need not offer evidence of adequate protection unless the creditor has established a prima facie case").   What constitutes a *prima facie* case for relief from stay turns on the grounds upon which relief from stay is requested.   Here, where Creditor's alleged "cause" for relief from stay is grounded upon an alleged lack of an adequate equity cushion, Creditor must establish a *prima facie* case supporting its assertion of such lack.   See <u>In re Planned Systems, Inc.</u>, 78 B.R. at 860.   In <u>In re Mellor</u>, 734 F.2d 1396, 1401 (9th Cir. 1984), "[t]he Ninth Circuit implied in the context of a relief from stay motion that a 10% cushion satisfies the adequate protection standard." <u>Pacific First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)</u>, 164 B.R. 99, 104 (9th Cir. B.A.P. 1994) (holding that 11.45% equity cushion provided adequate protection).   Case law almost uniformly holds that an equity cushion of at least 20% constitutes adequate protection.   <u>In re Holt</u>, 2010 Bankr. LEXIS 2846, 2010 WL 3294693, *6 (Bankr. D. Mont. 2010) (citing cases); <u>see also In re McKillips</u>, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (surveying the cases which show that an equity cushion of more than 20% is adequate but less than 11% is not).   The 20% threshold is applied to the use of cash collateral.   <u>In re McClure</u>, 2015 Bankr.   LEXIS 1076, 2015 WL 1607365, *6 (Bankr. C.D. Cal. 2015).   Here, Creditor admittedly evidences on the face of its Motion a 17% equity cushion using a low valuation of the Property of $9,500,000.   That being said, 17% equity cushion is significant and sufficient to provide adequate protection per <u>In re Mellor</u>.   Although Creditor states that this equity cushion decreases to 8% once the cost of sale is taken into account, this is an assumption as the cost of sale has not yet been determined and therefore should not be considered at this time.

## a) **The True and Correct Fair Market Value of the Property is $12,000,000**

Debtor obtained an appraisal dated October 25, 2019 that shows the Property is valued at **$12,000,000** as opposed to the $9,500.000 indicated in Creditor's Motion.   See

1  **Exhibit "A."** Based on this appraisal, the value of the equity cushion in the Property

2  exceeding Creditor's debt and the lien senior to Creditor (using figures in the Motion) is

3  approximately $4,226,918.54 and is **35%** of the fair market value of the Property. This is

4  most definitely considered an adequate equity cushion to provide the Creditor with

5  adequate protection.

6  Debtor's pending refinance further evidences the value of the Property at

7  approximately $12,000,000 as the new lender received a separate independent appraisal

8  directly when offering the New Loan. At a traditional 65% loan to value ratio, the amount

9  of the New Loan implies the new lender used a value of approximately $12,000,000. By

10 providing the loan in the amount of $7,750,000, the new lender would similarly be protected

11 by a 35% equity cushion.

12 In arguendo this Court finds the Property does not have a sufficient equity cushion,

13 this by itself does not warrant the granting of relief from stay. In In re Planned Systems,

14 Inc., 78 B.R. 852, 862 (Bankr. S.D. Ohio 1987), the Court noted that it is proof of a post-

15 petition decline in value, caused by the imposition of the automatic stay, as opposed to a

16 mere lack of equity in the property at issue, which would support a finding of lack of

17 adequate protection. See also Lomas Mortgage USA, Inc. v. Elmore (In re Elmore), 94

18 B.R. 670, 673 (Bankr. C.D. Cal. 1988) (citing to United Savings Assoc. of Texas v. Timbers

19 of Inwood Forest, 484 U.S. 365 (1988) for the proposition that an undersecured creditor

20 whose security is not depreciating is not entitled to adequate protection in a Chapter 11

21 case prior to confirmation of the plan). The Planned Systems court further noted that the

22 "existence or non-existence of equity should not be the *sine qua non* for adequate

23 protection." As stated by the court in In re Smithfield Estates. Inc.,

24      The weight of authority and in our view the better reasoned opinions,
25      hold that adequate protection relates to maintaining the status-quo
        during the period after the filing of the petition and before confirmation
26      or rejection of the plan. The secured creditor is entitled to protection
        against any depreciation or diminution in the value of the collateral as
27      it existed and was available to satisfy the debt on the date of the filing
        of the petition in bankruptcy.
28

1  In re Smithfield Estates. Inc., 48 B.R. 910, 914 (Bankr. D.R.I. 1985); See also In re Sun

2  Valley Ranches, Inc., 38 B.R. 595, 597 (Bankr. D. Idaho 1984).

3        Thus, "while an equity cushion is generally considered *prima facie* evidence of

4  adequate protection, the absence of an equity cushion does not establish the converse,

5  *i.e.*, that, as a matter of law, the creditor is not adequately protected."  In re Smithfield

6  Estates, Inc., 48 B.R. at 914.  Accordingly, "a creditor who is undersecured on the date of

7  the bankruptcy filing [(which Creditor concedes here)] is not entitled to relief from stay

8  merely by showing that there is no equity in the property."  Id.  Absent evidence

9  establishing a change in the value of the collateral, an (under)secured creditor's position

10  is not necessarily worse immediately after the bankruptcy filing than it was just prior

11  thereto. Id.  The concept of adequate protection is designed to protect the secured creditor

12  from any impairment in the value of its interest that is attributable to the automatic stay.  In

13  re Smithfield Estates, Inc., 48 B.R. at 914-15; see also In re Norton, 347 B.R. 291, 298

14  (Bankr. E.D. Tenn. 2006) ("Adequate protection safeguards a secured creditor's interest

15  in its depreciating collateral during the pendency of the automatic stay").  "The concept of

16  adequate protection was not designed or intended to place an undersecured or minimally

17  secured creditor in a better post-filing position than it was in before the imposition of the

18  automatic stay.  In re Smithfield Estates, Inc., 48 B.R. at 915; see also In re Norton, 347

19  B.R at 298.

20        **ii.  Creditor Is Adequately Protected and Therefore Not Entitled To**

21        **Relief From Stay Under 11 U.S.C. § 362(d)(1)**

22        The Supreme Court in Timbers held that the "interest in Property" protected by §

23  362(d)(1) does not include a secured party's right to immediate foreclosure.  Instead, the

24  value of the interest in property means the value of the collateral.  Timbers, 484 U.S. at

25  372.  A review of this analysis leads to the inescapable conclusion that Creditor is

26  adequately protected in the value of its collateral and thus not entitled to relief from stay

27  pursuant to 11 U.S.C. § 362(d)(1).

28

1    In <u>Timbers</u>, the Court reasoned that under 11 U.S.C. § 506(a) an allowed claim "is

2   a secured claim to the extent of the value of such creditor's interest in the property." 484

3   U.S. at 372.  Moreover, the plain language of 11 U.S.C. § 361 makes it clear that an entity

4   with an interest in property lacks adequate protection to the extent there is a "decrease in

5   the value of such entity's interest in such property."  The <u>Timbers</u>' Court determined that

6   the phrase "value of interest in property" in § 506(a) and § 361(1) and (2) is identical when

7   applied to secured creditors.  In both cases the "value of the interest in property" means

8   "the value of the collateral" <u>Timbers</u>, 484 U.S. at 372.

9    Once cognizant of the Supreme Court's instruction that the phrase "value of the

10   interest in property" refers to the value of the collateral, it follows that the "interest in

11   property" that is protected under § 362(d)(1) is the creditor's interest in the collateral.  This

12   conclusion is confirmed by the court when it acknowledges that the "interest in property"

13   "referred to by § 362(d)(1) includes the right to have the security applied in payment of the

14   debt upon completion of the reorganization" and to the provision of adequate protection "if

15   the security is depreciating during the term of the stay." <u>Timbers</u>, 484 U.S. at 370.

16    The Bankruptcy Court for the Central District has interpreted <u>Timbers</u> to mean that

17   an oversecured creditor is not entitled to adequate protection of its equity cushion if such

18   creditor is protected from any decline in value of its collateral though the maintenance and

19   preservation of the property.  <u>In re McCombs</u>, 88 B.R. 261 (Bankr. C.D. Cal. 1988).

20   Moreover, in interpreting <u>Timbers</u>, other cases suggest that as long as the value of the

21   collateral is not declining, the fact that the accrual of interest is depleting the equity cushion

22   does not entitle the secured creditors to adequate protection payments.  <u>In re Lane</u>, 108

23   B.R. 6 (Bankr. D. Mass. 1989); <u>In re Westchase I Assoc.</u>, 126 B.R. 692 (Bankr. W.D.N.C.

24   1991).  Thus, while an undersecured creditor is entitled to adequate protection in the form

25   of cash payments or additional security to protect the creditor's interest in property that is

26   declining in value, it is not entitled to interest payments as compensation for its "lost

27   opportunity" of not being able to foreclose immediately on its collateral.  <u>See Forest Ridge</u>

28

1  II, Ltd., 116 B.R. 937, 950 (Bankr. W.D.N.C. 1990); Marrion St. Partnership, 108 B.R. 236,

2  224, (Bankr. D. Minn. 1989); In re Trinton/Richmond Associates, 103 B.R. 764 (Bankr.

3  E.D. Va. 1989).

4      Under the analysis espoused by Timbers and its progeny, Creditor would only be

5  entitled to relief from stay under 11 U.S.C. § 362(d)(1) if the value of the Property were

6  declining and the Debtor failed to provide adequate protection payments to compensate

7  for this decline in value.  Accordingly, for Creditor to establish and entitlement to relief from

8  stay under 11 U.S.C. § 362(d)(1) on the basis of an asserted insufficient equity cushion,

9  Creditor would need to provide evidence both that the Property has declined in value

10  during the Bankruptcy Case and that the Debtor is not providing adequate protection

11  payments to compensate Creditor for such decline.  Creditor has failed to meet its burden

12  of proof because it has not provided evidence showing a decline in value since the Petition

13  Date, thereby precluding a finding that Creditor's interest in the Property is not adequately

14  protected.

15      Clearly, Creditor fails to establish a *prima facie* case under § 362(d)(1) that relief

16  from stay should be granted for "cause."  Here, there is no argument or evidence that the

17  Property, which is being preserved and maintained by the efforts of the Debtor, is declining

18  in value and the Property has a significant equity cushion of 17% based on Creditor's value

19  and 35% based on the Debtor's value.  These combined facts establish that Creditor is not

20  entitled to relief from the automatic stay because its interest is adequately protected by its

21  security.  Debtor successfully securing the New Loan in the amount of $7,750,000 further

22  contributes to the argument that there is absolutely no evidence that the Property is

23  declining in value.  Accordingly, it only follows that Creditor's interest in the Property is

24  adequately protected and not entitled to relief under Section 362(d)(1) of the Bankruptcy

25  Code.

26  / / /

27  / / /

28

## 2.    There is no Other "Cause" for Relief from Stay Under 11 U.S.C. § 362(d)(1)

Among the other the circumstances or events that constitute "cause" sufficient to justify relief from stay under 11 U.S.C. § 362(d)(1), it is "well established that a lack of good faith constitutes 'cause' for lifting the say to permit foreclosure." Can-Alta Properties, Ltd. v. State Savings Mortgage Co. (In re Can-Alta Properties, Ltd.), 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988).  However, the "existence of good faith depends on an amalgam of facts and not upon a specific fact." Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994); see also In re Setzer, 47 B.R. at 345 ("Courts have held many factors to be material to the broad principle of good faith, and have recognized that the determination can only be made on an *ad hoc* basis").  The relevant consideration is "whether the debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy efficient reorganization on a feasible basis." In re Plumberex Specialty Prods., Inc., 311 B.R. 551, 561 (Bankr. C.D. Cal. 2004).  Further, the Ninth Circuit has found that "[g]ood faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." State of Idaho v. Arnold (In re Arnold), 805 F.2d 937, 939 (9th Cir. 1986).

"In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions . . . [p]articularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." In re Mense, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) (quoting Albany Partners, Ltd. V. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984)).  The standard is a difficult one to meet, and courts have failed to find a lack of good faith even where, for example, the debtor was a corporation with no income, no employees and less than $10,000.00 in unsecured debt (In re Chameleon Systems, Inc., 306 B.R. 666 (Bankr. N.D. Cal. 2004)), or where the bankruptcy was filed immediately after entry of a large judgment against the debtor (Plumberex, supra).

1  In the instant case, the Chapter 11 case was clearly filed in good faith.  The Debtor

2  has not filed any prior bankruptcy cases.  The Debtor attempted to restructure her debt.

3  She attempted but was unsuccessful at securing post-petition refinancing of her Property

4  and her case was therefore converted to a Chapter 7.  Debtor currently has a pending loan

5  refinance that will satisfy the first lien as well as Creditor's second lien.  The liens in third,

6  fourth, fifth, sixth and seventh positions will likely subordinate their secured claims to the

7  New Loan in order to avoid being wiped out completely in the pending foreclosure by the

8  Creditor.  Allowing the refinance to close will allow Debtor and her family to retain their

9  primary residence and family home, and maximize amounts to be received for all parties

10  in Debtor's bankruptcy estate.

11  **B.    Creditor Is Not Entitled to Relief From the Automatic Stay Under 11**

12  **U.S.C. § 362(d)(2) as the Property Has Equity**

13  For Creditor to obtain relief from stay under 11 U.S.C. § 362(d)(2), this Court must

14  find both that the Debtors lack equity in the Property and that the Property is not necessary

15  for the Debtors' effective reorganization.  If either of these factors is absent, relief from the

16  stay pursuant to 11 U.S.C. § 362(d)(2) cannot be granted.  See, e.g., Dallas-Fort Worth

17  Regional-Airport Board v. Braniff  Airways, Inc., 26 B.R. 628, 635 (U.S.D.C.  N.D. Tex.

18  1982).

19  Although the Debtor admits that as her case has been converted to a Chapter 7,

20  the Property is therefore is not necessary for an effective reorganization.  However, the

21  Property does have substantial equity.  Under § 362(d)(2), all liens encumbering the

22  collateral are taken into account in determining whether the debtor has equity. See Stewart

23  v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984). § 362(d)(2), moreover, refers to the debtor's

24  equity, which requires determining whether the debtor has value in the property that is

25  unencumbered by liens.  11 U.S.C. § 362(d)(2).  In this case, Creditor declares that the

26  aggregate amount due on all liens equals $8,923,246.34.  The value of the Property

27  according to the Motion is $9,500,000.  This value of the Property exceeds the amounts

28

1  owed to all secured creditors by \$576,754.  Furthermore, if using the total debt owed per

2  Creditor's Motion but with the \$12,000,000 value in Debtor's 10/25/19 Appraisal, there is

3  approximately \$3,076,753.66 of equity.  Thus, it is clear there is significant equity in the

4  Property based on both valuations and Creditor fails to meet its burden on establishing

5  cause under § 362(d)(2).

6      **C.      Creditor Has Not Made the Showing Required for the Grant of**

7  **Extraordinary "In Rem" Relief**

8      Creditor's Motion asks for an order that, "allows a designated law enforcement

9  officer to evict the Debtor and any other occupant from the Property regardless of any

10  future bankruptcy filing concerning the Property for a period of 180 days from the hearing

11  on this Motion without further notice."  See Mtn. at p. 5, Number 8.  The Motion also asks

12  this Court for an order that "is binding and effective in any bankruptcy case commenced

13  by or against any debtor who claims any interest in the Property for a period of 180 days

14  from the hearing of the Motion without further notice."  See Mtn. at p. 5, Number 10.  This

15  extraordinary relief sought is improper and should not be granted.

16      This extraordinary relief sought by Creditor is similar to that which was requested

17  in In re Van Ness.  Judge Klein of the Eastern District of California found in In re Van

18  Ness that certain injunctive and extraordinary "in rem" relief could only be handled

19  through an adversary proceeding and not by a Motion for Relief.  In re Van Ness, 399

20  B.R. 897, 900 (Bankr. E.D. Ca. 2009).  In In re Van Ness, Deutsche Bank National Trust

21  Company's attempt to obtain possession via an unlawful detainer action of a particular

22  property was stayed following a bankruptcy filing.  Deutsche Bank filed a Motion for

23  Relief requesting extraordinary relief including those which are being sought by Creditor.

24  Deutsche Bank provided as the basis for their Motion for Relief: (a) cause, (b)

25  inadequate protection and (c) lack of equity.  Id. at 901.  Much like the case at bar,

26  Deutsche Bank did not request 11 U.S.C. §362(d)(4) relief.  Id.  The Van Ness Court

27  determined that neither 11 U.S.C. §362(d), nor 11 U.S.C. §105 provided sufficient

28

1    authority to grant the requested relief, as the relief went beyond "an exercise of basic

2    equity jurisdiction." Id. at 902-903.  "Since the 180-day filing prohibition sought by

3    Deutsche Bank is not associated with a dismissal and is not grounded on specific

4    provisions of the Bankruptcy Code, the authority to issue a stay relief order prohibiting

5    the debtor and third parties from filing a bankruptcy case affecting the subject property

6    must turn on the court's general equity jurisdiction." Id. at 904.  The Van Ness Court

7    determined that an adversary proceeding was required to provide the injunction and

8    other relief requested as the relief requested was not available under a Rule 9014

9    Motion, but rather needed the Rule 7001 adversary proceeding procedures.  Id.

10        Similarly, in In re Johnson, the Bankruptcy Appellate Panel found that in rem

11   orders were unavailable to the bankruptcy courts in a contested matter.  In re Johnson,

12   346 B.R. 190, 195 (9th Cir. B.A.P., 2006).  The Johnson Court determined that because

13   there was no finding of an intent to hinder, delay, and defraud creditors an in rem order

14   including 11 U.S.C. §362(d)(4) would be inappropriate even if it did apply.  Id. at 197.

15   The Johnson Court opined that because the Movant was requesting in rem relief not

16   specifically available under 11 U.S.C. §362, the in rem relief should have been sought

17   and received under the adversary proceeding procedure.  Because it was not, the order

18   had no binding effect on the subsequent case.  Id. at 196.

19        It is significant that Creditor in the instant case does not invoke § 362(d)(4), which

20   does provide "in rem" relief as it offers a means for a stay relief order to be binding in

21   another case because there are no facts to justify such a finding under this section.  It is

22   under 11 U.S.C. § 362(d)(4), relief from stay can be granted where "the court finds that

23   the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that

24   involved . . . multiple bankruptcy filings."  11 U.S.C. § 362(d)(4).  "[F]or the court to make

25   such an affirmative finding [as to the three elements], it must have proof of the elements

26   required to justify such relief  See First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In

27   re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (B.A.P. 9th Cir. 2012).  Under In re

28

1    First Yorkshire Holdings, Inc., the party seeking relief must show that (1) the debtor's

2    bankruptcy filing was part of a "scheme;" (2) the object of the scheme was to delay,

3    hinder, or defraud creditors; and (3) the scheme included multiple transfers without

4    consent and/or multiple filings.  See also In re Dorsey, 476 B.R. 261, 265-66 (Bankr.

5    C.D. Cal. 2012).  Here, this is Debtor's first and sole bankruptcy filing.  It is undisputed

6    that there is no "scheme" taken on the part of the Debtor to warrant a finding under 11

7    U.S.C. § 362(d)(4) and presumably, this is why Creditor did not request such relief.

8    There have been no transfers of the Property or any other actions on behalf of the

9    Debtor showing an intent to delay, hinder or defraud Debtor's creditors.  Instead, the

10   Debtor has been actively attempting to reorganize on her debts throughout her Chapter

11   11 bankruptcy by trying to obtain financing or selling the Property.  Therefore, Creditor

12   would not be able to obtain an order with the extraordinary relief it requested had it

13   sought additional relief under § 362(d)(4) and the Motion must be denied on those

14   grounds.

15                                          **III.**

16                                   **CONCLUSION**

17        For the foregoing reasons, the Debtor requests that the Court deny Creditor's

18   request for relief from stay under 11 U.S.C. § 362(d)(1) and (d)(2), and for the extraordinary

19   relief requested in its entirety and grant such other and further relief as the Court deems

20   just and proper.

21

22   Dated: December 10, 2019            **MARGULIES FAITH, LLP**

23

24                                       By: */s/ Craig G. Margulies*
                                              Craig G. Margulies
25                                       Attorney for Debtor, Lisa Frances Platt

26

27

28

## DECLARATION OF LISA FRANCES PLATT

I, Lisa Frances Platt, hereby declare as follows:

1.    I am the Debtor in Bankruptcy Case Number 2:18-bk-21394-BB (the "Bankruptcy Case").

2.    I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify hereto.

3.    I submit this declaration in support of the Opposition to the Motion for Relief from Automatic Stay Under 11 U.S.C. § 362 (the "Opposition").

4.    Capitalized terms herein have the same meaning in the Opposition with which this Declaration is concurrently filed.

5.    With my spouse, I own the real property located at 205 North Tigertail Road, Los Angeles, California 90049 (the "Property" and/or "Residence").

6.    The Property is my primary residence and the primary residence of my spouse and our two children.

7.    On September 28, 2018 (the "Petition Date"), I filed a voluntary Chapter 11 petition before this Court, initiating the Bankruptcy Case.

8.    I filed the Bankruptcy Case in good faith, and sought bankruptcy and the protection afforded by the automatic stay to obtain relief from collection efforts so that I could instead focus my time and attention on reorganization.

9.    I filed bankruptcy to save my Residence and the equity therein. I seek to preserve the value of my assets, and maintain the Residence for the benefit of my estate and its creditors.

10.    Throughout my bankruptcy, I have been actively pursuing a refinance or the sale of my Property to properly reorganize and repay my secured and unsecured debts.

11.    On October 1, 2019, my case was converted to a Chapter 7.

12.    On December 6, 2019, I retained Margulies Faith LLP as my new Bankruptcy Counsel.

13.     The Property is encumbered by a first lien in favor of Mr. Cooper, a second

lien in favor of Platinum Loan Servicing, Inc., a third lien in favor of Elderlife Financial

Lending, LLC, a fourth lien in favor of Joana Stingray, a fifth lien in favor of Luxury Asset

Capital, LLC, a sixth lien in favor of Michael Cohen and a seventh lien in favor or IRS.

14.     Throughout my bankruptcy, I have been actively pursuing a refinance or

the sale of my Property to maximize the value received and repay my secured and

unsecured debts.

15.     On or about October 25, 2019, I obtained an Appraisal from a licensed and

certified real estate appraiser ("10/25/19 Appraisal").  The value was determined to be

$12,000,000.  Based on my knowledge of the area and surrounding homes and

comparables, I too believe this is an accurate valuation.  A true and correct copy of the

10/25/19 Appraisal is attached to the Declaration of the appraiser as **Exhibit "A,"** filed in

support of this Opposition, and is incorporated herein by this reference.

16.     **There has been a change in circumstances which the Court and all**

**interested parties need to be aware of**.  On or about December 6, 2019, my husband

and I were able to refinance the Property and obtain a new loan in the amount of

$7,750,000 ("New Loan").  Subsequently, an escrow has been opened through Central

Escrow LA (the "Escrow Company").  A true and correct copy of the Estimated Borrower

Statement is attached hereto as **Exhibit "B"** and is incorporated herein by this

reference.  True and correct copies of the signed Loan Documents are attached hereto

as **Exhibit "C"**.

17.     I estimate that the amount owed to the first lienholder in order to satisfy its

debt is approximately $3,300,000.  The amount owed to the second is approximately

$4,000,000.

18.     The New Loan will satisfy the debts owed to the first and second lenders.

19.     The liens in third, fourth, fifth, sixth and seventh positions will likely

subordinate their secured claims to the New Loan in order to avoid being wiped out

completely in the pending foreclosure by the 2nd lien holder.  The interested

1   professionals (escrow, new lender, and counsel) are seeking to obtain these

2   subordinations now.

3       20.    It is my understanding that the lender of the New Loan received a separate

4   independent appraisal directly, which also valued my Property at approximately

5   $12,000,000, as the New Loan of $7,750,000 is just about 65% of this value.

6       21.    Although my Bankruptcy Case was converted to a Chapter 7, allowing the

7   automatic stay to remain intact will allow me to effectively close this refinance on my

8   Property in the most effective manner, allow the Residence to be properly marketed, and

9   amplify the value to be received for the benefit of all creditors and interested parties,

10  including me and my family.

11

12      I declare under penalty of perjury under the laws of the United States that the

13  foregoing is true and correct. Executed this _10_ day of December 2019, at Los Angeles,

14  California.

15

16  Lisa Frances Platt

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CRAIG BELLINGER

I, Craig Bellinger, declare as follows:

1.    I am a certified Real Estate Appraiser for the state of California, State License Number AR010660.

2.    I know the matters stated in this declaration are within my personal knowledge, and if called upon to testify hereto I can and will do so competently.

3.    I specialize in property valuations in Southern California.  The property located at 205 North Tigertail Road, Los Angeles, California 90049 (the "Property") is the subject of the appraisal report (the "Appraisal") attached as **Exhibit "A"** and incorporated herein by this reference.

4.    For the reasons set forth in detail in the Appraisal, it is my opinion that the value of the Property is $12,000,000 as of October 25, 2019.

5.    The Appraisal contains the description, analysis, and supportive data for the conclusions, final opinion of value, descriptive photographs, assignment conditions, and appropriate certifications.

6.    My opinion of the fair market value of the Property as indicated in the Appraisal is based on: 1) a complete visual inspection of the interior and exterior areas of the Property; 2) inspection of the neighborhood; and 3) inspection of comparable sales; verify, and analyze data from reliable public and/or private sources.

7.    The Appraisal, in more detail, indicates my analysis, opinions and conclusions of the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 10 , 2019 at ~~Dhuuwus~~ , California.

Craig Bellinger
Craig Bellinger

# EXHIBIT A



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:

205 N Tigertail Rd
Los Angeles, CA  90049
Tract # 19365 Lot 1

### FOR:

Bay Lending
380 Beach Road, Suite D
Burlinghame, CA 94010

### AS OF:

10/25/2019

### BY:

Craig Bellinger

Uniform Residential Appraisal Report   File # X191112

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address | 205 N Tigertail Rd | City Los Angeles | State CA | Zip Code 90049 |
| Borrower Platt Family Trust | Owner of Public Record Platt Family Trust | County Los Angeles |
| Legal Description Tract # 19365 Lot 1 | | |
| Assessor's Parcel # 4403-011-006 | Tax Year 2018 | R.E. Taxes $ 43,347 |
| Neighborhood Name Brentwood | Map Reference 31084 | Census Tract 2623.03 |

**SUBJECT**

Occupant: ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☐ PUD   HOA $ 0   ☐ per year ☐ per month
Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type: ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Private Appraisal
Lender/Client Bay Lending    Address 380 Beach Road, Suite D, Burlinghame, CA 94010
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). Realist/MLS

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | Property Values | ☒ Increasing ☐ Stable ☐ Declining | PRICE $ (000) | AGE (yrs) | One-Unit | 80 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | Low 7,000 | 1 | 2-4 Unit | 5 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | High 24,500 | 100 | Multi-Family | 5 % |
| | | | | Pred. 12,000 | 20 | Commercial | 10 % |
| | | | | | | Other | % |

Neighborhood Boundaries North of San Vicente Boulevard, South of Crestwood Hills Park, East of Mandeville Canyon Road, and West of the 405 Freeway.
Neighborhood Description The neighborhood consists primarily of 1 and 2 story F/S detached average to good quality SFR's of compatibly mixed styles, sizes, and ages. Close proximity to schools, shopping, and other necessary services.
Market Conditions (including support for the above conclusions) Market conditions currently exhibit an exposure time of 3-9 months within the subject's immediate neighborhood if properly priced. Conventional and government sponsored loans are readily available with some financing concessions being offered. Local market appears to show signs of stabilization based on current sales activity.

**SITE**

| | | |
|---|---|---|
| Dimensions 23053 sf | Shape Rectangular | View B;CtySky; |
| Specific Zoning Classification R1 | Zoning Description Single Family Residence | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe Current use is highest and best use.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 06037C1590F   FEMA Map Date 09/26/2008
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
Subject is an interior lot. No adverse effect noted.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls Concrete/Good | Floors Wd,Stn,Crpt/Good |
| # of Stories 2 | ☐ Full Basement ☐ Partial Basement | Exterior Walls Stucco/Good | Walls Drywall/Good |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | Roof Surface Slate Stone/Good | Trim/Finish Wood/Good |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts Aluminum/Good | Bath Floor Tile/Good |
| Design (Style) French Traditional | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type Insulated/Good | Bath Wainscot Tile/Good |
| Year Built 2002 | Evidence of ☐ Infestation None | Storm Sash/Insulated None | Car Storage ☐ None |
| Effective Age (Yrs) 10 | ☐ Dampness ☐ Settlement | Screens Screens/Good | ☒ Driveway # of Cars 2 |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities   Woodstove(s) # 0 | Driveway Surface Concrete/Stone |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel Gas | ☒ Fireplace(s) # 3 ☒ Fence Block | ☒ Garage # of Cars 2 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Cover ☐ Porch Covered | ☐ Carport # of Cars 0 |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other C. Fan | ☒ Pool Inground ☐ Other Spa | ☐ Att. ☐ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 12 Rooms   5 Bedrooms   5.1 Bath(s)   6,603 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). Subject is a custom built home with upgraded features throughout. Features include: French doors, crown molding, 3 fireplaces, huge walk-in closets, recessed lighting, custom fixtures, pool, spa, covered patio/deck, guest house.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). C2;Kitchen-updated-one to five years ago;Bathrooms-updated-one to five years ago;Subject is in overall good condition. Kitchen has upgraded Viking Oven, subzero side by side refrigerator/freezer. Baths have stone and tile throughout, and upgraded fixtures. See addendum for additional features.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe
No physical, functional, or external inadequacies noted. Guest house is not included in the main house square footage as it is considered a separate, functional unit. Guest house has a separate bath, and is custom built with unique, high quality features.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Fannie Mae Form 1004 March 2005

**EXHIBIT A**

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report    File # X191112

| | There are | 6 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 6,000,000 | to $ | 25,000,000 | |
|---|---|---|---|---|---|---|---|
| | There are | 17 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 7,000,000 | to $ | 24,500,000 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 205 N Tigertail Rd | 694 Walther Way | | 144 N Woodburn Dr | | 250 S Chadbourne Ave | |
| | Los Angeles, CA 90049 | Los Angeles, CA 90049 | | Los Angeles, CA 90049 | | Los Angeles, CA 90049 | |
| Proximity to Subject | | 0.62 miles NW | | 0.83 miles NE | | 0.06 miles E | |
| Sale Price | $ | | $ 12,000,000 | | $ 15,000,000 | | $ 10,625,000 |
| Sale Price/Gross Liv. Area | 231.73 sq.ft. | 1464.31 sq.ft. | | 1477.83 sq.ft. | | 2609.28 sq.ft. | |
| Data Source(s) | | Realist/MLS;DOM 12 | | Realist/MLS;DOM 58 | | Realist/MLS;DOM 9 | |
| Verification Source(s) | | MLS#19464978 | | MLS#18409168 | | MLS#19472764 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s05/19;c05/19 | | s02/19;c01/19 | | s07/18;c06/18 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 23053 sf | 18043 sf | +25,000 | 17382 sf | +28,000 | 14519 sf | +43,000 |
| View | B;CtySky; | B;CtySky; | | B;CtySky; | | N;Res; | +200,000 |
| Design (Style) | DT2;Custom | DT2;Custom | | DT2;Custom | | DT2;Custom | |
| Quality of Construction | Q2 | Q2 | | Q2 | | Q2 | |
| Actual Age | 17 | 1 | 0 | 5 | 0 | 76 | 0 |
| Condition | C2 | C2 | | C2 | | C3 | +300,000 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 12 / 5 / 5.1 | 12 / 6 / 6.1 | -10,000 | 12 / 6 / 6.1 | -10,000 | 12 / 4 / 4.1 | +10,000 |
| Gross Living Area | 6,603 sq.ft. | 8,195 sq.ft. | -111,000 | 10,150 sq.ft. | -177,000 | 4,072 sq.ft. | +127,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Guest House | No Guest Hous | +500,000 | Guest House | | No Guest Hous | +500,000 |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2gbi2dw | 2gbi2dw | | 6gbi6dw | -40,000 | 2gbi2dw | |
| Porch/Patio/Deck | Covered Patio | Covered Patio | | Covered Patio | | Covered Patio | |
| Fireplace | 3 Fireplaces | 3 Fireplaces | | 3 Fireplaces | | 3 Fireplaces | |
| Pool | Pool/Spa | Pool/Spa | | Pool/Spa | | Pool/Spa | |
| Fence | Block | Block | | Block | | Block | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 404,000 | ☐ + ☒ - | $ -199,000 | ☒ + ☐ - | $ 1,180,000 |
| Adjusted Sale Price | | Net Adj. 3.4 % | | Net Adj. 1.3 % | | Net Adj. 11.1 % | |
| of Comparables | | Gross Adj. 5.4 % $ 12,404,000 | | Gross Adj. 1.7 % $ 14,801,000 | | Gross Adj. 11.1 % $ 11,805,000 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Realist/MLS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Realist/MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Realist/MLS | Realist/MLS | Realist/MLS | Realist/MLS |
| Effective Date of Data Source(s) | 10/25/2019 | 10/25/2019 | 10/25/2019 | 10/25/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Comparables #1 - 5  are reported to have had no sales or listing
activity in the past 12 months. Comparables #6 and #7 are current active listings. Subject has not been sold in the previous 36 months.

Summary of Sales Comparison Approach    All comparables are from the same or similar neighborhoods and have similar marketing influences. See
addendum for additional information on adjustments.

Indicated Value by Sales Comparison Approach $    12,000,000

Indicated Value by: Sales Comparison Approach $    12,000,000    Cost Approach (if developed) $    12,001,964    Income Approach (if developed) $

Although supported by the Cost Approach, the Market Approach is given the greatest weight as it best reflects the attitudes of buyer and seller in
the marketplace. The Income Approach was not used due to the lack of rental data. APPRAISAL REPORT CONFORMS TO USPAP
GUIDELINES.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:    There are no conditions or repairs
required to the subject property. The appraisal made in as is condition.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$    12,000,000    , as of    10/25/2019    , which is the date of inspection and the effective date of this appraisal.

| Freddie Mac Form 70 March 2005 | UAD Version 9/2011 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

**EXHIBIT A**

Form 1004UAD — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Uniform Residential Appraisal Report          File #  X191112

| | |
|---|---|
| | See attached addendum |

**ADDITIONAL COMMENTS**

---

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)          Site value was determined by the extraction
method using closed comparable sales and vacant lots within the subject's neighborhood.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ 8,600,000 |
|---|---|---|
| Source of cost data   Marshall and Swift | DWELLING   6,603  Sq.Ft. @ $   450.00 | =$ 2,971,350 |
| Quality rating from cost service   Average   Effective date of cost data   09/2017 | 0  Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Improvements | =$ 800,000 |
| The land to value ratio is typical for the area based on availability of | Garage/Carport   593  Sq.Ft. @ $   120.00 | =$ 71,160 |
| buildable land and the desire to live in Southern California. | Total Estimate of Cost-New | =$ 3,842,510 |
| | Less   Physical   Functional   External | |
| | Depreciation   640,546 | =$( 640,546) |
| | Depreciated Cost of Improvements | =$ 3,201,964 |
| | "As-is" Value of Site Improvements | =$ 200,000 |
| Estimated Remaining Economic Life (HUD and VA only)   50  Years | INDICATED VALUE BY COST APPROACH | =$ 12,001,964 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier   = $ | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No   Data Source

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

---

Uniform Residential Appraisal Report    File # X191112

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:    The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:    The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:    The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**EXHIBIT A**

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report    File # X191112

APPRAISER'S CERTIFICATION:    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Fannie Mae Form 1004 March 2005

EXHIBIT A

Form 1004UAD – "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE

Uniform Residential Appraisal Report    File # X191112

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:          The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Craig Bellinger | Name |
| Company Name  Priority Appraisal | Company Name |
| Company Address  1440 Beaumont Avenue #115 | Company Address |
|  Beaumont, CA 92223 | |
| Telephone Number  714-865-2595 | Telephone Number |
| Email Address  craig_bellinger@yahoo.com | Email Address |
| Date of Signature and Report  10/25/2019 | Date of Signature |
| Effective Date of Appraisal  10/25/2019 | State Certification # |
| State Certification #  AR010660 | or State License # |
| or State License # | State |
| or Other (describe)                 State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  02/19/2020 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
|  205 N Tigertail Rd |      Date of Inspection |
|  Los Angeles, CA 90049 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $         12,000,000 |      Date of Inspection |
| LENDER/CLIENT | |
| Name  No AMC | COMPARABLE SALES |
| Company Name  Bay Lending | ☐ Did not inspect exterior of comparable sales from street |
| Company Address  380 Beach Road, Suite D, Burlinghame, CA | ☐ Did inspect exterior of comparable sales from street |
|  94010 |      Date of Inspection |
| Email Address | |

Freddie Mac Form 70 March 2005          UAD Version 9/201...          Fannie Mae F... 1004 March...

EXHIBIT A                                    Page 25

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report    File #    X191112

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 205 N Tigertail Rd Los Angeles, CA 90049 | 665 Walther Way Los Angeles, CA 90049 | | 141 S Cliffwood Ave Los Angeles, CA 90049 | | 701 N Bonhill Rd Los Angeles, CA 90049 | |
| Proximity to Subject | | 0.66 miles NW | | 0.64 miles SW | | 0.69 miles NW | |
| Sale Price | $ | | $ 14,600,000 | | $ 13,400,000 | | $ 12,800,000 |
| Sale Price/Gross Liv. Area | $ 231.73 sq.ft. | $ 1622.22 sq.ft. | | $ 1519.10 sq.ft. | | $ 1508.01 sq.ft. | |
| Data Source(s) | | Realist/MLS;DOM 6 | | Realist/MLS;DOM 31 | | Realist/MLS;DOM 21 | |
| Verification Source(s) | | MLS#19419366 | | MLS# 19446956 | | MLS# 19512270 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth Conv;0 | | ArmLth Conv;0 | | Listing | |
| Date of Sale/Time | | s01/19;c10/18 | | s07/19;c04/19 | | Active | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 23053 sf | 24535 sf | -6,000 | 21027 sf | +10,000 | 26144 sf | -15,000 |
| View | B;CtySky; | B;CtySky; | | B;CtySky; | | B;CtySky; | |
| Design (Style) | DT2;Custom | DT2;Custom | | DT2;Custom | | DT2;Custom | |
| Quality of Construction | Q2 | Q2 | | Q2 | | Q2 | |
| Actual Age | 17 | 1 | 0 | 1 | 0 | 21 | 0 |
| Condition | C2 | C2 | | C2 | | C2 | |
| Above Grade | Total 12 Bdrms. 5 Baths 5.1 | Total 12 Bdrms. 7 Baths 8.1 | -30,000 | Total 12 Bdrms. 5 Baths 8.0 | -25,000 | Total 12 Bdrms. 5 Baths 5.1 | 0 |
| Room Count | | | | | | | |
| Gross Living Area | 6,603 sq.ft. | 9,000 sq.ft. | -120,000 | 8,821 sq.ft. | -111,000 | 8,488 sq.ft. | -94,000 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Guest House | No Guest Hous | +500,000 | Guest House | | Basement Area | 0 |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2gbi2dw | 2gbi2dw | | 2gbi2dw | | 2gbi2dw | |
| Porch/Patio/Deck | Covered Patio | Covered Patio | | Covered Patio | | Covered Patio | |
| Fireplace | 3 Fireplaces | 3 Fireplaces | | 3 Fireplaces | | 3 Fireplaces | |
| Pool | Pool/Spa | Pool/Spa | | Pool/Spa | | Pool/Spa | |
| Fence | Block | Block | | Block | | Block | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 344,000 | | ☐ + ☒ - $ -126,000 | | ☐ + ☒ - $ -109,000 | |
| Adjusted Sale Price of Comparables | | Net Adj. 2.4 % Gross Adj. 4.5 % $ 14,944,000 | | Net Adj. 0.9 % Gross Adj. 1.1 % $ 13,274,000 | | Net Adj. 0.9 % Gross Adj. 0.9 % $ 12,691,000 | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Realist/MLS | Realist/MLS | Realist/MLS | Realist/MLS |
| Effective Date of Data Source(s) | 10/25/2019 | 10/25/2019 | 10/25/2019 | 10/25/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report   File # X191112

| FEATURE | SUBJECT | COMPARABLE SALE # 7 | | COMPARABLE SALE # 8 | | COMPARABLE SALE # 9 | |
|---|---|---|---|---|---|---|---|
| Address | 205 N Tigertail Rd Los Angeles, CA 90049 | 111 N Gunston Dr Los Angeles, CA 90049 | | | | | |
| Proximity to Subject | | 0.97 miles NE | | | | | |
| Sale Price | $ | $ 13,995,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 231.73 sq.ft. | $ 1521.20 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Realist/MLS;DOM 109 | | | | | |
| Verification Source(s) | | MLS#19469540 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Listing | | | | | |
| Concessions | | | | | | | |
| Date of Sale/Time | | Active | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 23053 sf | 16163 sf | +35,000 | | | | |
| View | B;CtySky; | B;CtySky; | | | | | |
| Design (Style) | DT2;Custom | DT2;Custom | | | | | |
| Quality of Construction | Q2 | Q2 | | | | | |
| Actual Age | 17 | 9 | 0 | | | | |
| Condition | C2 | C2 | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | -20,000 | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 12 5 5.1 | 15 6 7.1 | -20,000 | | | | |
| Gross Living Area | 6,603 sq.ft. | 9,200 sq.ft. | -130,000 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Guest House | Guest House | | | | | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | | | | |
| Energy Efficient Items | None Noted | None Noted | | | | | |
| Garage/Carport | 2gbi2dw | 2gbi2dw | | | | | |
| Porch/Patio/Deck | Covered Patio | Covered Patio | | | | | |
| Fireplace | 3 Fireplaces | 3 Fireplaces | | | | | |
| Pool | Pool/Spa | Pool/Spa | | | | | |
| Fence | Block | Block | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | -135,000 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 1.0 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 1.5 % | $ 13,860,000 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 7 | COMPARABLE SALE # 8 | COMPARABLE SALE # 9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Realist/MLS | Realist/MLS | | |
| Effective Date of Data Source(s) | 10/25/2019 | 10/25/2019 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**+upplemental Addendum**

File No. X191112

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |

**URAR : Sales Comparison Analysis - Summary of Sales Comparison Approach**

   Market conditions currently exhibit an exposure time of 3-9 months within the subject's immediate neighborhood if properly priced. Subject and comparables are located within the same or similar neighborhoods and have similar marketing influences. No bedroom adjustments were given as the bonus room and/or study could easily be converted into another bedroom. Gross living area adjusted at $50 per square foot for initial differences over 100 square feet and rounded to the nearest $1,000. Subject's lot is mostly level. Lot sizes adjusted at $5 per square foot for initial differences over 1000 square feet. Subject does have smoke detectors and CO detectors in required areas in the home. Hot water heater has necessary earthquake straps. Baths adjusted at $10,000 for a full bath, and $5,000 for a half bath.

**Recent sales in the immediate area that were reviewed but not used in the report:**

565 N. Tigertail Road $13,500 sq ft home 20,474 sq ft lot. Built 2019 Sold on 6/24/2019 for $22,700,000

299 N. Saltair Avenue   10,000 sq ft home 52,112 sq ft lot, Built 2007 Sold on 7/2/2019 for $28,000,000

301 N. Carmelina Avenue  10,877 sq ft home 40,111 sq ft lot. Built 2008 Sold on 9/17/2019 for $19,660,000

1000 N. Norman Place 14,000 sq ft home 24,411 sq ft lot. Built 2019 Pending Sale as of 8/29/2019 for $16,500,000

**• URAR: Improvements - Additional Features**

Subject is a custom built home with several upgraded features throughout. Exterior has custom built pool, upgraded spa with waterfall, upgraded security fence, and exterior security lights. Home has large upgraded entry doors, upgraded interior doors, security system, recessed lighting, granite flooring, upgraded iron work, upgraded carpeting and wood flooring. There are upgraded installed bookshelves in the study, upgraded cabinets in the garage, built-in entertainment center in the family room, upgraded stainless steel appliances, granite countertops, and upgraded fixtures in the kitchen. Baths have upgraded fixtures, and granite flooring. Bedrooms have large or walk-in closets in every room. Master bath has an oversized jacuzzi tub. Guest house is a custom built, upgraded guest house.

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**EXHIBIT A**
UAD Version 9/2011

**Page 29**



## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.



**EXHIBIT A**
UAD Version 9/2011

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| + | + | + |
| + | + | + |
| + | + | + |
| + | + | + |
| + | + | + |
| + | + | + |
| | | |

**EXHIBIT A**

UAD Version 9/2011

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE



**Building Sketch (Page - 1)**

| Borrower | Platt Family Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | |



TOTAL Sketch by a la mode, inc.

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Building Sketch (Page - 2)**

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |

TOTAL Sketch by a la mode, inc.

## Area Calculations Summary

| Living Area | | Calculation Details | | |
|---|---|---|---|---|
| First Floor | 3167.2 Sq ft | 0.5 × 4 × 3 | = | 6 |
| | | 0.5 × 3 × 4 | = | 6 |
| | | 4 × 3 | = | 12 |
| | | 13 × 1 | = | 13 |
| | | 21 × 2 | = | 42 |
| | | 0.5 × 3 × 4 | = | 6 |
| | | 0.5 × 4 × 3 | = | 6 |
| | | 6 × 4 | = | 24 |
| | | 6 × 2 | = | 12 |
| | | 22 × 5 | = | 110 |
| | | 32 × 23 | = | 736 |
| | | 49 × 30 | = | 1470 |
| | | 16 × 19 | = | 304 |
| | | 14 × 7 | = | 98 |
| | | 12 × 7 | = | 84 |
| | | 14 × 14 | = | 196 |
| | | 3 × 6 | = | 18 |
| | | Arc | = | 24.2 |
| Second Floor | 3436 Sq ft | 7 × 2 | = | 14 |
| | | 7 × 2 | = | 14 |
| | | 46 × 20 | = | 920 |
| | | 48 × 20 | = | 960 |
| | | 27 × 18 | = | 486 |
| | | 0.5 × 5 × 5 | = | 12.5 |
| | | 52 × 5 | = | 260 |
| | | 57 × 7 | = | 399 |
| | | 0.5 × 5 × 5 | = | 12.5 |
| | | 52 × 5 | = | 260 |
| | | 49 × 2 | = | 98 |
| **Total Living Area (Rounded):** | **6603 Sq ft** | | | |
| Non-living Area | | | | |
| Guest House | 998 Sq ft | 11 × 5 | = | 55 |
| | | 43 × 15 | = | 645 |
| | | 2 × 2 | = | 4 |
| | | 4 × 5 | = | 20 |
| | | 0.5 × 4 × 5 | = | 10 |
| | | 8 × 30 | = | 240 |
| | | 0.5 × 8 × 6 | = | 24 |
| 2 Car Garage | 593 Sq ft | 23 × 25 | = | 575 |
| | | 3 × 6 | = | 18 |
| Undefined Area | 216 Sq ft | 12 × 18 | = | 216 |
| Undefined Area | 162 Sq ft | 9 × 18 | = | 162 |

**EXHIBIT A**                               **Page 34**

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Plat Map**

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



Form MAP.PLAT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Location Map**



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Subject Photo Page

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



**Subject Front**

205 N Tigertail Rd
Sales Price
Gross Living Area      6,603
Total Rooms            12
Total Bedrooms         5
Total Bathrooms        5.1
Location               N;Res;
View                   B;CtySky;
Site                   23053 sf
Quality                Q2
Age                    17



**Subject Rear**



**Subject Street**

# EXHIBIT A                              Page 37

**Photograph Addendum**

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



**Entry**



**Entry Interior**



**Kitchen Photo #1**



**Kitchen Photo #2**



**Nook**



**Dining**

**EXHIBIT A**            **Page 38**

Photograph Addendum

| Borrower | Platt Family Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | |



**Living Room Photo #1**



**Living Room Photo #2**



**Laundry**



**Garage Interior**



**Hot Water Heater W/Straps**



**Hallway**

## EXHIBIT A                        Page 39

Photograph Addendum

| Borrower | Platt Family Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | |



**Bath**



**Study Photo #1**



**Study Photo #2**



**Staircase First Floor**



**Staircase Second Floor**



**Master Bedroom**

**EXHIBIT A**                    **Page 40**

Photograph Addendum

| Borrower | Platt Family Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | |



**Master Bedroom Fireplace**



**View #1**



**View #2**



**Master Bedroom Additional Angle Photo**



**Walk-in Closet**



**Master Bathroom Photo #1**

**EXHIBIT A**          **Page 41**

**Photograph Addendum**

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |





**Master Bath Photo #2**                    **Bedroom**





**Bath**                                    **Bedroom**





**Bath**                                    **Bedroom**

# EXHIBIT A                                **Page 42**

**Photograph Addendum**

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



**Bedroom**



**Bath**



**Bath Photo #2**



**CO/Smoke Detector**



**CO/Smoke Detector**



**Fireplace**

# EXHIBIT A                    Page 43

Photograph Addendum

| Borrower | Platt Family Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | |



**Pool/Spa**



**Rear Lot (Level)**



**Guest House Photo #1**



**Guest House Photo #2**



**Guest House Photo #3**



**Guest House Interior**

## EXHIBIT A                    Page 44

Photograph Addendum

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



**Guest House Bath**



**Guest House Walk-in Closet**

Form PICSIX2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Comparable Photo Page

| Borrower | Platt Family Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



**Comparable  1**

694 Walther Way
| | |
|---|---|
| Prox. to Subject | 0.62 miles NW |
| Sale Price | 12,000,000 |
| Gross Living Area | 8,195 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.1 |
| Location | N;Res; |
| View | B;CtySky; |
| Site | 18043 sf |
| Quality | Q2 |
| Age | 1 |



**Comparable  2**

144 N Woodburn Dr
| | |
|---|---|
| Prox. to Subject | 0.83 miles NE |
| Sale Price | 15,000,000 |
| Gross Living Area | 10,150 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.1 |
| Location | N;Res; |
| View | B;CtySky; |
| Site | 17382 sf |
| Quality | Q2 |
| Age | 5 |



**Comparable  3**

250 S Chadbourne Ave
| | |
|---|---|
| Prox. to Subject | 0.06 miles E |
| Sale Price | 10,625,000 |
| Gross Living Area | 4,072 |
| Total Rooms | 12 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 14519 sf |
| Quality | Q2 |
| Age | 76 |

**EXHIBIT A**                    **Page 46**

**Comparable Photo Page**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Platt Family Trust | | | | | | |
| Property Address | 205 N Tigertail Rd | | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | | |



**Comparable 4**

665 Walther Way
| | |
|---|---|
| Prox. to Subject | 0.66 miles NW |
| Sale Price | 14,600,000 |
| Gross Living Area | 9,000 |
| Total Rooms | 12 |
| Total Bedrooms | 7 |
| Total Bathrooms | 8.1 |
| Location | N;Res; |
| View | B;CtySky; |
| Site | 24535 sf |
| Quality | Q2 |
| Age | 1 |



**Comparable 5**

141 S Cliffwood Ave
| | |
|---|---|
| Prox. to Subject | 0.64 miles SW |
| Sale Price | 13,400,000 |
| Gross Living Area | 8,821 |
| Total Rooms | 12 |
| Total Bedrooms | 5 |
| Total Bathrooms | 8.0 |
| Location | N;Res; |
| View | B;CtySky; |
| Site | 21027 sf |
| Quality | Q2 |
| Age | 1 |



**Comparable 6**

701 N Bonhill Rd
| | |
|---|---|
| Prox. to Subject | 0.69 miles NW |
| Sale Price | 12,800,000 |
| Gross Living Area | 8,488 |
| Total Rooms | 12 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | N;Res; |
| View | B;CtySky; |
| Site | 26144 sf |
| Quality | Q2 |
| Age | 21 |

**EXHIBIT A**    **Page 47**

**Comparable Photo Page**

| Borrower | Platt Family Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 205 N Tigertail Rd | | | | | |
| City | Los Angeles | County | Los Angeles | State | CA | Zip Code | 90049 |
| Lender/Client | Bay Lending | | | | | |



### Comparable 7

111 N Gunston Dr

| | |
|---|---|
| Prox. to Subject | 0.97 miles NE |
| Sale Price | 13,995,000 |
| Gross Living Area | 9,200 |
| Total Rooms | 15 |
| Total Bedrooms | 6 |
| Total Bathrooms | 7.1 |
| Location | N;Res; |
| View | B;CtySky; |
| Site | 16163 sf |
| Quality | Q2 |
| Age | 9 |

### Comparable 8

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 9

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## EXHIBIT A                    Page 48

# EXHIBIT B

# CENTRAL ESCROW LA

3660 Wilshire Blvd, Suite 108
Los Angeles, CA 90010
Tel: (213) 389-8300 Fax: (213) 389-1881

## BORROWER STATEMENT
### Estimated

**File No.:** 20784-KT
**Officer/Escrow Officer:** Tae Kim

**Printed Date/Time:** 12/09/2019 - 3:24:04PM
Page     1 of 2

**Closing Date:**
**Disbursement Date:**
**Loan Number:** ████1465

**Borrower:**     The Platt Family Trust U/D/T dated November 7, 2000

**Property:** 205 N. Tiger Tail Rd., Los Angeles, CA  90049

| DESCRIPTION | DEBITS | CREDITS |
|---|---:|---:|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| CA Affordable Act Recording Fee Provident TItle: Provident Title Company | 225.00 | |
| Lender/Mortgagee Premium for 9,687,500.00: Provident Title Company | 12,250.00 | |
| Sub-Escrow: Provident Title Company | 65.00 | |
| Endorsement: Provident Title Company | 400.00 | |
| Mortgage Recording Fee: Provident Title Company | 125.00 | |
| Recording Service Fee: Provident Title Company | 19.00 | |
| Inspection Fee: Provident Title Company | 150.00 | |
| Withdrawal of Lis Pendence Recording: Provident Title Company | 60.00 | |
| Reconveyance recording fee (6) EST: Provident Title Company | 750.00 | |
| Inspection Fee: Provident Title Company | 150.00 | |
| Subordinaion Recording Fee (X7): Provident Title Company | 700.00 | |
| Notary Fee: Notary Public | 175.00 | |
| **ESCROW CHARGES TO: Central Escrow LA, Inc.** | | |
| Settlement Agent Fee | 3,875.00 | |
| Messenger Fee | 50.00 | |
| Wire Fee | 60.00 | |
| **LENDER CHARGES** | | |
| New  to RushmyFile, Inc.: | | 7,750,000.00 |
| Interest 12/16-01/01: RushmyFile, Inc. | 35,488.54 | |
| Brokers Commissiom: RushmyFile, Inc. | 231,725.00 | |
| Credit Report: RushmyFile, Inc. | 35.00 | |
| Doc Refview Fee: RushmyFile, Inc. | 655.00 | |
| Underwriting Fee: RushmyFile, Inc. | 975.00 | |
| Processing Fee: RushmyFile, Inc. | 890.00 | |
| Wire Fee: RushmyFile, Inc. | 45.00 | |

Certified to be a true and correct
copy of the document on file at
CENTRAL ESCROW LA, INC.
By
_____  CK

**EXHIBIT B**                    **Page 49**

Main Document   Page 57 of 133

## CENTRAL ESCROW LA

3660 Wilshire Blvd, Suite 108
Los Angeles, CA 90010
Tel: (213) 389-8300  Fax: (213) 389-1881

### BORROWER STATEMENT
Estimated

**File No.:** 20784-KT

**Printed Date/Time:** 12/09/2019 - 3:24:04PM
Page     2  of 2

**Property:** 205 N. Tiger Tail Rd., Los Angeles, CA  90049

| DESCRIPTION | | DEBITS | CREDITS |
|---|---|---|---|
| Property Inspection Fee: RushmyFile, Inc. | | 395.00 | |
| Funding Fee: RushmyFile, Inc. | | 585.00 | |
| Doc Draw Fee: Bayshore Advisors, Inc | | 850.00 | |
| Coordinating Broker Origination Fee: Elite Equity Consultants, Inc. | | 135,625.00 | |
| **LOAN PAYOFF: *To Follow** | | | |
| Principal Balance | 3,045,000.00 | | |
| Total Loan Payoff | | 3,045,000.00 | |
| **LOAN PAYOFF: **To Follow**** | | | |
| Principal Balance EST | 4,000,000.00 | | |
| Total Loan Payoff | | 4,000,000.00 | |
| **SUBTOTALS** | | 7,471,322.54 | 7,750,000.00 |
| **DUE TO BUYER/BORROWER** | | 278,677.46 | |
| **TOTALS** | | 7,750,000.00 | 7,750,000.00 |

The Platt Family Trust U/D/T dated November 7, 2000

_____

Wayne H. Platt, Trustee

_____

Lisa F. Platt, Trustee

Certified to be a true and correct
copy of the document on file at
CENTRAL ESCROW LA, INC.
By
Cra

THIS IS AN ESTIMATED CLOSING STATEMENT FIGURES ARE SUBJECT TO CHANGE

**EXHIBIT B**                    **Page 50**

# EXHIBIT C

Form **8821**

(Rev. March 2015)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Information about Form 8821 and its instructions is at *www.irs.gov/form8821*.
▶ Do not sign this form unless all applicable lines have been completed.
▶ Do not use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

**For IRS Use Only**

Received by:

Name _____
Telephone _____
Function _____
Date _____

**1   Taxpayer information.** Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| Wayne Platt<br>Lisa Platt<br>205 N. Tigertail Rd., Los Angeles, CA 90049 | ▓▓▓ 1322 / ▓▓▓▓▓-3763 |
| | Daytime telephone number    Plan number (if applicable) |
| | 310 9948896 |

**2   Appointee.** If you wish to name more than one appointee, attach a list to this form. **Check here if a list of additional appointees is attached ▶** ☐

| Name and address | |
|---|---|
| Central Escrow LA, Inc.<br>TAE KIM / CHERRL AUSTRIA<br>3660 WILSHIRE BLVD., SUITE 108<br>LOS ANGELES, CA 90010 | CAF No. ▓▓▓799R |
| | PTIN ▓▓3842 |
| | Telephone No. (213) 389-8300 |
| | Fax No. (213) 389-1881 |
| | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

**3   Tax Information.** Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

| (a)<br>Type of Tax Information (Income,<br>Employment, Payroll, Excise, Estate, Gift,<br>Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME | 1040 | 2012 | FEDERAL TAX LIEN |
| INCOME | 1040 | 2014 | FEDERAL TAX LIEN |
| | | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6  . . . . . . ▶ ☐

**5   Disclosure of tax information** (you **must** check a box on line 5a or 5b unless the box on line 4 is checked):

  **a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☑

  **Note.** Appointees will no longer receive forms, publications, and other related materials with the notices.

  **b** If you do not want any copies of notices or communications sent to your appointee, check this box  . . . . ▶ ☐

**6   Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box is not checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . . ▶ ☐

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7   Signature of taxpayer.** If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DO NOT SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| Signature *(signed)* | Date 12/6/19 |
|---|---|
| Print Name   WAYNE PLATT   LISA PLATT | Title (if applicable) |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.          Cat. No. 11596P          Form **8821** (Rev. 3-2015)

**EXHIBIT C**          **Page 51**



**CENTRAL ESCROW LA**
3660 Wilshire Blvd, Suite 108
Los Angeles, CA 90010
Tel: (213) 389-8300  Fax: (213) 389-1881

## LOAN ESCROW INSTRUCTIONS

TO:  **Central Escrow LA, Inc.**

Date: **November 21, 2019**
Escrow Officer: **Tae Kim**
Escrow Number: **20784-KT**

**CENTRAL ESCROW LA, INC. IS LICENSED AS AN ESCROW AGENT BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE # 96DBO-98587.**

The undersigned Borrower(s) is obtaining a loan on the property hereinafter described and will cause Lender to hand you the proceeds of a new First Trust Deed in the amount of **$7,750,000.00,** less Lender's normal costs and charges, which you are authorized to use on or before **TBD**, providing upon recordation of the securing Deed of Trust, you obtain an ALTA Lender's Policy of title insurance, per Lender's requirements covering real property in the County of **Los Angeles**, State of California, as follows:

Exact legal description to be furnished by Provident Title Company.

COMMONLY KNOWN AS: **205 N. Tiger Tail Rd., Los Angeles, CA  90049**

The title policy is to show the title to the property to be vested in:

**Wayne H. Platt and Lisa F. Platt, as Trustees of The Platt Family Trust U/D/T dated November 7, 2000**

The policy is to be free of encumbrances except as follows:

(1) Any General and Special Taxes and Special District Levies not due or delinquent; this will include the lien of supplemental taxes, if any, assessed pursuant to Chapter 498, 1983 Statutes of the State of California.
(2) All Taxes, Bonds and Assessments levied or assessed subsequent to the date of these instructions.
(3) Covenants, conditions, reservations (including exceptions of oil, gas, minerals, hydrocarbons, and/or lease without right of surface entry), restrictions, rights of way, and easements for public utilities, districts, water companies, alleys, and streets.
(4) First Trust Deed to file, securing a note in the principal amount of **$7,750,000.00** in favor of **RushmyFile, Inc.** at the best prevailing rate and terms per lenders instructions to be deposited into escrow.

**DEPOSIT OF FUNDS INTO ESCROW:** Each of the undersigned acknowledges and understands that pursuant to State of California Assembly Bill ("Good Funds Legislation") which became effective January 1, 1990, funds deposited into escrow and/or deposited with the Title Company for use in this escrow by the Property Owner, and New Lender in any form other than a wire transfer may cause a delay in the closing of this escrow and/or disbursement of funds at the time of closing. Each of the undersigned hereby indemnifies and holds **Central Escrow LA, Inc.** its officers and/or Employees harmless with respect to any delay in closing and/or disbursement of funds due to compliance with the Provisions of "AB512".

**NOTICE REGARDING CLOSING FUNDS:** In the event Borrower elects to deposit closing funds by Cashier's Check, said funds MUST be deposited not later than 48 hours prior to the anticipated date of close of escrow, pursuant to AB512 Good Funds Law.

**CONDITION OF TITLE:** Escrow Holder is authorized and instructed to pay any encumbrance necessary to place title in the condition called for herein and Borrower will hand you any instruments and/or funds as required for such purpose.

**OBTAIN DEMAND:** Escrow Holder is hereby authorized and instructed to obtain demand(s) from lender(s) of record and to pay for same from Borrower's proceeds at the close of escrow, including prepayment penalties, interest and such other costs, if applicable.

**FIRE INSURANCE:** Secure for Lender an endorsement on existing insurance policy naming lender as First Trust Deed Holder and providing for replacement cost guarantee, as required by Lender. Charge account of Borrower at close of escrow and pay premiums as may be required for same, per billing to be deposited herein prior to close of escrow.

**CLOSING COSTS/CHARGES:**  Pay escrow charges and proper recording fees, also charges for evidence of title called for above (whether or not this escrow is consummated) and you are authorized to pay off any bonds, assessments and/or taxes, also any encumbrances of record, plus accrued interest, charges and bonus, if any, to show title as called for above and/or necessary to comply with same. Instruct the title company to begin search of title at once.

**ADVANCE RELEASE OF DEMAND FEES:** In the event the existing lienholder(s) requires payment to demand statement fees in advance of issuing their demand statement, Borrower shall deposit sufficient funds as called for by Escrow Holder for payment of same and authorizes Escrow Holder to release said funds to existing lienholder(s) prior to close of escrow. Borrower acknowledges and agrees that said funds are NON-REFUNDABLE in the event this escrow is not consummated.

Additional Instructions Attached Hereto And Made A Part Hereof
*By initialing below, I/We agree that I/We have read, understand and acknowledge the text contained herein.*

Page 1

BORROWER INITIALS

**EXHIBIT C**

**Page 52**

**EACH PARTY TO THIS ESCROW HAS RECEIVED A COPY OF THESE INSTRUCTIONS AND HAS READ THE ADDITIONAL ESCROW CONDITIONS, GENERAL PROVISIONS AND INSTRUCTIONS ATTACHED HERETO AS IF SAME APPEARED OVER THEIR SIGNATURES.**

The Platt Family Trust U/D/T dated November 7, 2000

By: Wayne H. Platt, Trustee

By: Lisa F. Platt, Trustee

## ADDITIONAL ESCROW INSTRUCTIONS

CLOSE OF ESCROW: The close of escrow shall be the day documents deposited in this escrow are recorded pursuant to these instructions.

EXTENSION OF TIME FOR CLOSING: If the conditions of this escrow have not been complied with at the time provided for in these instructions, you are nevertheless to complete this escrow as soon as the conditions (except as to time) have been complied with, unless a written demand for the return of money and/or instruments by a party to this escrow is received by you prior to the recording of any instrument provided for in these instructions.

NECESSITY FOR WRITTEN INSTRUCTIONS: No notice, demand, change or instructions shall be of any effect unless given to you in writing and approved in writing by all parties affected by same.

DEPOSITS AND DISBURSEMENTS: All funds delivered to you by the parties to this escrow shall be deposited in a non-interest bearing account designated as a "Trust Account" with any bank or depository authorized by the Federal or State Government, and may be transferred to, and co-mingled with, other such trust accounts. You shall not be obligated to identify or to guarantee the signature of any payee on said checks.

SUB-ESCROW AGENTS: As you deem reasonably necessary to the closing of this escrow, you may deposit any funds or documents received by you herein, with any bank, title insurance company, savings and loan association, trust company, industrial loan company, credit union, admitted insurer or licensed escrow agent and any such deposit shall be deemed in accordance herewith. In this regard, you are authorized to utilize the services of one or more sub-escrow agents as defined under the California Financial Code, and/or documents prior to close of escrow, if reasonably necessary in your discretion.

ADJUSTMENTS AND PRORATIONS: All adjustments shall be made upon the basis of a thirty day month, including, but not necessarily limited to the following: A. Taxes for the current year, based on tax amounts disclosed on last available tax bill; B. Premiums on fire insurance policies as handed you; C. Interest on loans of record, based on statement from the lender.

RECORDING AND TRANSFER FEES: To facilitate the recording of any documents delivered into or through this escrow, you may pay all required fees; all of the costs of which shall be deemed to constitute an authorized expenditure to be paid or charged to the party responsible therefore.

EFFECT OF CONFLICT: If, before or after recording documents, you receive or become aware of any conflicting demands or claims (hereinafter "conflicts") with respect to this escrow, the rights or obligations of any of the parties or any money or property deposited or affected, you shall have the right to discontinue further performance on your part until the conflict is resolved to your satisfaction. In addition, you shall have the right to commence or defend any action or proceeding you deem necessary for the determination of the conflict. A conflict shall be deemed to include, but is not necessarily limited to, your receipt of unilateral instructions or instructions from some, but not all of the parties. In the event of a conflict, you shall not be liable to take any action of any kind, but may withhold all moneys, securities, documents or other things deposited into escrow, until such conflict has been determined by agreement of the parties or by legal process.

In the event any action is commenced to determine a conflict or otherwise to enforce or declare the provisions of these instructions or to rescind them, including, but not limited to, a suit in inter pleader (whether or not the action is prosecuted to final judgment, voluntarily dismissed or settled, and irrespective of whether you are the prevailing party in any such action) and it becomes necessary or desirable for you to obtain legal advice with respect to a conflict or on account of any matter or thing arising out of or in any way related to these instructions, whether or not suit is actually commenced, the parties to this escrow jointly and severally agree to pay all of your costs, damages, judgments and expenses, including attorney's fees, incurred by you in connection with the same.

PAYMENT OF FEES AND CHARGES: It is understood that the fees agreed to be paid for your services are for ordinary and usual services only, and should there be any extraordinary or unusual services rendered by you, the undersigned agree to pay reasonable compensation to you for such extraordinary or unusual services, together with any costs and expenses which may be incurred by you in connection with same. Upon the close of escrow, you may retain, on your own behalf, your charges, costs and fees and charge the same in your accounting against the person responsible therefore.

IT IS UNDERSTOOD THAT, IN THE EVENT THIS ESCROW IS CANCELLED OR TERMINATED, YOU WILL RECEIVE COMPENSATION FOR SUCH SERVICES AS YOU HAVE RENDERED IN CONNECTION WITH THIS ESCROW.

LIMITATIONS ON DUTIES AND LIABILITIES: YOU SHALL NOT, IN ANY MANNER OR UNDER ANY THEORY OF LAW OR EQUITY, HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY OR ALL OF THE FOLLOWING ACTS, EVENTS, KNOWLEDGE OR CIRCUMSTANCES:

1. Determining the sufficiency, genuineness or validity of any document, instrument or writing deposited with you herein or the form of content, or the identity or authority of the persons executing or depositing any of the same;
2. Ascertaining the terms, covenants or conditions of any document, instrument or writing deposited with you, or to investigate or examine the circumstances under which it was executed and/or delivered to you;
3. The failure to notify any person, including but not limited to the parties hereto, of any sale, resale, loan, exchange or other transaction involving the property or rights that are the subject hereof or incidental thereto, or any profit or advantage to any person, firm or corporation, including but not limited to, any broker or agent of any party hereto, regardless of the fact that such other transaction(s) may be directly or indirectly handled by you in connection with the within escrow or any other escrow, or come to your knowledge, in any form whatsoever;
4. The payment, examination as to amount, propriety or validity of any tax, including but not limited to personal property, corporate, business or license tax or any description, assessed against, chargeable or payable by either of the parties hereto;
5. Your failure or refusal to comply with any amendments, supplements and/or notations hereof or hereto which are not signed by all parties hereto and actually delivered to you;
6. Your failure or refusal to terminate or cancel the within escrow, without full and complete compliance, to your satisfaction, with the provisions of paragraph "*Necessity for Written Instructions*" herein;
7. For any liability predicted upon any relationship other than that of an Escrow Holder, it being specifically irrevocably and conclusively understood, agreed and deemed no other legal relationship is hereby created or shall be implied, assumed or come into being;

Central Escrow LA, Inc.

Date: **November 21, 2019**
Escrow No.: **20784-KT**

8.  For failure of any party to this escrow to comply with any of the provisions of any agreement, contract, or other instrument filed or referred to in these instructions;

9.  Any duties beyond that of an Escrow Holder, which are expressly limited to the safekeeping of money, instruments or other documents received by Escrow Holder and for the disposition of them in accordance with the written instructions accepted by you.

10. Your knowledge of matters affecting the property which is the subject hereof shall not, and does not, create any liability or duty in addition to the responsibility of Escrow Holder under these instructions;

11. You shall not be obligated to make any physical examination of any real or personal property describe in any document deposited into this escrow, and the parties agree that you have not made, and will not make, any representations whatsoever regarding said property;

12. You shall not be concerned with, nor responsible for, the giving of any disclosures required by Federal or State law, including but not limited to, any disclosures required under Regulation Z, pursuant to the Federal Consumer Credit Protection Act, the effect of any zoning laws, ordinances or regulations affecting any other property described in this escrow.  The undersigned jointly and severally agree to indemnify and hold you harmless by reason of any misrepresentation of omission by either party or their respective agents, or the failure of the parties to this escrow to comply with the rules and/or regulations of any governmental agency, state, federal, county, municipal or otherwise.  Parties to this escrow have satisfied themselves outside of escrow that this transaction is not in violation of the Subdivision Map Act or any other law relating to land division, and you are relieved of all responsibility and/or liability in connection with same, and are not to be concerned with the enforcement of said laws;

13. Any loss that may occur by reasons of (i) forgeries or false representations; (ii) the exercise of your discretion in any particular manner, (iii) for any act, duty requirement or obligation not expressly required of you hereunder or specifically stated herein; or, (iv) for any reason whatsoever except your gross neglect or willful misconduct.

AUTHORITY OF BUSINESS ENTITY:  As to any corporation, partnership or other entity which may be a party hereto, it shall be conclusively presumed that any document executed by an officer or general partner of such entity was made upon due, full, legal and complete authority of the governing body of such entity, and you shall have no responsibility to independently investigate or verify such authority.

AUTHORITY TO RELEASE INFORMATION:  You are authorized and instructed to furnish information from this escrow to lender and/or brokers as may be requested by them, including, but not limited to copies of all instructions and closing statement(s) in this escrow.  You are authorized to accept funds deposited to a party's account by such party's broker or agent without further authorization.

SUCCESSORS AND ASSIGNS:  The provisions hereof shall bind each party hereto and his respective heirs, administrators, executors, assigns, trustees, guardians, conservators, receivers and successors in interest.

DESTRUCTION OF DOCUMENTS:  You are authorized to destroy or otherwise dispose of any or all documents, instruments or writings received by you herein and accounting or disbursement records pertaining hereto at the expiration of five (5) years from and after the initial date hereof, regardless of any subsequent notations thereto or the date of close of escrow, without liability or further notice to any parties hereto.

EXECUTION IN COUNTERPARTS:  These instructions may be executed in counterparts, each shall be deemed an original regardless of the date executed and delivered, and said counterparts shall constitute one and the same instrument.  When necessary to the context hereof or the contents thereof, the singular shall include the plural, or vice-versa, and the gender used shall include the true and proper gender.

EFFECT OF EXECUTION:  The signatures of the undersigned hereon and on any document(s) and instrument(s) pertaining to this escrow indicates their unconditional acceptance of the same and constitutes acknowledgment of their receipt of a copy of the same.

**ESCROW COMPANIES ARE NOT AUTHORIZED TO GIVE LEGAL ADVICE, IF YOU DESIRE LEGAL ADVICE, CONSULT YOUR ATTORNEY BEFORE SIGNING.**

**EACH PARTY TO THIS ESCROW HAS RECEIVED A COPY OF THESE INSTRUCTIONS AND HAS READ THE ADDITIONAL ESCROW CONDITIONS, GENERAL PROVISIONS AND INSTRUCTIONS ATTACHED HERETO AS IF SAME APPEARED OVER THEIR SIGNATURES.**

- - END OF INSTRUCTIONS - -

The Platt Family Trust U/D/T dated November 7, 2000

By: Wayne H. Platt, Trustee

By: Lisa F. Platt, Trustee

**EXHIBIT C**    **Page 54**



# CENTRAL ESCROW LA

3660 Wilshire Blvd, Suite 108
Los Angeles, CA 90010
Tel: (213) 389-8300  Fax: (213) 389-1881

## NEW FINANCING AMENDMENT

Date:    December 6, 2019                                 Escrow No.:    **20784-KT**

Re:    **205 N. Tiger Tail Rd., Los Angeles, CA  90049**

---

TO:  **Central Escrow LA, Inc. - Tae Kim**

My previous instructions in the above numbered escrow are hereby modified – supplemented in the following particulars only:

Borrower has qualified for a new Trust Deed loan in favor of **RushmyFile, Inc.,** in the principal amount of **$7,750,000.00**, with a Balloon Payment Note rate of **10.9900%** per annum for a loan term of **2 years**, per Lender's documents to be placed in escrow. Borrower's execution of Lender's documents shall deem their approval of all terms and conditions contained therein.

All other terms and conditions of this escrow shall remain the same.  All parties signing this instruction acknowledge receipt of a copy of same.

## END OF AMENDMENT

Borrower's Signature

The Platt Family Trust U/D/T dated November 7, 2000

By: Wayne H. Platt, Trustee                    By: Lisa F. Platt, Trustee

**EXHIBIT C**                                                    **Page 55**

# BAYSHORE ADVISORS LOAN PROCESSING CENTER, INC.

# DEMAND

TAE KIM
CENTRAL ESCROW
3660 WILSHIRE BLVD., SUITE 108
LOS ANGELES, CA 90010

Escrow #: 20784-KT

Please collect and issue **separate check** on behalf of **Bayshore Advisors, Inc.**

| | |
|---|---|
| Document Preparation fee | $850.00 |
| Credit Report fee | |
| Appraisal fee | |
| Processing fee | |
| Document Redraw fee | |
| **Total Amount Due:** | **$850.00** |

Mail Check To:

## BAYSHORE ADVISORS, INC.
1799 Old Bayshore HWY, Suite 126
Burlingame, CA 94010
Attn: Doc Drawing Dept.

Borrower: WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE
PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND
WAYNE H. PLATT

Loan No:    ███21465

Address:   205 NORTH TIGERTAIL ROAD
LOS ANGELES, CA 90049

Broker:    RUSHMYFILE, INC.

Please verify receipt of this demand by signing

Sign and Date

12/6/19

**EXHIBIT C**                                         **Page 56**

# Attention: Loan Signing Agent

Borrower(s): **WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT**

**FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H.**

**PLATT**

Property Address: **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049 and
including LOS ANGELES County APN: 4403-011-006**

Escrow No: **20784-KT**

**We will not accept loan documents unless you adhere to the following:**

These loan documents are comprehensive and unalterable

These documents supersede any and all previous documents, statements and verbal representations

No changes can be made to any forms, paragraphs, sentences, words or numbers

Any changes void this transaction

Do not allow any party to contradict, amend or interpret these documents.

Only the written words are valid and binding

If you have questions, please request clarification only from RUSHMYFILE, INC.
agents. Only the following agents represent RUSHMYFILE, INC.:

- Andrew A. Dioli

Sign all papers in **BLUE** pen

**Take a color photo of the borrower's driver's license
and email to us**

**Take a color photo of the borrower's secondary ID
and email to us**

**Take a color photo of the borrower
and email to us**

Provide the borrower(s) with a copy of these documents

I acknowledge these instructions:

_____         _12/6/19_____

Signature of Signing Agent                      Date

_Thi/Ku_____

Name of Signing Agent

**EXHIBIT C**                                      **Page 57**

Loan # RMF4021465

# TERMS OF THE LOAN

## Loan Type: PARTIAL AMORTIZATION – 40 YEARS DUE IN 2 YEARS

Interest Only With Balloon Payment: ___   Partially Amortized With Balloon Payment: _X_

Fully Amortized: ___   Accrued – All principal and interest to be paid at maturity: ___

Loan Amount: $7,750,000.00   Interest Rate: 10.99%

Term of Loan: 24 months   No. of Prepaid Payments: N/A

Loan Position: First

First Due Date: 02/01/2020   Maturity Date: 01/01/2022

Payment Amount: $71,881.03

Estimated Balloon Payment: $7,797,740.28

1st Payment Change Date: N/A

Prepay Penalty: Yes _X_   No ___

Prepayment Penalty Expiration: The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty, however, Beneficiary is guaranteed to receive a minimum of **6 months** interest based on the original principal balance together with any interest paid or due in escrow.

Prepayment Penalty Maximum: $425,862.48

Late Charge Days: 10 Late Charge Percentage: 10.00%

Due on sale clause: Yes _X_   No ___

Due on further encumbrance clause: Yes ____   No _X_

Compound Interest: Yes _X_   No ___

Default Interest Percentage: 16.99%

*The undersigned do/does hereby understand that the above terms are just the basic terms of my/our loan. I/We understand that we need to review all loan documentation to understand all of the terms that conditions of my/our loan.*

WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED
NOVEMBER 7, 2000– Borrower   /Date

LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7,
2000 – Co-Borrower   /Date

WAYNE H. PLATT – Co-Borrower   /Date

**EXHIBIT C**          **Page 58**

# RUSHMYFILE, INC.

380 BEACH RD., SUITE B
BURLINGAME, CA 94010
Phone 650-353-2017

# BROKER-LENDER INSTRUCTIONS TO ESCROW

DATE: DECEMBER 6, 2019

TAE KIM
CENTRAL ESCROW
3660 WILSHIRE BLVD., SUITE 108
LOS ANGELES, CA 90010

Escrow #: 20784-KT
Loan Number: ████1465

You have been designated settlement agent/escrow holder in the above-referenced Loan transaction. Any corrections or modifications to these instructions or the attached documents, instruments, disclosures, or notices of rights are to be made only in writing executed by an authorized employee or officer of the above-identified Company. Please contact the phone number provided to obtain written authorization for corrections or modifications.

I. We enclosed the following documents, instruments, disclosures, and notices of rights to be executed in your escrow/settlement. Please advise when the appointment is made with the Borrower to obtain signatures to arrange for our loan representative to be on the telephone with Borrower and your escrow officer to answer any questions including about the documents, instruments, disclosures, or notices of rights for which signatures are requested, to wit:

X   Certification of Business Purpose of Loan
X   Patriot Act
X   Loan Purpose Declaration and Real Property Security Declaration
X   Borrower's Estimated Closing Statement
X   First Payment Letter
X   Promissory Note
X   Deed of Trust (see Note 1)
o   Notice of Right to Cancel (see Note 2)
o   Notice of Non-Rescission (see Note 3)
o   HOEPA Documents (see Note 2A)
o   Consumer Caution and Home Ownership Counseling Notice (see Note 2B)
X   Fire Insurance Authorization
X   Hazard Insurance Disclosure (CAL. CIVIL CODE § 2955.5)
o   Federal Truth In Lending Disclosure
o   Itemization of Prepaid Finance Charges
X   Agreement to Procure Lender
X   Required Borrower Disclosures and Consent to Dual Agency
X   Mortgage Loan Disclosure Statement
o   Arbitration of Disputes (check, if appropriate)
o   Judicial Reference (check, if appropriate)
X   Loan Origination Insurance Disclosure
X   Declaration of Oral Disclosure
X   ECOA Notice
X   W-9 Form
o   Request for Notice
X   Balloon Payment Disclosure
X   Notice of Mortgage Loan Servicing

**EXHIBIT C**                                     **Page 59**

X  Hazardous Material Certificate and Indemnity Agreement
O  Senior Lien Letter
X  Notice of Borrower's Right to Receive Appraisal
X  Source of Repayment
X  Compliance Agreement
X  Declaration of Non-Owner Occupancy
X  Per Diem Interest Disclosure
O  Security Agreement
O  Personal Guarantee
X  ADDRESS/PHONE NUMBER CERTIFICATION
O  HUD's Settlement cost Booklet – 1-4 properties


II. You are directed to provide a copy to each Borrower of the documents, instruments, disclosures, notices of rights, and instructions signed immediately after signing. See Notes 2 and 3 on special copy requirements for loans subject to rescission rights under the Truth In Lending Act.

Note 1: **If the deed of trust does not contain a legal description, you are directed to attach a legal description to the deed of trust describing the Security Property. If a legal description is already on the face of the deed of trust or attached, you are directed to review it for accuracy and consistency with description of record for the intended Security Property prior to recordation.**

Note 2: ☐ **IMPORTANT! If checked, this transaction is subject to the Truth In Lending Act and the borrower has rescission rights.** You are directed to do the following in completing the form titled "NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW — NOTICE OF RIGHT TO CANCEL":

    a.   Under Section 1, "Your Right To Cancel," the underlined section must be completed with the date all Loan Documentation is signed.

    b.   Under Section 2, "How To Cancel," the underlined section must be completed with the date three business days after the documents have been signed. DO NOT COUNT THE DAY THE DOCUMENTS ARE SIGNED. For Truth In Lending purposes, all days are business days except Sunday and all Federal holidays.

    **c.   Provide two copies of the Notice of Right To Cancel to each borrower.**

    d.   It is a violation of the Truth In Lending Act to pre-date or pre-sign any documents in this transaction. Willfully violating the Borrower's rights, even at the Borrower's request, by pre-dating and/or pre-signing the documents could extend the Borrower's right to cancel for a period of three years.

    e.   If it is unclear on how to complete this document, we recommend you contact an authorized employee or officer of the Company for further instructions.

Note 2A: ☐  IMPORTANT! If checked, this transaction is subject to an additional 3-day cooling off period due to being a "High Cost Mortgage" under federal guidelines. The HOEPA statement will be enclosed. THIS STATEMENT MUST BE SIGNED 3 BUSINESS DAYS PRIOR TO THE SIGNING OF ALL OTHER LOANS DOCUMENTS (except the Homeowner Counseling notice required under California law).

Note 2B: ☐  IMPORTANT! If checked, this transaction is subject to an additional 3-day cooling off period due to being a "High Cost Mortgage under state guidelines. The CONSUMER NOTICE will be enclosed. THIS DOCUMENT MUST BE SIGNED 3 BUSINESS DAYS PRIOR TO THE SIGNING OF ALL OTHER LOANS DOCUMENTS (except the HOEPA statement – it would be signed concurrently).

Note 3: ☐ **IMPORTANT! If Note 2 is checked above, this Note 3 must be also be checked. This Loan transaction is subject to the Truth-In-Lending-Act and the Borrower has rescission rights.** You are directed to do the following in completing the form titled "NOTICE AND ACKNOWLEDGEMENT OF NON-RESCISSION":

    a.   This document is to be signed after the 3-day right to cancel has expired and **cannot** be signed the same day as the Loan documents are signed.

    b.   In the second box, the underlined section must be completed with the date 4-business days after the documents have been signed. DO NOT COUNT THE DAY THE DOCUMENTS ARE SIGNED. For Truth-In-Lending purposes, all days are business days except Sunday and all Federal holidays.

    c.   It is a violation of the Truth In Lending Act to pre-date or pre-sign any documents in this transaction. Willfully violating the Borrower's rights, even at the Borrower's request, by pre-dating and/or pre-signing the documents could extend the borrower's right to cancel for a period of three years.


**EXHIBIT C**                                    **Page 60**

III.  You may record the deed of trust and any related documents provided you can ensure title is vested in the name of the Trustors/Borrowers, with the deed of trust as a valid lien recorded in the **First** position, subject only to the following items: **A: PAY CURRENT, B: PAY CURRENT, C: PAY CURRENT, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12** contained in your preliminary report dated **10/31/2019**, provided all of the requirements are met for the issuance of a **ALTA** mortgagee's title policy long form, with endorsements as follows: 103.7, 110.9, 116.7, 129, 100 and 116, in the amount of **$9,687,500.00**. Items contained in your preliminary report have been paid and eliminated as follows: **13, 14, 15, 16, 17, 18, 19, 20, 21, 22.**

IV.  ☐ If checked, construction documents accompany this package and we request that you provide a "True" Seattle Endorsement and a CLTA 101 Endorsement.

V.  You are directed to inform us of any material changes in the title since the date of the preliminary "title" report, and if any Notice of Default is recorded on any deed of trust that is senior or the result of subordination in this escrow becomes senior to the deed of trust securing the Loan. (Therefore, you are instructed to report any NOD or NOS on any deed of trust that is, will remain, or becomes senior to the deed of trust securing the Loan being recorded in connection with the subject escrow/settlement).

VI.  ALL SENIOR LIENS ARE TO BE CURRENT AT THE CLOSE OF ESCROW. This is to be verified by you prior to the close of escrow/settlement. Oral verification is acceptable, if memorialized in your escrow file including the identity of the source of the information and the date and time the mortgage loan status was received.

VII.  All property taxes due, including the current year, are to be paid current at the close of escrow/settlement.

VIII.  ☐ If checked, an assignment or assignments of deed of trust will be issued following the close of the Loan escrow/settlement. Upon receipt of the assignment(s), you are directed to record and insure the assignment(s) and bill the Company for the fees, costs, and expenses incurred, or if instructed by the Company in this escrow you may impose the necessary fees, costs, and expenses to record and perfect the assignment(s) as additional charges to be paid by the Borrower. The recorded assignment(s) and title insurance coverage extended in connection therewith are to be delivered to the Company at the address note above.

IX.  We require that you obtain and provide evidence of fire and casualty insurance coverage paid for 12 months in an amount which provides for guaranteed replacement cost (including betterments, enhancements, or otherwise compliance with then operative building codes). If the borrower does not have a policy which provides for guaranteed replacement (as defined), we require that the amount of insurance be for the replacement cost of the structure or $7,750,000.00. We require the loss payee clause be a 438 BFU endorsement and read as follows:
Loan No: RMF4021465
   EXHIBIT D
        c/o SUPERIOR LOAN SERVICING
        7525 TOPANGA CANYON BLVD
        CANOGA PARK, CA 91303

X.  You are directed to return all completed documents, instruments, disclosures, notices of rights, instructions after execution for our review and approval. A certified copy of the executed deed of trust and other recordable documents/instruments is satisfactory while you hold the originals for recording.

XI.  We require that you obtain a tax service contact if the Loan is a first deed of trust or if any senior lien **does not** have an impound account for payment of property taxes, ONLY IF THERE IS A TAX SERVICE CHARGE INCLUDED IN THIS INSTRUCTION TO ESCROW AND THE CHECK IS TO BE MADE TO YOUR FIRM.

XII.  We will provide loan funds to your escrow based on the estimated funding sheet attached.

XIII. After recording, you are directed to immediately forward to the Company at the address identified above a copy of the closing/settlement statement, title policy, and the recording data.

**EXHIBIT C**                                        **Page 61**

XIV. PLEASE NOTE: No other financing is being structured, arranged or approved in this Loan (or by other written approval) is permitted in this Loan transaction. You are directed to notify the Company immediately if any attempt is made to include additional financing in your escrow or any other escrow about which you are on notice or have knowledge in connection with the Secured Property. The additional financing approved: **NONE**

XV. We are concerned about fraudulent activity or persons artificially inflating costs to Borrowers in loan transactions. To protect the public, the following procedures must be followed in conducting your escrow/settlement:
   a. It is strictly forbidden for you to accept and pay demands from loan brokers or any other person(s) or entity(ies) who do not have recorded interests in the Secured Property without the Company's specific written consent.
   b. It is strictly forbidden for you to follow the instructions/directions of the Borrower to pay or direct the net proceeds to someone other than the Borrower without the Company's specific written consent.

XVI. The Company is not to incur any expenses in connection with this escrow/settlement. These instructions are subject to amendment, substitution or revocation by the Company at any time prior to the close of escrow/settlement.

XVII. **This is a refinance of the Security Property is included in this escrow/settlement, the payoffs must be paid through and accounted for in the escrow/settlement. No changes may be made to this Instruction to the Escrow unless you receive the amendment or modification in writing, and it is approved in writing by an authorized employee or officer of the RUSHMYFILE, INC.**

XVIII. The Lender(s) are to be named as the insured under the title insurance coverage;

These instructions to Escrow and the accompanying loan documents or instruments are not a loan commitment to fund the Loan(s) and other conditions not contained herein may need to be satisfied or waived prior to closing the Loan escrow/settlement. These documents, instruments, disclosures, notices of rights, and instructions expire on **12/31/2019** and will have to be re-drawn, at additional expense, after that date.

XIX. Miscellaneous instructions (if any):

**A REMINDER - PLEASE ATTACH LEGAL DESCRIPTION OF SECURITY PROPERTY TO DEED OF TRUST** BE VERY CAREFUL ON THE DISBURSEMENTS. PLEASE REVIEW BORROWERS ESTIMATED CLOSING STATEMENT AS TO WHERE COMMISSIONS, DOCUMENT DRAWING, ODD DAYS INTEREST, OTHER FEES, COSTS, AND EXPENSES, ETC.

AS PREVIOUSLY INSTRUCTED, THE COMPANY IS REQUIRING A CLOSING PROTECTION LETTER FROM THE NAMED TITLE INSURER. IN ADDITION, WE ARE REQUIRING THAT ANY AND ALL LIENS AND ENCUMBRANCES SHOW OR ARE REPORTED ON THE PRELIMINARY "TITLE" REPORT, INCLUDING BUT NOT LIMITED TO, A FILLED LIS PENDIS, NOTICE OF DEFAULT, NOTICE OF TRUSTEE SALE, ETC.

**IF THE BORROWER IS ACQUIRING TITLE TO THE SECURITY PROPERTY IN YOUR ESCROW/SETTLEMENT, PLEASE PREPARE, HAVE EXECUTED, AND CAUSED TO BE RECORDED A GRANT DEED TO THE BORROWER.**

---

ANDREW DIOLI, FOR RUSHMYFILE, INC.                                    /Date

INSTRUCTIONS AND DOCUMENTS ACKNOWLEDGED AND RECEIVED BY: _____
                                                        TAE KIM of CENTRAL ESCROW

**EXHIBIT C**                                                        **Page 62**

# RUSHMYFILE, INC.

### 380 BEACH RD., SUITE B, BURLINGAME, CA 94010

Date: DECEMBER 6, 2019          Loan No:██████1465          Escrow No. 20784-KT

Borrower: WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST
U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT

Lender: EXHIBIT D

Regarding that Note and First Deed of Trust secured by property located at: 205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA
90049

| Description | Debits | Credits |
|---|---|---|
| Loan Amount | | 7,750,000.00 |
| Doc Draw Fee – BAYSHORE ADVISORS LOAN PROCESSING CENTER, INC. | 850.00 | |
| Prepaid Interest For (20) Odd Days @ $2,365.9028 / Day – BENEFICIARIES (Lender) | 47,318.06 | |
| Broker's Commission - RUSHMYFILE, INC. | 231,725.00 | |
| Credit Report - RUSHMYFILE, INC. | 35.00 | |
| Docs Review Fee – RUSHMYFILE, INC. | 655.00 | |
| Processing Fee – RUSHMYFILE, INC. | 890.00 | |
| Underwriting Fee – RUSHMYFILE, INC. | 975.00 | |
| Wire Fee – RUSHMYFILE, INC. | 45.00 | |
| Property Inspection Fee – RUSHMYFILE, INC. | 395.00 | |
| Funding Fee – RUSHMYFILE, INC. | 585.00 | |
| Coordinating Broker Origination Fee - ELITE EQUITY CONSULTANTS, INC., BROKER (BRE LICENSE #01517794, NMLS #368970) | 135,625.00 | |

**EXHIBIT C**                    **Page 63**

# RUSHMYFILE, INC.

380 BEACH RD., SUITE B
BURLINGAME, CA 94010

# FIRST PAYMENT LETTER

DECEMBER 6, 2019

**WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY
TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT**
727 SAPPHIRE STREET, UNIT 201
SAN DIEGO, CA 92109

Re: Loan No: ████████1465

Dear Borrower:

You have just closed the Loan you requested through the RUSHMYFILE, INC.. To be sure that your credit remains in its existing condition or for your credit ratings to potentially improve, it is important to timely pay all your Loan payments. *Please remember that your payments are credited on the day they are received, not the day they were mailed.* Your first payment is due 02/01/2020.

You will be receiving a letter or coupons from the Servicing Agent, SUPERIOR LOAN SERVICING in order to pay the payments on your Loan. SUPERIOR LOAN SERVICING will advise you as to where to mail or deliver your payments. However, in case there is a delay in the relay of this information to you, you are instructed to mail your first payment and all subsequent payments until notified otherwise to:

Superior Loan Servicing
7525 Topanga Canyon Blvd
Canoga Park, CA 91303

From time to time, the person or entity to whom Loan payments are to be mailed or delivered may be changed. It is important for you to know you should not mail or deliver your payment to any other person or entity unless you receive a letter from the Company, your Lender(s), and/or their named Servicing or Sub-Servicing Agent informing you to whom and where to mail or deliver your Loan payments.

If you have any questions, please contact your Company, Lender(s), the Servicing Agent, or the Sub-Servicing Agent.

Sincerely,

ANDREW DIOLI, FOR RUSHMYFILE, INC.

I/We, the undersigned, hereby understand and acknowledge the above.

_____
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000–
Borrower

_____
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower

_____
WAYNE H. PLATT – Co-Borrower

**EXHIBIT C**                                        **Page 64**

**Loan No:** ████████1465

## CERTIFICATE OF BUSINESS PURPOSE OF LOAN

Borrower certifies to RUSHMYFILE, INC. ("Mortgage Loan Originator") as follows:

1. I have applied to Mortgage Loan Originator for a trust deed loan of $7,750,000.00 secured by the real property at **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049** (the "Loan").

2. Mortgage Loan Originator has stressed to me the importance of knowing the primary purpose of the Loan. I know the duties and obligations of the Mortgage Loan Originator vary considerably depending upon whether the Loan is a "Consumer Loan" (i.e., the Loan proceeds are primarily for personal, family, or household purposes), or the Loan is a "Business Purpose Loan".

3. I have represented to Mortgage Loan Originator that all the proceeds of the Loan, exclusive of commissions, fees, costs, expenses incurred to obtain the Loan, are for the following purposes:

| Purpose | Approximate Amount |
|---|---|
| A. | $ |
| B. | $ |
| C. | $ |
| D. | $ |

4. The primary purpose of the Loan is to finance the business enterprise known as
_____, i.e., in the business of

5. No part of the Loan proceeds are intended to be used for the non-business (i.e. consumer) purpose except:

| Purpose | Approximate Amount |
|---|---|
| A. | $ |
| B. | $ |

The Lender(s), MLB/MLO, assignees and successors of the Lender(s) or of the Mortgage Loan Originator (MLB/MLO), as applicable, may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

_____   12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000–
Borrower                                          /Date

_____   12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-
Borrower                                          /Date

_____   12/6/19
WAYNE H. PLATT – Co-Borrower                       /Date

**EXHIBIT C**                                      **Page 65**

# Organization or Entity
# Identification Documentation
# Patriot Act

**The USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies every customer/client. Completion of this documentation is required in order to comply with the USA Patriot Act. A completed copy of this information must be retained with the loan file.**

**Application Number:** ████1465                    **Date:** <u>DECEMBER 6, 2019</u>

**Borrower's Name:** <u>WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT</u>

**Mailing Address:** <u>727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109</u>

**Property Address:** <u>205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049</u>

**Organization or Entity Identification Documentation**

**Document Type**_____ _____**Other Document Type** _____
**Document Number** _____**Tax Identification Number** _____
**Issue Date** _____ **Expiration Date** _____

**Issued by** _____

**Discrepancies and Resolution** _____

**Completed by:** _____

**EXHIBIT C**                                                    **Page 66**

**RUSHMYFILE, INC.**
**380 BEACH RD., SUITE B, BURLINGAME, CA 94010**
**650-353-2017**

BRE BROKER LIC. #01893519                                    NMLS #396905

## LOAN PURPOSE AND REAL PROPERTY SECURITY DECLARATION

Loan Number: ███████1465                    Proposed Loan Amount: $7,750,000.00

**Address of Property(ies) that will secure your loan:** 205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049
("Property"). If other properties will be used as security for the loan, complete a separate [**Supplemental Real Property Loan Security Declaration for each property securing the loan.**]

Each of the undersigned (collectively **"Borrower"**) has applied for the Loan to be secured by the property(ies) set forth on one or more separate but related and incorporated Real Property Loan Security Declarations. Each Borrower is the person who will sign a promissory note ("Note") and deed(s) of trust ("Deed(s) of Trust") which will encumber the property(ies). **"Lender"** as used herein includes the original lender who funds the Loan as well as others to whom Lender may transfer all or a part of the ownership of the Loan.

Borrower represents, warrants, and declares to Lender that:

1. The Borrower has applied to Lender for the Loan to be secured by a Deed(s) of Trust on the Property. Borrower understands the importance of truthfully and accurately disclosing to Lender the information requested in this declaration including, but not limited to, the purpose(s) for which Borrower intends to use the Loan proceeds. **Borrower further understands Lender, its brokers, agents, and employees will rely on Borrower's representations in this declaration and in any Supplemental Real Property Loan Security Declarations to determine, among other things: (1) whether to make the Loan; (2) the terms and conditions of the Loan; (3) what disclosures may be required; and (4) whether Lender possesses the necessary license(s) to make or arrange the Loan.**

2. Borrower is: ☐ an individual (natural person); ☐ a corporation, limited liability corporation, partnership, trust, estate, church, union, agency, association, cooperative, organization, government or governmental subdivision ("Entity"); or, ☒ both. For any Borrower that is an Entity (not an individual), please complete below the name of the Entity, and under capacity state the name and position pursuant to which the undersigned is authorized to act (for example, "Jane Smith" as president, secretary, managing member, general partner, trustee, etc.)

| EACH BORROWER'S NAME<br><br>(As you want it to appear on title and on the loan documents.) | NAMES & CAPACITY OF PERSONS SIGNING FOR AN ENTITY BORROWER (e.g. individual, general partner, managing member, president, secretary, etc.) |
|---|---|
| **Borrower/Entity:** THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 | WAYNE H. PLATT /TRUSTEE |
| **Borrower/Entity:** THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 | LISA F. PLATT/TRUSTEE |
| **Borrower/Entity:** WAYNE H. PLATT | INDIVIDUAL |

3. **Borrower intends to use the Loan proceeds for the purposes and in the amounts set forth below. INSTRUCTIONS: Borrower must complete the following in his or her own hand in his or her own words. Please print legibly in ink.** Itemize separately **all** payoffs of existing mortgages or liens. Attach additional pages if and as needed to provide a complete and accurate explanation. For each purpose or intended use of the Loan proceeds, please indicate the "USES" as personal="P", Business="B", or Agricultural="A".

**EXHIBIT C**                                    **Page 67**

**"Personal use or purpose"** loans are primarily for a "personal, family or household purpose or use." Such loans include, but are not limited to, loans to purchase, remodel, repair or improve a principal residence, a vacation home, or personal vehicle or boat, to purchase furniture, furnishings, appliances, or other consumer goods for personal use; to pay, refinance or consolidate personal or family debt or credit cards; or for educational expenses, vacations, and medical expenses. These are often called "consumer loans" and are for a "personal purpose or use."

**"Business use or purpose"** loans include, but are not limited to, loans to purchase, repair or improve real property for use in the Borrower's business; to acquire, improve or maintain certain non-owner occupied rental property; to purchase, improve or repair tools, equipment, machinery, fixtures or furnishings used in Borrower's business; for operating capital (e.g. employee salaries) or to purchase or pay for business inventory, supplies, rent, taxes, insurance, and other related expenses; or to pay off, refinance or consolidate business debts.

**"Agricultural purpose"** loans are for planting, propagating, nurturing, harvesting, catching, storing, exhibiting, marketing, transporting, processing or manufacturing food, beverages (including alcoholic beverages), flowers, trees, livestock, poultry, bees, wildlife, fish or shellfish by a natural personal engaged in farming, fishing or growing crops, flowers, trees, livestock, poultry, bees or wildlife.

| USE:<br><br>**Personal ="P"**<br>**Business ="B"**<br>**Agricultural="A"** | ITEMIZED PURPOSE (INTENDED USE) OF NET LOAN PROCEEDS<br>**(Further Explanation of "P," "B," and/or "A")** | AMOUNT<br><br>**(Total should equal the approximate net loan proceeds)** |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  | **TOTAL** |  |

**If the proposed loan amount changes from the amount stated above, Borrower agrees to immediately, and before the close of escrow, notify Lender of any changes from those set forth above in the type and proportion of intended use of Loan proceeds.**

4.  Are the Loan proceeds to be used primarily to acquire, improve, or maintain rental property? ☐ Yes ☐ No

    If your answer is "yes," will Borrower or a relative or family member of Borrower occupy any residential housing unit on the property? ☐ Yes ☐ No

5.  Part or all of the Loan proceeds ☐ will ☐ will not be used for demolition or construction of improvements on the Property.

6.  The Property [pick one]:

    ☐ Is comprised of only residential units. The number of residential units is: _____.

    ☐ Is comprised of only commercial, industrial, agricultural, retail property and/or vacant land.

    ☐ Is comprised of mixed use property (part residential and part commercial, retail or industrial units). The Property has [state number] _____ residential units and _____ non-residential units.

7.  I do ☐ do not ☐ intend to occupy any housing unit on the Property as my personal residence if and when the Loan closes.
    **[Check "I do" if *any* Borrower will use the Property as his/her personal residence.]**

**EXHIBIT C**                                                                 **Page 68**

8. Each of the undersigned Borrower's current principal residence is [state address]:

| EACH BORROWER'S NAME | CURRENT PRINCIPAL ADDRESS |
|---|---|
| WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 | 727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109 |
| LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 | 727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109 |
| WAYNE H. PLATT | 727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109 |

9. If the Property is wholly or partially residential rental property [pick all that apply]:

☐ It is rented to a third party (not a relative or family member) who pays, or will pay, fair market value rent.

☐ It is occupied by a relative or family member who pays, or will pay, fair market value rent.

☐ It is occupied by a relative or family member who does (or will) not pay rent or who pays (or will pay) less than fair market value.

☐ Not applicable because the Property does not contain a residential rental unit.

10. If the property is commercial, industrial, agricultural, retail property, vacant land or mixed use property or mixed use property [check all applicable boxes]:

☐ Borrower currently rents it to a third party to produce income.

☐ Borrower currently uses it in Borrower's business.

☐ It is currently vacant land held exclusively for investment (i.e., for appreciation and resale) and not for any personal use.

☐ It is currently vacant land acquired exclusively for development and resale and not for personal use.

☐ It is currently vacant land upon which Borrower intends to build a personal residence or vacation home in the future.

Other: _____ .

11. The Property is ☐ is not ·agricultural property which [check all applicable boxes]:

☐ Is comprised of 25 or more acres of land; and,

Will ☐ Will not ☐ be used primarily for "agricultural purposes." (See INSTRUCTION: above on "Agricultural purpose" loans.)

12. Borrower has ☐ has not ☐ attached a separate Supplemental Real Property Loan Security Declaration for each property securing the loan other than the above listed Property. [check applicable box]

THIS DECLARATION IS PART OF YOUR LOAN APPLICATION. PLEASE MAKE SURE THE STATEMENTS ABOVE, AS COMPLETED, ARE TRUE AND ACCURATE. UNTRUE OR FALSE STATEMENTS MAY SUBJECT YOU TO CIVIL OR CRIMINAL PENALTIES.

**EXHIBIT C**                    **Page 69**

**NO UNDERSIGNED HAS COMPLETED ANY PORTION OF THIS FORM BASED UPON SUGGESTIONS OR DIRECTION FROM LENDER, LENDER'S AGENTS OR ANY BROKER, LOAN AGENT AND/OR MORTGAGE LOAN ORIGINATOR REGARDLESS OF WHOM THE BROKER OR LOAN AGENT CLAIMS TO REPRESENT.**

Each undersigned declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at _____ (City), California on the ____ day of _____, 20___

_____

WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower

_____

LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower

_____

WAYNE H. PLATT – Co-Borrower

**EXHIBIT C**                                    **Page 70**

# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
### PARTIALLY AMORTIZED BALLOON PAYMENT NOTE
### 1-4 RESIDENTIAL NON-OWNER OCCUPIED PROPERTY
### BUSINESS PURPOSE LOAN

Loan Number: ███ 1465

Property Address: **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049**

Loan Amount: $7,750,000.00

BURLINGAME, California

DECEMBER 6, 2019

In installments as herein stated, for value received, WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT, the undersigned Borrower(s), promise to pay to EXHIBIT D, the Beneficiary, or order, at a place that may be designated by the Beneficiary, the sum of: $7,750,000.00, SEVEN MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS exactly with interest from the date of funding on the unpaid principal at the rate of 10.99% percent per annum, payable in 24 partially amortizing installments of $71,881.03 each, beginning on 02/01/2020, and continuing MONTHLY ON THE FIRST DAY OF EACH MONTH thereafter until maturity, 01/01/2022, at which time all sums of principal and interest then remaining unpaid shall be due and payable in full. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis. At the option of the Beneficiary, each payment shall be credited first on interest then due, then on late charges, then on advances, then on fees and the remainder on principal; and interest shall thereupon cease upon the principal so credited.

**Default of payment.** Upon default in any payment of any installment, then the balance of this obligation shall become due immediately at the option of the Holder hereof. Principal, interest, and all funds due Beneficiary payable in lawful money of the United States of America. Except where federal law is applicable, this Note shall be construed and enforceable according to the laws of the State of California for all purposes and any terms herein inconsistent therewith are hereby modified to conform to said law at the time of signing of these loan documents. Time is of the essence for each and every obligation under this Note.

THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN

At the option of the Beneficiary, if any payment should be insufficient to pay the interest then due, the balance of interest remaining shall be added to principal and will bear interest at the Note rate as the principal.

At the option of the Beneficiary, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan or foreclosure, the total sum of these amounts will bear interest at the Note rate from the date due or advanced until the date repaid.

If this Note is not paid when due, the Borrower(s) promise to pay, in addition to the principal and interest due under this Note, all costs of collection and any reasonable attorneys' fees incurred by the Beneficiary thereof on account of such collection, whether or not suit is filed hereon. Each Borrower consents to renewals, replacements, and extensions of time for payment hereof before, at, or after maturity; consents to the acceptance of security for this Note and waives demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the note or the "Default" interest, whichever is higher, from date of advance until date paid in full.

**Payment late charge.** If any installment due hereunder is delinquent more than 10 days, the Borrower to this Note agrees to pay a late charge on each installment of $5.00 or 10.00% of the delinquent payment, whichever is larger. All late charges are to be paid immediately on demand.

Page 1 of 3

**EXHIBIT C**

Page 71

**Balloon late charge.** In addition, if any balloon payment is delinquent more than TEN days, the borrower will be charged **$775,000.00** as liquidated damages.

Borrower acknowledges that its failure to make timely payments under this Note will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charges provided for in this Note represent fair and reasonable estimates taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payments. The late charges are payable in addition to, and not in lieu of, any default interest provided below.

**Return check charge.** Borrower and Beneficiary agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiary's agent for the return of an unpaid check provided by Borrower. It is hereby agreed that Borrower will pay the sum equal to 5% of the amount returned or $25.00, whichever is greater. However, in any event the maximum charge for an unpaid check is not to exceed the sum of $35.00. This amount is in lieu of any statutory monetary penalty, if any; however, Beneficiary does not waive any other rights that may be awarded under any statute. Should Borrower have two or more returned checks, for any reason, during the life of the loan, Beneficiary may demand that Borrower make payments in the form of cash, cashiers check or money order.

**Right to assign.** The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

**Prepayment penalty.** The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty, however, Beneficiary is guaranteed to receive a minimum of **6 months** interest based on the original principal balance together with any interest paid or due in escrow.

**Default interest.** Should Borrower default on any terms and conditions of this loan, Borrower shall pay a default interest rate in the amount <u>6.00%</u> per annum, in addition to the current rate of 10.99%, based on the principal balance and on all outstanding advances and advances to be made after default has occurred. Default interest shall commence as of the date of the default and shall continue until such time default has been cured or loan has been paid off.

**Advancing Fee.** For any advances made to senior encumbrances and/or obligations to protect the Beneficiary's interest in this Note, there will be an advancing fee equal to three (3%) of the amount so advanced subject with a minimum fee of fifty dollars ($50) per advance (per lender). Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when all monies are paid in full in the form of cash and/or certified funds. ALL ADVANCES TO BE REPAID AT NOTE RATE OR DEFAULT INTEREST RATE, WHICHEVER ONE IS HIGHER, FROM DATE OF ADVANCE UNTIL DATE FUNDS ARE RECEIVED BY BENEFICIARY.

**Oral Representations.** The undersigned Borrower hereby states that the Beneficiary, their representative(s) nor any employee RUSHMYFILE, INC. has alluded to, given actual details(s) or discussed other terms of this loan other than what has been agreed to in writing.

**<u>SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.</u>** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Deed of Trust securing the indebtedness, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Deed of Trust securing the indebtedness, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Deed of Trust, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Deed of Trust contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**EXHIBIT C**                                                        **Page 72**

**Binding.** This Note and all of the covenants, promises and agreements contained in it shall be binding on and insure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of the Borrower and the Beneficiary.

**Acceleration clause.** This Note is secured by a First Deed of Trust of even date herewith which contains the following provision:

**In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.**

This Note is secured by a Deed of Trust to **SUPERIOR LOAN SERVICING**, as Trustee.

_____        12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7,
2000– Borrower                                                    /Date

_____        12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000
– Co-Borrower                                                    /Date

_____        12/6/19
WAYNE H. PLATT – Co-Borrower                          /Date

INTENTIONALLY BLANK

DO NOT DESTROY THIS NOTE: When paid, this Note, with Deed of Trust securing same, must be surrendered to the Trustee for cancellation before reconveyance or Trustee's Deed. This loan was originated by RUSHMYFILE, INC., License No. 01893519, NMLS No. 396905, a company licensed by the Bureau of Real Estate (formerly the Department of Real Estate).

Page 3 of 3
**EXHIBIT C**                                      **Page 73**

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

Superior Loan Servicing
7525 Topanga Canyon Blvd
Canoga Park, CA 91303
Loan Number: RMF4021465

Property Address:
205 NORTH TIGERTAIL ROAD
LOS ANGELES, CA 90049

APN: 4403-011-006

SPACE ABOVE THIS LINE FOR RECORDERS USE

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 22. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated DECEMBER 6, 2019, together with all Riders to this document.

**(B)** **"Borrower"** is WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109.

**(C)** **"Lender"** is EXHIBIT D. Lender is the beneficiary under this Security Instrument.

**(D)** **"Trustee"** is SUPERIOR LOAN SERVICING, to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

**(E)** **"Note"** means the promissory note signed by Borrower and dated DECEMBER 6, 2019. The Note states that Borrower owes Lender SEVEN MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS exactly (U.S. $7,750,000.00) plus interest.

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower : Assignment of Rents and Profits; Security Agreement and Protection of Lenders' Security Rider.

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    **"Escrow Items"** mean those items that are described in Section 3.

(M)    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    **"Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

(P)    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **LOS ANGELES**, which currently has the address of **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049** and fully described as:

**SEE LEGAL DESCRIPTION ATTACHED**

**APN # 4403-011-006**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial

payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: First - interest due under the Note; Second - principal due under the Note; Third - amounts due under Section 3. However, should advances be made under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**EXHIBIT C**                                **Page 76**

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a onetime charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower is to provide and deliver evidence of insurance to lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made

promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9.    **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

10.    **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment

of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.
All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender.

**Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.**

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

**15.   Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**16.   Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17.   Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

**18.   Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19.   Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

Page 8 of 16

**EXHIBIT C**                                                     **Page 81**

**20.  Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.  Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Beneficiary may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or implied under California Civil Code Section 2924g(b). All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with

the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22.    The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**23.    Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.    Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25.    Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26.    Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to Business & Professions Code Section 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Civil Code Section 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**27.    Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**28.    Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29.    Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**30.    Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses

Page 10 of 16

**EXHIBIT C**                    **Page 83**

are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**31.    Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**32.    Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

**33.    Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

**34.    125% TITLE INSURANCE POLICY.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include delinquent interest, late charges, attorney fees, advances for insurance, taxes, etc. Borrower acknowledges this increase of coverage does result in a higher fee which Borrower shall bear for the Lender title insurance policy.

**35.    Property Assessed Clean Energy ("PACE") (or similar type program).** All Property Assessed Clean Energy ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/loan becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed under Section 21 of this Security Instrument.

**36.    SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Promissory Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Promissory Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Promissory Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Promissory Note contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

12/6/19

_____
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
/Date

12/6/19

_____
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
/Date

12/6/19

_____
– Co-Borrower
/Date

## ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of ___Los Angeles_____ )

On ___12/6/19_____ before me, _Tae Kim   Notary Public__
                                        (insert name and title of the officer)

personally appeared ___Wayne H. Platt   Lisa F. Platt___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TAE KIM
Notary Public – California
Los Angeles County
Commission # 2199780
My Comm. Expires Jun 27, 2021

Signature _____    (Seal)

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:        THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO REQUIRE PAYMENT OF THE LENDER'S ATTORNEY'S FEES IN BANKRUPTCY CASES.

THIS PROTECTION OF LENDER'S SECURITY RIDER is made DECEMBER 6, 2019, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to EXHIBIT D (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049** - Property address.

AMENDED COVENANT. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
In addition to the uniform covenant contained in section 8 of the Security Instrument, the following information is added:

8. Protection of Lender's Security. If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law.

Any amounts disbursed by Lender pursuant to this Section 8, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 8 shall require Lender to incur any expense or take any action hereunder.

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDER.

_____              12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
                                                                                           /Date

_____              12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                                          /Date

_____              12/6/19
– Co-Borrower                                                                                          /Date

**EXHIBIT C**                                                                    **Page 86**

# RIDER TO DEED OF TRUST
## ASSIGNMENT OF RENTS AND PROFITS
## AND SECURITY AGREEMENT

**THIS RIDER** is made this DECEMBER 6, 2019 and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to SUPERIOR LOAN SERVICING, as Trustee for the benefit of EXHIBIT D ~ (collectively, "Lender") and covering the Property described in the Deed of Trust and located at **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049**.

**1. Assignment of Rents, Revenues and Profits**

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust. Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b) Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

**2. Security Agreement** This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) any and all items of property specified above as part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under Section 9334 and/or 9604 California Uniform Commercial Code.

Page 14 of 16

**EXHIBIT C**                    **Page 87**

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under The California Uniform Commercial Code, including, Section 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1)  the replacements for such items of personal property or fixtures are of equivalent value and quality;

(2)  Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3)  at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code Sections 9334 and/or 9604.

**IN WITNESS WHEREOF,** Borrowers have executed this Rider as of the date first above written.

_____          12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
                                                                                    /Date

_____          12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                                    /Date

_____          12/6/19

– Co-Borrower                                                         /Date

# RIDER TO DEED OF TRUST

The following provisions are a part of and incorporated into that certain Deed of Trust and Assignment of Rents dated as of DECEMBER 6, 2019, by and between WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 ("Trustor"), SUPERIOR LOAN SERVICING ("Trustee") and EXHIBIT D ("Beneficiary").

## Assignment of Rents and Profits

**(a) Present Assignment.** All of Trustor's interest in any leases or other occupancy agreements pertaining to the Property now existing or hereafter entered into, and all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all prepaid rents and security deposits (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note and under this Deed of Trust subject to the rights of residential tenants under California Civil Code Section 1950.5(d). Beneficiary waives the right to exercise the rights and powers assigned to Beneficiary herein and agrees not to revoke such waiver until and unless an event of acceleration (as set forth in Section 4 of the Deed of Trust) occurs. It is understood and agreed that neither the foregoing assignment of Rents and Profits to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies hereunder shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Beneficiary, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property. Upon the occurrence of any event of default, this shall constitute a direction to and full authority to each lessee under any lease to pay all Rents and Profits to Beneficiary without proof of the default. Trustor hereby irrevocably authorizes each lessee to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any Rents and Profits due or to become due.

**(b) Application of Rents.** Trustor shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, and debt service on the indebtedness secured hereby, before using the Rents and Profits for Trustor's personal use or any other purpose not for the direct benefit of the Property.

**(c) Notice to Tenants.** Trustor shall at all times perform the obligations of lessor under all such leases. Trustor shall at any time or from time to time, upon request of Beneficiary, transfer and assign to Beneficiary in such form as may be satisfactory to Beneficiary, Trustor's interest in any lease, subject to and upon the condition, however, that prior to the occurrence of any event of default hereunder Trustor shall have a license to collect and receive all Rents and Profits under such lease upon accrual, but not prior thereto, as set forth in Paragraph (a) above. Whenever requested by Beneficiary, Trustor shall furnish to Beneficiary a certificate of Trustor setting forth the names of all lessees under any leases, the terms of their respective leases, the space occupied, the rents payable thereunder, and the dates through which any and all rents have been paid.

**(d) Attornment.** Each lease for any part of the Property shall make provision for the attornment of the lessee thereunder to any person succeeding to the interest of Trustor as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

**(e) Direct Creditor.** Beneficiary shall be deemed to be the creditor of each lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor-relief proceedings affecting such lessee (without obligation on the part of Beneficiary, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein). Beneficiary shall have the right to assign Trustor's right, title and interest in any leases to any subsequent holder of this Deed of Trust or any participating interest therein or to any person acquiring title to all or any part of the Property through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Beneficiary. Beneficiary shall have the authority, as Trustor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Trustor and to bind Trustor on all papers and documents relating to the operation, leasing and maintenance of the Property.

**(f) Miscellaneous.**

_____                                          12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
                                                                                   /Date

_____                                          12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                                   /Date

_____                                          12/6/19
– Co-Borrower                                                                      /Dat

**EXHIBIT C**

# BORROWER/BROKER AGREEMENT
## COMMERCIAL PROPERTY/BUSINESS PURPOSE LOAN TRANSACTIONS ONLY
### Private Investors/Lenders
### Agreement to Procure Lender

## SIGNED IN COUNTERPART

Date: **DECEMBER 6, 2019**                                    Loan No: ████████1465

This Agreement entered into this day of DECEMBER 6, 2019, by and between **WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT** (herein referred to as "Borrower"), and **RUSHMYFILE, INC.**, a California Corporation, BRE LICENSE #01893519 and NMLS Endorsement #396905, and its officers, directors, employees and licensed agents (herein referred to as the MLB), is made with reference to the following facts and upon the terms and conditions set forth herein.

**PREAMBLE:**

I.  Borrower is the owner or the intended purchaser of the Security Property commonly known as **205 NORTH TIGERTAIL ROAD,** located in **LOS ANGELES, CA 90049,** County of **LOS ANGELES,** State of California, APN: **4403-011-006** ("Security Property");

II.  Borrower desires to obtain financing secured by the Security Property in an approximate amount of **$7,750,000.00;**

III.  MLB is a duly licensed Real Estate/Mortgage Broker that desires to find and introduce Borrower to Private Investors/Lenders that may be interested in making the Loan for which Borrower has applied; and,

IV.  MLB as a "Third Party" mortgage loan originator desires to arrange on behalf of Borrower a Loan to be secured by the Security Property.

NOW, THEREFORE, the parties agree as follows:

**1. AGREEMENT/DISCLOSURE OF MATERIAL LOAN TERMS**

Borrower shall pay to MLB the commission/fee specified in this Agreement in the event that MLB, on or before or close of escrow whichever occurs first (the date this Agreement terminates, unless extended in writing by the parties hereto) finds Private Investors/Lenders that agree to provide financing to Borrower to encumber the intended Security Property. The Loan for which the Borrower has applied is described in the attached Loan Application completed by the Borrower and is set forth in the attached Mortgage Loan Disclosure Statement, Department of Real Estate Form #885 ("MLDS"), each of which are incorporated herein by reference (the "Proposed Loan" or the "Loan").

**2. COMPENSATION**

The commission/fee to be paid by Borrower to MLB shall be a sum equal to $367,350.00 of the gross Loan amount provided to Borrower by the Private Investors/Lenders upon financial terms and conditions substantially consistent with the Loan for which Borrower applied, or upon such other financing terms and conditions that are acceptable to Borrower plus fees reasonably earned and costs and expenses actually incurred for additional services rendered and/or goods and facilities actually provided. Said commission/fee shall be due and payable by Borrower to MLB upon Borrower's receipt of "Final Loan Approval" (as defined hereinafter) from the Private Investors/Lenders, which sum shall be immediately due and payable upon the written demand therefor by MLB. The commission/fee to be paid to MLB shall be in addition to fees that may be charged by other "Third Party" service providers, e.g., Title Insurance Company, Title Company and Escrow Holder, Appraiser, Credit Bureau, County Recorder, Security Property Inspectors, Legal Counsel, and the like; and for Document Preparation Fees due to MLB or to the delegee of MLB for such purposes, BA Loan Processing Center, Inc. ("BALPC").

Should MLB elect to accept from the Loan proceeds distributed through escrow payment of its commission/fee and any fees for loan processing and document preparation (rather than to receive payment upon "Final Loan Approval", as defined hereinafter), Borrower shall irrevocably instruct the title company or licensed public escrow holder (selected to conduct the Loan escrow) to pay MLB the commission and fees due directly from the Loan escrow proceeds. Borrower agrees that MLB shall be a party to the Loan escrow for the purpose of the irrevocable instruction to receive payment of compensation, as set forth herein and for no other purpose.

**EXHIBIT C**                                    **Page 90**

## 3. FINAL LOAN APPROVAL

"Final Loan Approval" is defined to be when written approval/commitment to make the Loan is received from the Private Investors/Lenders funding in accordance with Civil Code Section 1624(a)(7) requiring only customary closing costs, including fully executed Loan documents, disclosures, notices of rights, and the Settlement/Disbursement Statement, and recordings of required documents/instruments.

## 4. BORROWER'S OBLIGATION TO PROVIDE INFORMATION

Borrower agrees to provide to MLB all documents, instruments, records, and/or information or representations concerning the Security Property, as well as a Loan Application from the Borrower (including the Borrower's financial standing and credit worthiness) in a form acceptable to MLB which are reasonably necessary or required to carry out the purposes of this Agreement. Borrower shall cooperate with MLB in presenting to the Private Investors/Lenders to whom the Loan request has been submitted such documents, instruments, and/or other information or representations, including the Loan Application for which MLB shall have no liability for any alleged breach of confidentiality. Borrower understands the foregoing information gathered by or through the MLB is to be transmitted to the Private Investors/Lenders for the Loan Application to be processed to assist in underwriting the Proposed Loan.

## 5. PROPOSED LOAN, PURPOSE AND USE OF LOAN PROCEEDS, AND REPAYMENT SOURCE

The intended Security Property ☒ is 1 to 4 residential units, or ☐ is other than 1 to 4 residential units (e.g., residential income, commercial retail, industrial income, or land) *(check appropriate box)*:

The following represents the Borrower's statement of purpose and use of the Loan proceeds (also see the Loan document entitled, "Declaration of Loan Purpose and of Nature of the Security"):

_____

_____

*(Please briefly describe)*

## 6. BORROWER'S DUTY TO INDEMNIFY, HOLD HARMLESS, AND DEFEND

Borrower hereby agrees to indemnify, hold harmless, and defend MLB from any and all claims, actions or causes of actions, losses, and damages of whatever kind or nature (including reasonable attorneys' fees, expert's fees, and costs) resulting from or arising out of any documents, instruments, records, and/or information or representations made or provided by Borrower to or through MLB to the Private Investors/Lenders, to "Third Parties", or resulting from or arising out of the Loan transaction. At its sole discretion, MLB shall be entitled to select legal counsel to represent MLB in any action required in connection with the foregoing.

## 7. MLB'S OBLIGATION TO USE BEST EFFORTS AND ESTABLISHMENT OF AGENCY RELATIONSHIPS AND TERMINATION OF DUAL AGENCY

MLB shall use its best efforts as the *agent* of Borrower to obtain Private Investors/Lenders for which MLB is also acting as the *agent* and fiduciary to provide financing to Borrower as described herein. Therefore, MLB is acting as a *dual agent* as described under California Law and the Borrower agrees to such *dual agency*, including MLB participating on behalf of Borrower and the Private Investors/Lenders in the negotiations of the material terms of and conditions to achieve the Proposed Loan for which the Borrower has applied.

As the agent of the Private Investors/Lenders, MLB shall prepare and deliver required disclosures, notices of rights, notice of transfer of Loan servicing, and any other disclosures or notices that are to be completed and delivered to the Borrower in a commercial transaction. In addition, MLB shall undertake on behalf of the Private investors/Lenders the due diligence required to underwrite the intended Security Property, to underwrite the Borrower's financial standing and credit worthiness, and to accomplish whatever other research as may be required to provide adequate information enabling the Private Investors/Lenders to make an informed and considered decision to extend credit by funding the Loan requested or as accepted by the Borrower.

CHECK WHICH ONE APPLIES:

**EXHIBIT C**                    **Page 91**

☐ Mortgage loan servicing shall be undertaken by MLB on behalf of the Private Investors/Lenders for which MLB shall receive compensation.

☒ MLB may delegate all or part of the loan servicing functions to Third Party Servicer and compensation may be shared by MLB and Third Party Servicer to perform Loan servicing. If MLB intends to delegate Loan servicing to Third Party Servicer, check the box following the word "Yes"; and if MLB does not intend to delegate Loan servicing to Third Party Servicer, check the box following the word "No".   ☒ Yes ☐ No

☐ Lender is to self-service the loan.

During the servicing of the Loan subsequent to the closing of the Loan escrow, the Borrower understands and acknowledges that he/she/it will not be represented by MLB. The agency relationship between MLB and the Borrower terminates as of the close of the Loan escrow, and thereafter MLB will no longer be acting as the *agent* and fiduciary of the Borrower. MLB and the delegee of MLB, if applicable, will be acting as the exclusive *agent* and *subagent* of the Private Investors/Lenders, including to hold (subsequent to the proper recording thereof, pursuant to applicable law) the original promissory note and deed of trust for Loan servicing. The Borrower may be required to obtain (at the Borrower's own cost and expense) the advice of professionals of the Borrower's own choosing (should the Borrower require any independent advice during Loan servicing).

## 8. DELEGATION OF PREPARATION AND DRAWING OF LOAN DOCUMENTS, RELATED DISCLOSURES, NOTICES OF RIGHTS, AND THE INSTRUCTIONS OF THE PRIVATE INVESTORS/LENDERS

The MLB has elected to delegate to BALPC as the agent of the MLB the drawing of the Loan documents and of the related disclosures, notices of rights, and instructions to escrow required of the Private Investors/Lenders and of the MLB. BALPC is a "Third Party" service provider lawfully entitled to perform such services. BALPC's fees are reasonably related to the value of the services to be rendered for drawing the Loan documents, the related disclosures, notices of rights, and escrow instructions. These fees are disclosed in the attached MLDS.

When performing loan servicing pursuant to the Loan Servicing Agreement executed by the Lender(s), *Loan Servicer is not the agent nor the subagent of the Borrower. Loan Servicer will be performing only as the agent of the Lender(s).*

## 9. WHEN THERE IS A COOPERATING BROKER/BIFURCATION OF AGENCY RELATIONSHIPS

Should there be a separate Real Estate/Mortgage Broker exclusively representing the Borrower, this Cooperating Broker is **ELITE EQUITY CONSULTANTS, INC.,** herein referred to as the Cooperating Broker. MLB would thereupon be exclusively representing the Private Investors/Lenders. The duties and obligations of each and the disclosures of agency relationships and consents thereto as described in this Agreement are amended as follows:

- The Cooperating Broker exclusively representing the Borrower owes to the Borrower each of the duties and obligations as described herein and in accordance with applicable California and federal law and shall accomplish on behalf of the Borrower the following services:

  - Reasonable care, integrity, honesty and loyalty in dealings with the Principal(s);

  - Disclosure of material loan terms or any other material facts that may affect the decision of the Borrower to proceed with the Proposed Loan or a Loan acceptable to the Borrower encumbering the Security Property as a first deed of trust;

  - Confidentiality unless the information must be disclosed to the other Principal(s) to permit the Principal(s) receiving the disclosure(s) to make an informed and considered decision whether to borrow or to extend credit pursuant to the Proposed Loan or a Loan acceptable to the Borrower;

  - To represent the Borrower regarding the proposed extension of credit including (among others) completing a Loan application, establishing loan-to-value and debt-to-income ratios, complying with applicable federal and state law and presenting and explaining to the Borrower the substance of the required disclosures and notices of rights, and by analyzing the ability of the Borrower to repay the Proposed Loan or a Loan acceptable to the Borrower; and,

  - To present the Loan documents, including the disclosures and notices of rights to the Borrower and to advise the Borrower about the foregoing and whether the Borrower should seek the advice of

**EXHIBIT C**                    **Page 92**

independent legal counsel prior to proceeding with the transaction.

*The foregoing duties and obligations include offering advice and recommendations to the Borrower (within the course and scope of the agency relationship established) and to provide the necessary information to assist the Borrower in making an informed and considered decision whether to proceed with the Proposed Loan or a Loan acceptable to the Borrower.*

- MLB exclusively representing the Private Investors/Lenders to originate the Proposed Loan owes the duties and obligations to the Private Investors/Lenders as described herein and in accordance with applicable California and federal law and shall accomplish on behalf of the Private Investors/Lenders the following services:

  - Reasonable care, integrity, honesty and loyalty in dealings with the Principal(s);

  - Disclosure of material loan terms or any other material facts and investment risks that may affect the decision of the Private Investors/Lenders to make the Loan and extend credit to the Borrower; the ultimate decision to fund the loan rests with the Lender;

  - Confidentiality unless the information must be disclosed to the other Principal(s) to permit the Principal(s) receiving the disclosure(s) to make informed and considered decisions whether to extend credit or to borrow;

  - To conduct reasonable due diligence on the Borrower and on the Security Property depending on the type of loan product offered, including obtaining a preliminary "title" and an appraisal report estimating the current market value of the Security Property; if requested by Lender, MLB will obtain credit reports, tax returns, and/or financial statements and verifications of employment, income, and funds on deposit with financial institutions regarding the Borrower; Asset-based loans will usually only require a title report and appraisal;

  - To underwrite the extension of credit to the Borrower by (among others) processing a Loan application, establishing loan-to-value and debt-to-income ratios, complying with applicable federal and state law including completing required disclosures and notices of rights, and by analyzing the ability of the Borrower to repay the Proposed Loan or a Loan acceptable to the Borrower depending on the type of product offered; and,

  - To present the Loan documents, including the disclosures and notices of rights to the Private Investors/Lenders and to advise the each of the Lenders about the foregoing and whether the Private Investors/Lenders should seek the advice of independent legal counsel prior to proceeding with the transaction.

*Each of the foregoing duties, including the disclosure of material facts and investment risks is to provide the Private Investors/Lenders with sufficient information so they each may make an informed and considered decision whether to proceed with the Proposed Loan or a Loan acceptable to the Borrower. The decision to fund the loan ultimately belongs to the Lender. The Lender must complete its own due diligence.*

Because of the foregoing bifurcation of agency relationships, MLB is exclusively representing the Private Investors/Lenders and is neither an agent nor a subagent and fiduciary of the Borrower. The Cooperating Broker is exclusively representing the Borrower and is neither an agent nor subagent and fiduciary of the Private Investors/Lenders. Any reference in this Agreement to *dual agency* is, therefore, no longer operative.

## 10. NO COMMITMENT OR OBLIGATION TO OFFER THE LOAN TO PRIVATE INVESTORS/LENDERS

THIS IS NOT A COMMITMENT OR OBLIGATION BY MLB TO DELIVER TO PRIVATE INVESTORS/LENDERS THE LOAN FOR WHICH THE BORROWER HAS APPLIED. MLB has informed the Private Investors/Lenders that Borrower may elect, in his/her/its sole discretion, not to proceed with the Loan for which the Borrower has applied. The Borrower's right to elect not to proceed shall terminate when the Loan has been funded and the Loan transaction has been consummated. See section entitled, "DEFINITION OF CONSUMMATION". Should the Borrower elect to cancel the Loan and the Private Investors/Lenders have previously deposited Loan funds with the designated escrow holder, the Loan funds shall be refunded to the Private Investors/Lenders in accordance with its/their written instructions presented to the escrow holder to which the Borrower may also be subject.

## 11. NO COMMITMENT TO MAKE OR ARRANGE THE LOAN TO OR FOR THE BORROWER

**EXHIBIT C**                                                      **Page 93**

While this is an undertaking by the MLB to utilize best efforts to obtain the Loan for which the Borrower applied, THIS IS NOT A COMMITMENT BY MLB TO MAKE OR ARRANGE THE LOAN TO OR FOR THE BORROWER. MLB has no liability to the Borrower if MLB is unable to procure Private Investors/Lenders to make/fund the Loan. This Agreement is to establish the Agency relationship among the parties and to authorize MLB to use best efforts to undertake to locate Private Investors/Lenders to fund the Proposed Loan for which the Borrower has applied. The Borrower understands and agrees that no Loan commitment is being issued until Final Loan Approval occurs. See section entitled, "FINAL LOAN APPROVAL".

This Agreement provides for cancellation fees to be paid by the Borrower in the event Final Loan Approval/Loan Commitment is received from the Private Investors/Lenders prior to the Borrower's election to cancel. The cancellation fees to be paid by the Borrower (including payment of any costs and expenses incurred), and the payment of other "Third Party" cancellation fees are as set forth in the section entitled, "COMPENSATION". The payment of the foregoing by the Borrower is pursuant to an *Advance Fee Agreement approved for use or for which no objection has been made by the California Department of Real Estate, a copy of which will be provided to the Borrower, if applicable.*

## 12. PRIVATE INVESTORS/LENDERS TO MAKE LOAN FUNDING AND LOAN SERVICING DECISIONS

MLB shall *not* make the decision to extend credit and to make/fund the Loan on behalf of the Private Investors/Lenders. Such decisions are to be made by the Private Investors/Lenders, including decisions made during servicing of the Loan (except for the decisions required to collect and process the debt service and to protect the security of the Loan, as set forth in the promissory note and deed of trust and as authorized in the Loan Servicing Agreement, if one).

## 13. DEFINITION OF CONSUMMATION

The Loan for which the Borrower has applied is not consummated until the Loan has been fully funded, the Borrower has been so advised, and the Borrower has executed the documents, instruments, instructions, disclosures, notices of rights, including escrow instructions required of the Borrower to complete the transaction for the Loan requested or accepted by the Borrower.

## 14. PREVAILING PARTY'S RIGHT TO FEES AND COSTS

In the event that any action is commenced between Borrower and MLB to enforce or interpret this Agreement, the party prevailing in such action shall be entitled to (in addition to any other relief) reasonable attorneys' fees, expert's fees, and costs, which may be determined in said action or in a separate action brought for that purpose.

## 15. JUDICIAL REFERENCE AND WAIVER OF JURY TRIAL.

*If the Borrower elects Judicial Reference as the dispute resolution mechanism, the box following "Yes" should be checked. If the Borrower elects not to select Judicial Reference as the dispute resolution mechanism, then the box following "No" should be checked.*    ☐ *Yes*    ☒ *No*

If a dispute arises out of or relates to this Agreement, the dispute shall be decided by a Judicial Reference procedure pursuant to California Code of Civil Procedure Section 638. The Judicial Reference shall be commenced by a request or a motion filed with the clerk or presiding judge of the Superior Court of the County of **LOS ANGELES**, with a copy served on the other party, pursuant to Code of Civil Procedure Section 638. Any such request or motion shall include a copy of this Agreement. Except to the extent modified herein, the reference shall be conducted in accordance with California law, including, but not limited to, the California Code of Civil Procedure and the California Evidence Code. Any Judicial Reference shall be commenced within the period specified by the applicable statute of limitations for the claim(s) made. All Judicial Reference proceedings hereunder shall (unless all parties thereto otherwise agree) be conducted in a mutually agreeable location in the County of **LOS ANGELES**, State of California.

Subject to an award of fees and costs to the prevailing party in the Judicial Reference, each party shall pay one-half of the expenses of the Judicial Reference at the rate set by the Court pursuant to Code of Civil Procedure Sections 645.1 and 1023. The referee(s) or arbitrator(s) shall not have the right to convene a jury to be the Trier of fact of any controversy subject to the reference. THE BORROWER HEREBY WAIVES A JURY TRIAL IN CONNECTION WITH ANY DISPUTE ARISING OUT OF THIS AGREEMENT.

No reference arising out of or relating to this Agreement shall include, by consolidation, joinder in any other manner an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement executed by the parties to this Agreement (unless ordered by a court of competent jurisdiction). Consent to a

**EXHIBIT C**                    **Page 94**

reference involving an additional person or entity shall not constitute consent to a reference of any claim, dispute, or other matter in question not described in the written consent of the persons or entities agreeing thereto.

The parties agree that the referee or arbitrator shall be empowered to award to the prevailing party costs of the Judicial Reference, including, without limitation, attorneys' fees, expert's fees, and other fees as may be assessed by the referee or arbitrator and the referee's or arbitrator's compensation.

BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THIS AGREEMENT DECIDED BY A JUDICIAL REFERENCE PROCEEDING, WITH A REFEREE OR ARBITRATOR AND NOT A JUDGE, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BEFORE A JURY.

IF YOU REFUSE TO SUBMIT TO A JUDICIAL REFERENCE PROCEEDING AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO PARTICIPATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS JUDICIAL REFERENCE PROVISION IS VOLUNTARY. I/WE HAVE READ AND UNDERSTAND THE FOREGOING PROVISION AND AGREE TO SUBMIT DISPUTES TO A JUDICIAL REFERENCE PROCEEDING BEFORE A REFEREE OR ARBITRATOR, RATHER THAN A COURT OR JURY PROCEEDING.

BORROWER'S INITIALS: _____     MLB'S INITIALS: _____

BORROWER'S INITIALS: _____

BORROWER'S INITIALS: _____

## 16. BINDING ARBITRATION

*If the Borrower elects Binding Arbitration as the dispute resolution mechanism, the box following "Yes" should be checked. If the Borrower elects not to select Binding Arbitration as the dispute resolution mechanism, then the box following "No" should be checked.* ☒ *Yes* ☐ *No*

**Mutual Agreement To Arbitrate Disputes:** The undersigned ("BORROWER") has, or intends to, obtain a mortgage loan, made or arranged by MLB/MLO secured by real property ("Loan"). BORROWER and MLB/MLO agree that any and all disputes involving the Loan including, but not limited to, claims arising from the making, arranging, origination, documentation, disclosures, valuation of the security, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement. This Agreement shall also be binding on the agents, spouses, executors, administrators, successors and assigns of the parties. "Dispute" shall include, but not limited to: (1) Any claimed wrongdoing including, but not limited to, misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices; and (2) Any claimed violation of local, state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement law, real estate law and regulations, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practices acts.

No party to this agreement shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction. Each party shall be entitled to all non-waivable rights and remedies provided by statute or by common law and to affirmative defenses to the same extent as if the dispute were tried in court. Binding Arbitration shall be conducted under the rules of American Arbitration Association ("AAA"). Arbitration shall be filed at the office of the AAA in **LOS ANGELES** County. The arbitrator's award shall be reasoned decision in accordance with applicable law. The award shall be in writing and provide a concise statement of the essential findings and conclusions on which the award is based. The remedy awarded by the arbitrator shall not be different from that which could be awarded by a court. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute, or other matter(s) in question would be barred by the applicable statute of limitations, and the arbitrator shall reject any claim that is not based upon a timely filed demand. Discovery may be conducted pursuant to the provisions of Section 1283.05 of the California Code of Civil Procedure.

Arbitration fees and costs shall be paid as provided in California Code of Civil Procedure Section 1284.2.Each party shall bear his/her/its own attorneys fees, except to the extent provided by applicable law if the dispute were tried in court. The arbitrator(s) shall render a statement of the reasons for the award. Judgment on the award may be entered in any court of competent jurisdiction.

WAIVERS: THE PARTIES HEREBY FREELY WAIVE THE RIGHT TO TRIAL BY JUDGE OR JURY, THE RIGHT TO APPEAL, FULL PRETRIAL DISCOVERY, AND APPLICATION OF THE RULES OF EVIDENCE.

**EXHIBIT C**                    **Page 95**

We have read, fully understand, and agree to the above:

BORROWER'S INITIALS: _____          MLB'S INITIALS: _____

BORROWER'S INITIALS: _____

BORROWER'S INITIALS: _____

## 17.  ENTIRE AGREEMENT:

This document and the attachments hereto or expressly referred to herein contain the entire Agreement between Borrower and MLB concerning the stated purposes of this Agreement and correctly set forth each party's rights, duties, and obligations to and from each other concerning such matters. Any agreement or representation concerning the subject matter of this Agreement regarding the duties of Borrower or of MLB in relation to the Borrower, if not set forth herein, in the attached Loan application completed by the Borrower, in the MLDS 885 Form in the GFE, in the attached Borrower Authorization Statement (if any), or in the Advance Fee Agreement (if applicable) shall be of no force and effect, unless reduced to a writing executed by MLB and the Borrower.

## 18.  BINDING ON HEIRS AND SUCCESSORS

The terms of this Agreement shall be binding upon and inure to the benefit of Borrower and MLB and shall be binding upon their respective heirs, successors, and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

Borrower:

_____    Date: _12/6/19_____
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000

_____    Date: _12/6/19_____
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000

_____    Date: _12/6/19_____
WAYNE H. PLATT

Real Estate/Mortgage Broker/MLB              Cooperating Real Estate/Mortgage Broker (if applicable)

RUSHMYFILE, INC.                             ELITE EQUITY CONSULTANTS, INC., BROKER

By: _____              By: _____

Its Authorized Representative                Its Authorized Representative

Date: _____            Date: _____


Approved By:

Lender:


X _____    Date: _____
EXHIBIT D

**EXHIBIT C**                                    **Page 96**

## Addendum

For Use When There Is a Cooperating Broker (MLB/MLO)
And The Loan Is Being Delivered To Private Investors/Lenders

## SIGNED IN COUNTERPART

Date: <u>DECEMBER 6, 2019</u>                                    Loan No: ███████1465

Should there be a MLB/MLO exclusively representing the Borrower and a distinguishable MLB/MLO exclusively representing the Private Investors/Lenders to originate the Federally Related Residential Mortgage Loan, the duties and obligations of each MLB/MLO and the disclosures of agency relationships and consents thereto, the Agreement to Procure Lender is amended as follows:

- The MLB/MLO (Cooperating Broker) exclusively representing the Borrower owes to the Borrower each of the duties and obligations in accordance with applicable California and federal law shall accomplish the services described below:

  - Reasonable care, integrity, honesty and loyalty in dealings with the Principal(s);

  - Disclosure of material loan terms or any other material facts that may affect the decision of the Borrower to proceed with the Proposed Loan or a Loan acceptable to the Borrower encumbering the Security Property as a first deed of trust;

  - Confidentiality unless the information must be disclosed to the other Principal(s) to permit the Principal(s) receiving the disclosure(s) to make an informed and considered decision whether to borrow or to extend credit pursuant to the Proposed Loan or a Loan acceptable to the Borrower;

  - To represent the Borrower regarding the proposed extension of credit including (among others) completing a Loan application, establishing loan-to-value and debt-to-income ratios, complying with applicable federal and state law and presenting and explaining to the Borrower the substance of the required disclosures and notices of rights, and by analyzing the ability of the Borrower to repay the Proposed Loan or a Loan acceptable to the Borrower; and,

  - To present the Loan documents, including the disclosures and notices of rights to the Borrower and to advise the Borrower about the foregoing and whether the Borrower should seek the advice of independent legal counsel prior to proceeding with the transaction.

*The foregoing duties and obligations include offering advice and recommendations to the Borrower (within the course and scope of the agency relationship established) and to provide the necessary information to assist the Borrower in making an informed and considered decision whether to proceed with the Proposed Loan or a Loan acceptable to the Borrower.*

- The MLB/MLO (Originating Agent) exclusively representing the Private Investors/Lenders to originate the loan owes the duties and obligations to the Private Investors/Lenders in accordance with applicable California and Federal Law and shall accomplish the services described below:

  - Reasonable care, integrity, honesty and loyalty in dealings with the Principal(s);

  - Disclosure of material loan terms or any other material facts and investment risks that may affect the decision of the Private Investors/Lenders to make the Loan and extend credit to the Borrower;

  - Confidentiality unless the information must be disclosed to the other Principal(s) to permit the Principal(s) receiving the disclosure(s) to make informed and considered decisions whether to extend credit or to borrow;

**EXHIBIT C**                                                        **Page 97**

- To conduct reasonable due diligence on the Borrower and on the Security Property, including obtaining a preliminary "title" and an appraisal report estimating the current market value of the Security Property; obtaining credit reports, tax returns, and/or financial statements and verifications of employment, income, and funds on deposit with financial institutions regarding the Borrower;

- To underwrite the extension of credit to the Borrower by (among others) processing a Loan application, establishing loan-to-value and debt-to-income ratios, complying with applicable federal and state law including completing required disclosures and notices of rights, and by analyzing the ability of the Borrower to repay the Proposed Loan or a Loan acceptable to the Borrower; and,

- To present the Loan documents, including the disclosures and notices of rights to the Private Investors/Lenders and to advise the each of the Lenders about the foregoing and whether the Private Investors/Lenders should seek the advice of independent legal counsel prior to proceeding with the transaction.

*Each of the foregoing duties, including the disclosure of material facts and investment risks is to provide the Private Investors/Lenders with sufficient information so they each may make an informed and considered decision whether to proceed with the Proposed Loan or a Loan acceptable to the Borrower.*

Because of the foregoing bifurcation of agency relationships, MLB/MLO is exclusively representing the Private Investors/Lenders to originate the loan and is neither an agent nor a subagent of the Borrower. The Cooperating MLB/MLO is exclusively representing the Borrower and is neither an agent nor subagent of the Private Investors/Lenders. Any reference in the Agreement to Procure a Lender to *dual agency* is, therefore, no longer operative.

Each MLB/MLO shall provide no less than the minimum services, as set forth above, as a predicate to receiving separate compensation from each Principal in the Proposed Loan Transaction. The Borrower shall compensate the MLB/MLO's in the Agreement to Procure Lender.

MLB/MLO **ELITE EQUITY CONSULTANTS, INC. (BRE LICENSE #01517794, NMLS #368970),** exclusive
      agent of the Borrower (Cooperating Broker)

MLB/MLO **RUSHMYFILE, INC.** exclusive agent of the Private Investors/Lenders
      (Originating Agent)

I/we have read, understood, agreed to, and have received a copy of this Addendum.

**BORROWER(S)**

Dated: 12/6/19

WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 - (Signature of Borrower)

Dated: 12/6/19

LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 - (Signature of Co-Borrower)

Dated: 12/6/19

WAYNE H. PLATT - (Signature of Co-Borrower)

**EXHIBIT C**                                    **Page 98**

**MLB/MLO (Cooperating Broker)**

ELITE EQUITY CONSULTANTS, INC., BROKER

Dated: _____

_____
- MLB/MLO's Representative

(Responsible MLB/MLO's Initials): _____

**MLB/MLO (Originating Agent)**

RUSHMYFILE, INC.

Dated: _____

_____
ANDREW DIOLI - MLB/MLO's Representative

(Responsible MLB/MLO's Initials): _____

**Approved by:**

**PRIVATE INVESTORS/LENDERS**

X _____    Date: _____
  EXHIBIT D

**EXHIBIT C**                                    **Page 99**

# RUSHMYFILE, INC.

**380 BEACH RD., SUITE B**
**BURLINGAME, CA 94010**

**LOAN NO:** ▬▬▬1465

## ECOA NOTICE

IT IS ILLEGAL TO DISCRIMINATE IN THE PROVISION OF OR IN THE AVAILABILITY OF FINANCIAL ASSISTANCE BECAUSE OR THE CONSIDERATION OF:

1. **TRENDS, CHARACTERISTICS OR CONDITIONS IN THE NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION, UNLESS THE FINANCIAL INSTITUTION CAN DEMONSTRATE IN THE PARTICULAR CASE THAT SUCH CONSIDERATION IS REQUIRED TO AVOID AN UNSAFE UNSOUND BUSINESS PRACTICE; OR**

2. **RACE, COLOR, RELIGION, SEX, MARITAL STATUS, NATIONAL ORIGIN, OR ANCESTRY.**

IT IS ILLEGAL TO CONSIDER THE RACIAL, ETHNIC, RELIGIOUS, OR NATIONAL ORIGIN COMPOSITION OF A NEIGHBORHOOD OR GEOGRAPHICAL AREA SURROUNDING A HOUSING ACCOMMODATION OR WHETHER OR NOT SUCH COMPOSITION IS UNDERGOING CHANGE, OR IS EXPECTED TO UNDERGO CHANGE, IN APPRAISING A HOUSING ACCOMMODATION OR IN DETERMINING WHETHER OR NOT, OR UNDER WHAT TERMS AND CONDITIONS, TO PROVIDE FINANCIAL ASSISTANCE.

THESE PROVISIONS GOVERN FINANCIAL ASSISTANCE FOR THE PURPOSE OF THE PURCHASE, CONSTRUCTION, REHABILITATION, OR REFINANCING OF ONE-TO-FOUR UNIT FAMILY RESIDENCES OCCUPIED BY THE OWNER AND FOR THE PURPOSE OF THE HOME IMPROVEMENT OF ANY ONE-TO-FOUR UNIT FAMILY RESIDENCE.

*IF YOU HAVE QUESTIONS ABOUT YOUR RIGHTS, OR IF YOU WISH TO FILE A COMPLAINT, CONTACT THE MANAGEMENT OF THIS FINANCIAL INSTITUTION OR THE DEPARTMENT OF REAL ESTATE AT ONE OF THE FOLLOWING LOCATIONS:*

2550 Mariposa Mall, Suite 3070
Fresno, CA 93721-2273

2201 Broadway
P.O. Box 187000 (mailing address)
Sacramento, CA 95818-7000

320 West 4th Street, Suite 350
Los Angeles, CA. 90013-1105

1350 Front Street, Suite 1063
San Diego, CA 92101-3687

1515 Clay Street, Suite 702
Oakland, CA 94612-1462

ACKNOWLEDGMENT OF RECEIPT

I/(WE) RECEIVED A COPY OF THIS NOTICE ON: _____12/6/19_____

_____    12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
/Date

_____    12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
/Date

_____    12/6/19
WAYNE H. PLATT – Co-Borrower    /Date

**EXHIBIT C**                                **Page 100**

## REQUEST FOR TAXPAYER IDENTIFICATION NUMBER AND CERTIFICATION

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, you must apply for it with the IRS.

SSN: _____ Employer Identification Number:

Your name exactly as it appears under the number above:  *WAYNE HOWARD PLATT*

Certification:

Under penalties of perjury, I certify that:

1.  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3.  I am a U.S. person (including a U.S. resident alien).

Sign Here: Signature of U.S. Person: _____

**EXHIBIT C**                    **Page 101**

## REQUEST FOR TAXPAYER IDENTIFICATION NUMBER AND CERTIFICATION

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, you must apply for it with the IRS.

SSN: ███████████████████    Employer Identification Number:

Your name exactly as it appears under the number above: Lisa Frances Platt

Certification:

Under penalties of perjury, I certify that:

1.  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3.  I am a U.S. person (including a U.S. resident alien).

Sign Here: Signature of U.S. Person: _____

**EXHIBIT C**                    **Page 102**

# RUSHMYFILE, INC., AS AGENT FOR CREDITOR FOR DISCLOSURE PURPOSES

380 BEACH RD., SUITE B
BURLINGAME, CA 94010

## FIRE INSURANCE AUTHORIZATION

Loan No: ████1465

To:    EXHIBIT D
c/o SUPERIOR LOAN SERVICING
7525 TOPANGA CANYON BLVD
CANOGA PARK, CA 91303

[X]     I will obtain and hand you fire insurance, with loss payable clause in favor of Lender, in an amount equal to the full replacement cost of all structures located on the property herein described with extended coverage endorsement. In the event that I fail to provide adequate insurance prior to the close of this loan, I authorize you to provide adequate insurance through any agent or broker you may select and to pay the premiums therefor and deduct the same from loan funds accruing to me.

[ ]     You are hereby authorized to order fire insurance, with loss payable clause in favor of Lender, in an amount equal to the full replacement cost of all structures located on the property herein described with extended coverage endorsement, and to pay the premiums therefor and deduct the same from funds accruing to me. I understand that I may choose the agent from whom fire insurance is to be obtained. If I have not designated an agent by such time as you are ready to place the order for insurance, you may select the agent.

This insurance authorization is additionally directed to the Lender and or their Servicing

Agent. I hereby acknowledge receipt of a copy of this insurance authorization.

_____    12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
/Date

_____    12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-
Borrower                                                     /Date

_____    12/6/19
WAYNE H. PLATT – Co-Borrower                                 /Date

**EXHIBIT C**                                    **Page 103**

# RUSHMYFILE, INC., AS AGENT FOR CREDITOR FOR DISCLOSURE PURPOSES

380 BEACH RD., SUITE B
BURLINGAME, CA 94010

Loan No: ████1465

## HAZARD INSURANCE DISCLOSURE (CAL. CIVIL CODE § 2955.5)

### Pursuant to Civil Code § 2955.5(a):

No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property.

"Hazard insurance coverage" means insurance against losses caused by perils which are commonly covered in policies described as a "Homeowner's Policy," "General Property Form," "Guaranteed Replacement Cost Insurance," "Special Building Form," "Standard Fire," "Standard Fire with Extended Coverage," "Standard Fire with Special Form Endorsement," or comparable insurance coverage to protect the real property against loss or damage from fire and other perils covered within the scope of a standard extended coverage endorsement. "Improvements" means buildings or structures attached to the real property."

### Acknowledgment of Receipt by Borrower(s)

Each of the undersigned prospective borrowers acknowledge(s) that he/she has received and read a copy of this Hazard Insurance Disclosure (Cal. Civil Code § 2955.5).

Dated: 12/6/19

_____
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT
FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000

Dated: 12/6/19

_____
LISA F. PLATT, AS TRUSTEE OF THE PLATT
FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000

Dated: 12/6/19

_____
WAYNE H. PLATT

**EXHIBIT C**                                      **Page 104**

# RUSHMYFILE, INC., AS AGENT FOR CREDITOR FOR DISCLOSURE PURPOSES

380 BEACH RD., SUITE B
BURLINGAME, CA 94010

# LOAN ORIGINATION INSURANCE DISCLOSURE

Loan No: ████ 1465

I/We understand that I/We must have fire insurance in order for my/our loan to fund. I/we authorize the lender to arrange for Limited Excess Coverage on a DWELLING FORM policy so that my/our loan can fund in the event I/we do not provide fire and hazard insurance prior to the close of escrow.

In the event I/we allow our insurance to lapse/expire at any time during the term of the loan, I/we authorize **SUPERIOR LOAN SERVICING, INC.** to arrange for Limited Excess Coverage on a dwelling form.

I/we understand that if Limited Excess Coverage is arranged I/we may cancel this Limited Excess Coverage at any time and receive a refund for the unearned premium once I/we are able to provide the lender with my/our own fire insurance policy. I/we understand that the limited excess coverage is for the property located at **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049.** The amount of the limited excess coverage is in accordance with the insurance company's rates and the cost of the limited excess coverage is in accordance with the insurance company's rates.

I/we understand that the LIMITED EXCESS INSURANCE PROVIDED IS PROVIDED ON A DWELLING FORM WHICH COVERS ONLY STRUCTURES. THE INSURANCE MAY NOT BE ADEQUATE AND, AMONG OTHER THINGS DOES NOT PROVIDE PERSONAL PROPERTY, LIABILITY, WORKERS' COMPENSATION, EARTHQUAKE, FLOOD OR LANDSLIDE COVERAGE. PLEASE NOTE THAT THIS IS EXCESS COVERAGE OVER ANY OTHER VALID AND/OR COLLECTIBLE INSURANCE ON THIS BUILDING. I/we understand that the cost of this coverage ordered by me/us may be HIGHER than that which is available to me/us in the standard insurance market. I/WE UNDERSTAND THAT I/WE AM ENCOURAGED TO PROVIDE THE LENDER WITH MY/OUR OWN FIRE INSURANCE POLICY AS SOON AS POSSIBLE.

_____     12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000–
Borrower                                                                                      /Date

_____     12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                                                   /Date

_____     12/6/19
WAYNE H. PLATT – Co-Borrower                                                    /Date

**EXHIBIT C**                                                              **Page 105**

# DECLARATION OF ORAL DISCLOSURE

Escrow No. 20784-KT                                    Date: DECEMBER 6, 2019

Each item checked below has been explained to WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT and the Borrower(s) have been asked to initial each such item, only if they fully understand the item explained.

- INTEREST RATE
- MONTHLY PAYMENT
- ANNUAL PERCENTAGE RATE (APR)
- EXPLANATION OF MONTHLY PAYMENT
    (Interest only, amortized, partially amortized)
- TERM OF LOAN
- BALLOON PAYMENT
- LATE CHARGES AND WHEN ASSESSED
- PREPAYMENT PENALTY AND PRIVILEGE
- TOTAL INTEREST FOR THE TERM OF THE LOAN
- COMMISSION OR LOAN ORIGINATION FEES
- ESCROW AND LOAN PROCESSING CHARGES
- DUE ON SALE CLAUSE
- ACCRUED INTEREST, IF ANY, ON FIRST PAYMENT
- RIGHT TO CANCEL PURSUANT TO REGULATION Z
- ARBITRATION AGREEMENT
- OTHER

THE UNDERSIGNED AGREES TO PAY COMPANY THE SUM OF $367,350.00 AS BROKERAGE COMMISSION FOR OBTAINING A LENDER FOR THIS LOAN AND IS AWARE THAT STATE LAW REGULATES SUCH COMMISSION AS FOLLOWS: ON LOANS UNDER $30,000.00, SECURED BY FIRST TRUST DEEDS, 5% OF THE PRINCIPAL AMOUNT OF THE LOAN IF THE LOAN TERM IS LESS THAN 3 YEARS AND 10% IF THE LOAN TERM IS MORE THAN 3 YEARS. ON LOANS UNDER $20,000.00 SECURED BY JUNIOR LIENS, 5% OF THE PRINCIPAL AMOUNT OF THE LOAN IF THE LOAN TERM IS LESS THAN 2 YEARS, 10% IF MORE THAN 2 YEARS BUT LESS THAN 3 YEARS, AND 15% IF 3 YEARS OR MORE. COMMISSIONS AND COSTS ARE NOT REGULATED ON LOANS SECURED BY FIRST TRUST DEED WHERE THE PRINCIPAL AMOUNT OF THE LOAN IS $30,000.00 OR MORE, OR ON LOANS SECURED BY OTHER THAN FIRST TRUST DEEDS, WHERE THE PRINCIPAL AMOUNT OF THE LOAN IS $20,000.00 OR MORE, OR ON ANY LOAN REGARDLESS OF AMOUNT WHICH IS NOT SECURED BY A DEED OF TRUST ON A SINGLE FAMILY HOME OR 1-4 UNITS.

_____    12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
                                                                              /Date

_____    12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                              /Date

_____    12/6/19
WAYNE H. PLATT – Co-Borrower                                 /Date

Executed at _____ LA , CA _____
            City and State

_____
Signing Agent Signature/Please print name after signature

**PLEASE READ PARAGRAPH ONE AND BE SURE THAT BORROWER HAS BEEN EXPLAINED ALL ITEMS AND THEY INITIAL WHERE INDICATED.**

**EXHIBIT C**                                    **Page 106**

# RUSHMYFILE, INC., AS AGENT FOR CREDITOR FOR DISCLOSURE PURPOSES

380 BEACH RD., SUITE B
BURLINGAME, CA 94010

## BALLOON PAYMENT DISCLOSURE

**Date: DECEMBER 6, 2019**

**Borrower:** WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED

NOVEMBER 7, 2000 AND WAYNE H. PLATT

**Loan Number:** ████████1465

BECAUSE YOU HAVE APPLIED FOR A "PARTIALLY AMORTIZING" LOAN, IN ADDITION TO THE REQUIRED MONTHLY PAYMENTS OF <u>$71,881.03</u>, IN 24 MONTHS THE ENTIRE OUTSTANDING PRINCIPAL SUM AND ACCRUED INTEREST (estimated to be) <u>$7,797,740.28</u> WILL BE DUE AND PAYABLE. IF YOU DO NOT HAVE PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.

I/WE ACKNOWLEDGE RECEIPT OF THE ABOVE ON ____12/6/19____ AND

I/WE AM AWARE I HAVE A BALLOON PAYMENT DUE ON <u>01/01/2022</u>

_____     12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
/Date

_____     12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
/Date

_____     12/6/19
WAYNE H. PLATT – Co-Borrower
/Date

**EXHIBIT C**                                          **Page 107**

# CONDITIONAL LOAN APPROVAL

| | |
|---|---|
| Borrower:<br>WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 | Property Address:<br>205 NORTH TIGERTAIL ROAD<br>LOS ANGELES, CA 90049 |
| Co-Borrower:<br>LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 | Property Address:<br>205 NORTH TIGERTAIL ROAD<br>LOS ANGELES, CA 90049 |
| Co-Borrower:<br>WAYNE H. PLATT | Property Address:<br>205 NORTH TIGERTAIL ROAD<br>LOS ANGELES, CA 90049 |
| Date:<br>DECEMBER 6, 2019 | |

Lender has conditionally approved Borrower for a loan in a certain amount as evidenced by the Note and Mortgage that has been executed or will be executed by Borrower (the Note and Mortgage are collectively referred to as the "Loan"). This conditional loan approval is subject to the following:

    1.    No Loan Approval Until Loan Disbursed. Lender has not and will not fully approve the Loan until Lender has deposited funds into an escrow account and has instructed the escrow company to disburse the funds to Borrower directly and/or to third parties on Borrower's behalf. No oral modification of this condition is valid or effective.

    2.    Other Conditions. Lender will not fully approve the Loan until other conditions and requirements by Lender not specified in this document have been satisfied to Lender's satisfaction, in its sole discretion.

By signing below, I understand and agree to the foregoing and execute this document on the date set forth above.

_12/6/19_

WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower       /Date

_12/6/19_

LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower     /Date

_12/6/19_

WAYNE H. PLATT – Co-Borrower     /Date

**EXHIBIT C**            **Page 108**

# RUSHMYFILE, INC.
### 380 BEACH RD., SUITE B
### BURLINGAME, CA 94010

# NOTICE OF MORTGAGE LOAN SERVICING
# DISCLOSURE STATEMENT

NOTICE TO MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RIGHTS. READ THIS STATEMENT AND SIGN IT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you may be applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2601 et seq.), you may have certain rights under that Federal law. This statement tells you about those rights. It also tells you what the chances are that the servicing of this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments. If your loan servicer changes there are certain procedures that must be followed. This statement generally explains those procedures.

<u>Transfer practices and requirements</u>

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the date of the transfer. The new loan servicer must also send you notice within 15 days after the date of the transfer. Also, a notice of prospective transfer may be provided to you at settlement (when title to your new property is transferred to you) to satisfy these requirements. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you under certain limited circumstances, when your servicer is changed abruptly. This exception applies only if your servicer is fired for cause, is in bankruptcy proceedings, or is involved in a conservatorship or receivership initiated by a Federal agency.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

<u>Complaint Resolution</u>

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights, <u>whether or not your loan servicing is transferred.</u> If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than a notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

**EXHIBIT C**                    **Page 109**

Damages and Costs

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

Servicing Transfer Estimate by Original Lender

The following is the best estimate of what will happen to the servicing of your mortgage loan:

1.    ☒ We do not service mortgage loans. The following person/entity shall be servicing the loan:

SUPERIOR LOAN SERVICING, 7525 TOPANGA CANYON BLVD, CANOGA PARK, CA 91303

OR

2.    ☐ We are able to service this loan and presently intend to do so. However, that may change in the future. For all of the loans that we made in the 12 month period after your loan is funded, we estimate that the chances that we will transfer the servicing of those loans is between:

   ☐ 0% to 25%
   ☐ 26% to 50%
   ☐ 51% to 75%
   ☐ 76% to 100%

This is our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.    This is our record of transferring the servicing of the loans we have made in the past:

| Year | Percentage of Loans Transferred | (Rounded to nearest quartile) |
|------|---------------------------------|-------------------------------|
| 2011 | 0% | |
| 2012 | 0% | |
| 2013 | 0% | |
| 2017 | 0% | |

The estimates in 2 and 3 above, do not include transfers to affiliates or subsidiaries. If the servicing of your loan is transferred to an affiliate or subsidiary in the future, you will be notified in accordance with RESPA.

Acknowledgement of Mortgage Loan Applicant

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below.

_____                    12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000– Borrower
                                                                     /Date

_____                    12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                     /Date

_____                    12/6/19
WAYNE H. PLATT – Co-Borrower                                         /Date

**EXHIBIT C**                                          **Page 110**

## AFFIDAVIT REGARDING LOAN PURPOSE

This affidavit regarding loan purpose is dated for reference purposes on this day of DECEMBER 6, 2019. The undersigned borrower(s) ("Borrower") hereby certify and warrant to **RUSHMYFILE, INC. (CA BRE #01893519)** ("Broker") and to any lender where Broker may arrange a secured loan ("Loan") with Borrower the following facts:

1.  This Loan for Borrower shall be secured by that real property located at **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049 and including LOS ANGELES County APN: 4403-011-006,** (the "Collateral"). The Collateral **is a dwelling held for investment purposes and is not currently or intended to be occupied by Borrower;**

2.  The proceeds of the Loan shall be for either business, commercial or investment purposes;

3.  The proceeds of the Loan shall not be used primarily for agricultural, farming, personal, family, household or other consumer purposes;

4.  Any debts, mortgages or costs, which may be paid from such loan proceeds, shall be solely in connection with such business, commercial or investment purposes and not in connection with any agricultural, farming, personal, family, household or other consumer purpose.

Borrower understands that Broker and lender shall each rely upon and accept as true the representations made in this Affidavit and each such representation shall be conclusively presumed to have been relied on by Broker and lender, regardless of any investigation made or information possessed by Broker and/or lender. Each warranty, representation and agreement contained in this Affidavit is true and correct on the date hereof and shall be automatically deemed repeated and reaffirmed on the closing and funding of the secured loan. The warranties, representations and agreements set forth herein shall be cumulative and in addition to any and all other warranties, representations and agreements which Borrower shall give, or cause to be given, to Broker and/or lender, either now or hereafter.

**BORROWER IS AWARE OF THE PENALTIES OF PERJURY, WHICH INCLUDE THE EXECUTION OF A FALSE AFFIDAVIT, PURSUANT TO 18 U.S.C. SECTION 1621, AND THAT THE EXECUTION OF A FALSE AFFIDAVIT IS A CRIMINAL ACT PURSUANT TO APPLICABLE LAW.**

Witness my hand this 6th day of DEC _____, 2019

_____          12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000–
Borrower                                                          /Date

_____          12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-
Borrower                                                          /Date

_____          12/6/19
WAYNE H. PLATT – Co-Borrower                         /Date

## ATTACH NOTARY CERTIFICATE

**EXHIBIT C**                                                    **Page 111**

**LOAN NUMBER:** ████1465

# LOAN ESCROW ADDENDUM

## SOURCE OF REPAYMENT

Dear Borrower:

In order to grant your loan request, we require that you tell us your source
for repayment of your loan:

[x] Regular Monthly Payments

_____

_____

[x] Balloon Payment

_____

_____

I hereby certify that the above information is correct and I understand that the lender will rely on
these representations when making the loan.

_____                    12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED
NOVEMBER 7, 2000 – Borrower                          /Date

                                                     12/6/19
_____
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED
NOVEMBER 7, 2000 – Co-Borrower                       /Date

                                                     12/6/19
_____
WAYNE H. PLATT – Co-Borrower                         /Date

SIGNING AGENT: THIS DOCUMENT MUST BE COMPLETED BY
THE BORROWER AT TIME OF SIGNING.

**EXHIBIT C**                              **Page 112**

DATE: DECEMBER 6, 2019                                    ESCROW #: 20784-KT

## APPRAISAL REPORT NOTICE TO APPLICANT

This notice is given pursuant to Section 11423 of the California Business and Professions Code. You have a right to a copy of the appraisal report to be obtained in connection with the loan for which you are applying, provided that you have paid for the appraisal. If you want a copy of the appraisal report, please call or submit a written request to:

RUSHMYFILE, INC.
380 BEACH RD., SUITE B
BURLINGAME, CA 94010

Your request must be received by RUSHMYFILE, INC. no later than 90 days after RUSHMYFILE, INC. provides notice of the action taken on the application or a notice of incompleteness, or in the case of a withdrawn application, 90 days after the withdrawal.

The signature below acknowledges your receipt of this notice of your right to receive a copy of the appraisal report. Please return one copy of this notice and keep your copy of this notice with your other loan records.

_____          12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED
NOVEMBER 7, 2000– Borrower                              /Date

_____          12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER
7, 2000 – Co-Borrower                                   /Date

_____          12/6/19
WAYNE H. PLATT – Co-Borrower                            /Date

**EXHIBIT C**                                    **Page 113**

**\*\*WE STRONGLY SUGGEST YOU HAVE COUNSEL REVIEW PRIOR TO SIGNING\*\***

# HAZARDOUS MATERIAL CERTIFICATE AND INDEMNITY AGREEMENT

THIS HAZARDOUS MATERIALS CERTIFICATE AND INDEMNITY AGREEMENT is made this day of DECEMBER 6, 2019 by WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT ("Borrower") in favor of EXHIBIT D ("Lender").

## RECITALS

    A.    Borrower is the owner of the real property located at: **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049**, in the county of LOS ANGELES (said real property, together with any real property hereafter encumbered by the lien of the "Trust Deed" (as defined below), being herein collectively called the "Land"; the Land, together with all improvements now or hereafter located on the Land, being herein collectively called the "Property").

    B.    Lender is prepared to make and Borrower will accept a loan in the amount of **SEVEN MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS exactly, ($7,750,000.00)** (the "Loan") secured by a Trust Deed from Borrower to Lender which will encumber the property.

    C.    As a condition to making the Loan, Lender requires Borrower to provide certain warranties and indemnities concerning existing and future "Hazardous Materials" (as defined in Paragraph 7 below).

    D.    To induce Lender to consummate the above-described transaction and to lend the indicated amount to Borrower, Borrower has agreed to enter into this Agreement.

    **NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt sufficiency of which are hereby acknowledged, Borrower hereby agrees as follows:

    1. Borrower represents, warrants and covenants that Borrower has not used Hazardous Materials on, or affecting the Property in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage or disposal of Hazardous Materials and, to the best of Borrower's knowledge after having conducted an inquiry into the previous uses and ownerships of the Property, no prior owner of the Property or any existing or prior tenant, subtenant or occupant of the Property has used Hazardous Materials on, from or affecting the Property in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials.

    2. Borrower represents, warrants and covenants that Borrower has never received any notice of any violation (and is not aware of any existing violations) of federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials at the Property and, to the best of Borrower's knowledge, there have been no actions commenced or threatened by any party for noncompliance which affects the Property.

    3. Borrower represents and warrants that the Property is not shown on the list of contaminated properties maintained by any public or government agency of competent jurisdiction.

    4. Borrower shall keep or cause the Property to be kept free of Hazardous Materials except to the extent that such Hazardous Materials are approved by all applicable governmental agencies of competent jurisdiction for bulk general consumer retail distribution and which are stored, distributed, disposed of and/or used in compliance with federal, state or local laws, ordinances, rules, regulations or policies governing said storage, distribution, disposal or use. Borrower shall not cause or permit the Property to be used to generate, manufacture, refine, transport, treat, dispose of, transfer, produce or process Hazardous Materials. In addition, Borrower shall not cause or permit, as a result of an intentional or unintentional act or omission on the part of Borrower, any tenant, subtenant or occupant to release any Hazardous Materials onto the Property or onto adjacent property.

    5. Borrower shall immediately notify Lender in writing upon the occurrence of any of the following:
        (i)    the release of any Hazardous Material(s) on or about the Property;
        (ii)    receipt by Borrower or any tenant, subtenant or occupant of the Property of any notice concerning the Property of any, violation of federal, state or local laws, ordinances, rules, regulations or policies relating to any Hazardous Material(s); and
        (iii)    any violation affecting the Property of any federal, state or local laws, ordinances, rules regulations or policies relating to any Hazardous Material(s).

    6. Borrowers shall conduct and complete all investigations, studies, sampling and testing, and all removal and other actions necessary to clean up and remove all Hazardous Materials on, under, from or affecting the Property if required by and in accordance with all applicable federal, state and local laws, ordinances, rules, regulations and policies to the satisfaction of Lender, in accordance with the orders and directives of all federal, state and local governmental authorities.

    7. Borrower shall indemnify, defend and hold harmless Lender, its employees, agents, officers and directors, from and

against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever
kind of nature, including attorney fees, fees of environmental consultants and laboratory fees, known or
unknown, contingent or otherwise, arising out of or in any way related to

(i) the presence, disposal, release or threatened release of any Hazardous Materials on, over, under, from or affecting the
Property or the soil, water, vegetation, buildings, personal property, persons or animals therein;

(ii) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to
such Hazardous Materials;

(iii) any lawsuit brought or threatened, settlement reached or governmental order relating to such Hazardous Materials
with respect to Property;

(iv) any violation of laws, orders regulations, requirements or demands of government authorities or any policies or
requirements of Lender, which are based upon or in any way related to such Hazardous Materials; and/or

(v) the breach of any warranty, representation or covenant of Borrower contained in this Agreement.

The provisions of this Paragraph 7 shall remain in full force and effect notwithstanding the transfer of the Property or
Lender's security interest herein to any wholly-owned subsidiary of Lender, any transferee pursuant to a power of sale or any
transfer of Lender or its wholly-owned subsidiary.

8. Borrower agrees that in the event that the Trust Deed is foreclosed (whether judicially or by power of sale) or Borrower
tenders a deed in lieu of foreclosure, Borrower shall deliver the Property to (or shall cause all tenants of the Property to deliver,
to the extent required by applicable law) free of any and all Hazardous Materials, so that the condition of the Property shall
conform with all applicable federal, state and local laws, ordinances, rules or regulations affecting the Property. Borrower's
obligation as set forth in this Paragraph 8 is made strictly for the benefit of Lender and shall not in any way impair or affect
Lender's right to foreclosure against the Property.

9. Lender's rights under this Agreement shall be in addition to all rights to Lender under the Trust Deed, the note secured by
the Trust Deed (the "Note") and any guaranty or guaranties (whether of payment and/or performance) given to Lender in
connection with the Loan and under any other documents or instruments evidencing or securing the Loan (the Trust Deed, the
Note any such guaranty or guaranties and such other documents or instruments", as amended or modified from time to time, being
herein called the "Loan Documents"), and payments by Borrower under this Agreement shall not reduce Borrower's obligations
and liabilities under any of the Loan Documents. Borrower's obligations under this Agreement are not secured by the Trust Deed
or any other Loan Documents, but any default by Borrower under this Agreement (including without limitation, any breach of any
of Borrower's representations and warranties herein) shall, at Lender's option, constitute a default under the Note, the Trust Deed
or any of the other Loan Documents.

10. The liability of Borrower under this Agreement shall in no way be limited or impaired by, and Borrower hereby consents
to and agrees to be bound by, any amendment or modification of the provisions of the Loan Documents to or with Lender by
Borrower or any person who succeeds Borrower as owner of the Property. In addition, the liability under this Agreement shall in
no way be limited or impaired by

(i) any extensions or time for performance required by any of the Loan Documents;

(ii) any sale, assignment or foreclosure of the Note or Trust Deed or any sale or transfer of all or part of the Property;

(iii) the discharge of the Note and/or the reconveyance of the Trust Deed;

(iv) any exculpatory provisions in any of the Loan Documents limiting Lender's recourse to property encumbered by
the Trust Deed or to any other security, or limiting Lender's rights to a deficiency judgment against Borrower;

(v) the accuracy or inaccuracy of the representations and warranties made by Borrower under any of the Loan
Documents;

(vi) the release of Borrower or any other person from performance or observance of any of the Loan Documents by
operations of Law, Lender's voluntary act or otherwise;

(vii) Lender's failure to record the Trust Deed or file any UCC financing statements (or Lender's improper recording or
filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for
the Note; and, in any such case, whether with or without notice to Borrower and with or without consideration.

11. No delay on Lender's part in exercising any right, power or privilege under this Agreement shall operate as a waiver of
any such privilege, power or right.

12. The obligations hereunder of the persons and/or entities constituting Borrower and/or executing below are joint and
several. Any one or more of Borrower's shareholders, or any other party liable upon or in respect of this Agreement or the Loan,
may be released without affecting the liability of any party not so released.

13. All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes
when sent by registered or certified mail, to the addresses set forth below, or such other address of which a party shall have
notified the other party by giving such notice in writing in accordance with the foregoing requirements.

14. No provision of this Agreement may be changed, waived, discharged or terminated orally, by telephone or by any
other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge
or termination is sought.

15. Except as herein provided, this Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their
respective heirs, personal representatives, successors and assigns. Notwithstanding the foregoing, Borrower, without the prior

<div align="center">**EXHIBIT C**          **Page 115**</div>

written consent of Lender in each instance, may not assign, transfer or set over to another, in whole or in part, all or any including, but not limited to, performance of and compliance with conditions hereof.

16. For purposes of this Agreement, "Hazardous Materials" include, without limitation, urea-formaldehyde, radon asbestos, polychlorinated biphenyls, petroleum products, any flammable explosives, radioactive materials, hazardous materials, hazardous waste, hazardous or toxic substance or related materials defined in the comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 USC S9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 USC S1801, et seq.), the Resource Conservation and Recovery Act, as amended ("RCRA"), (42 USC S6901, et seq.), and in the regulations adopted and publications promulgated pursuant thereto, or any other federal, state or local governmental law, ordinance, rule or regulation.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the day and year first above written.

_____                    12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000–
Borrower                                                             /Date

_____                    12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-Borrower
                                                                    /Date

_____                    12/6/19
WAYNE H. PLATT – Co-Borrower                                        /Date


727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109 - Borrower's Address


**EXHIBIT C**                                    **Page 116**

Loan No: ████1465
Property Address: 205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049

## COMPLIANCE AGREEMENT AND RELEASE OF INFORMATION

The undersigned borrower(s), in consideration of lender disbursing loan proceeds for the purchase or refinance of, or construction of improvements on the aforementioned property, agree(s), if requested by the lender or someone acting on behalf of said lender or successor lender, to fully co-operate in adjusting for clerical errors, loss of or missing documentation, any and all loan closing documentation deemed necessary or desirable, in the reasonable discretion of lender, to enable lender to show compliance, sell, convey, seek guaranty or market said loan to any lending/buying entity.

The undersigned borrower(s) do hereby so agree and covenant as foresaid in order. Borrower would have thirty days from date of sending of documents to borrower(s) to execute new documents to correct clerical errors, or replace lost or missing documents and have back in to requesting party's office. Should borrower not comply with request, such conduct will considered a breach under the terms of the deed of trust and foreclosure could be commenced for non-compliance.

Additionally, should Borrower have any future documentation which may assist lender in making future decisions on this loan, Borrower agrees to turn over any and all information. Said information may include but is not limited to: appraisals, permits, building plans, financials, etc.

RELEASE INFORMATION: The undersigned borrower(s) do hereby authorize and instruct Broker to release all credit, property and personal information to all potential lenders to this loan. The documentation includes but is not limited to my loan application, financial statements, tax returns, credit report(s), appraisal documentation, etc. Any information which has been released prior to this authorization is deemed approved by the undersigned.

Dated effective DECEMBER 6, 2019

_____          12/6/19
WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000–
Borrower                                                                          /Date

_____          12/6/19
LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 – Co-
Borrower                                                                          /Date

_____          12/6/19
WAYNE H. PLATT – Co-Borrower                                          /Date

**EXHIBIT C**                                               **Page 117**

Loan No: ████████1465

## DECLARATION OF NON-OWNER OCCUPANCY

Borrower certifies to RUSHMYFILE, INC. ("Originator") as follows:

1.  I have applied to Originator for a trust deed loan of $7,750,000.00 secured by the real property at **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049** (the "property").

2.  Originator has stressed to me the <u>importance</u> of knowing whether I occupy or intend to occupy the Property as my principal residence.

3.  I have <u>represented</u> to Originator and again <u>represent</u> to Originator that:

A. My true and only principal residence is located at:
    727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109

B.  The Property that will secure this loan is not my principal residence.

C.  I have no intention of ever making the Property securing the Loan my principal residence.

The lender, broker, assignees and successor of the Originator may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

Dated: 12/6/19

WAYNE H. PLATT, AS TRUSTEE OF THE PLATT
FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000

Dated: 12/6/19

LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY
TRUST U/D/T DATED NOVEMBER 7, 2000

Dated: 12/6/19

WAYNE H. PLATT

**EXHIBIT C**                                                    **Page 118**

## PER DIEM INTEREST DISCLOSURE

Loan No: ████1465

California Civil Code, Section 2948.5 provides that lenders shall not require borrowers to pay interest on a mortgage loan for a period in excess of one day prior to the disbursement of loan proceeds from the escrow/title company, unless the following disclosure is made in writing to the borrower:

    4.    The amount of additional per diem (per day) interest charged to accommodate disbursement on Monday or the day following a holiday, as the case may be, and

    5.    That it may be possible to avoid the additional per diem interest charge by disbursing the loan proceeds on a day immediately following a business day.

If your loan proceeds are disbursed on a Monday or a day following a holiday, you will be charged interest beginning on the preceding business day.

The per diem (per day) interest amount on your loan is $ 2,365.9028.

You may avoid the additional per diem interest charge if the date for loan-proceeds disbursement is changed to a day immediately following a business day as defined in the Government Code.

I/We, the undersigned, acknowledge that I/we have read and understand the above, and have received a copy of this Disclosure.

Dated: 12/6/19

WAYNE H. PLATT, AS TRUSTEE OF THE
PLATT FAMILY TRUST U/D/T DATED
NOVEMBER 7, 2000

Dated: 12/6/19

LISA F. PLATT, AS TRUSTEE OF THE
PLATT FAMILY TRUST U/D/T DATED
NOVEMBER 7, 2000

Dated: 12/6/19

WAYNE H. PLATT

**EXHIBIT C**                                    **Page 119**

Loan No: ███████1465                    Date: DECEMBER 6, 2019

# ADDRESS/PHONE NUMBER CERTIFICATION
### ALL INFORMATION MUST BE COMPLETED ON THIS FORM
### WITHOUT EXCEPTION

TRUSTOR: **WAYNE H. PLATT AND LISA F. PLATT, AS TRUSTEES OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000 AND WAYNE H. PLATT**

I hereby certify that the subject property is located at the address indicated below, and that the correct mailing address of the Trustor is also indicated below:

The complete PROPERTY address is as follows: **205 NORTH TIGERTAIL ROAD, LOS ANGELES, CA 90049**

The complete MAILING address is as follows: **727 SAPPHIRE STREET, UNIT 201, SAN DIEGO, CA 92109**

If the MAILING ADDRESS or PROPERTY ADDRESS is different than noted above, please indicate changes.

**PLEASE PROVIDE THE FOLLOWING CONTACT INFORMATION FOR EACH BORROWER:**

Borrower: **WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000**

Home Phone No: ████████████

Work Phone No: _____

Cell Phone No*: _____

Personal Email Address: ████████████████████

Business Email Address: _____

Co-Borrower:  LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY TRUST U/D/T DATED NOVEMBER 7, 2000

Home Phone No: ██████████

Work Phone No: _____

Cell Phone No*: _____

Personal Email Address: ████████████████████

Business Email Address: _____

**EXHIBIT C**                    **Page 120**

**Co-Borrower: WAYNE H. PLATT**

Home Phone No: ▮▮▮▮▮▮▮▮▮▮

Work Phone No: _____

Cell Phone No*: _____

Personal Email Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Business Email Address: _____


*By including your cell phone number you are giving authorization to contact you at that number.

**EXHIBIT C**                    **Page 121**

**PLEASE PROVIDE THE FOLLOWING INFORMATION <u>ON</u>
EACH BORROWER'S CLOSEST RELATIVE NOT LIVING WITH YOU:**

Borrower: <u>WAYNE H. PLATT, AS TRUSTEE OF THE PLATT FAMILY
TRUST U/D/T DATED NOVEMBER 7, 2000</u>

        Closest Relative: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

        Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

        Home Phone No: ▓▓▓▓▓▓▓▓

        Work Phone No: _____

Dated: 12/6/19 _____    _____

                           WAYNE H. PLATT, AS TRUSTEE OF THE
                           PLATT FAMILY TRUST U/D/T DATED
                           NOVEMBER 7, 2000

Co-Borrower: **LISA F. PLATT, AS TRUSTEE OF THE PLATT FAMILY
TRUST U/D/T DATED NOVEMBER 7, 2000**

        Closest Relative: ▓▓▓▓▓▓▓▓▓▓

        Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

        Home Phone No: ▓▓▓▓▓▓▓

        Work Phone No: _____

Dated: 12/6/19 _____    _____

                           LISA F. PLATT, AS TRUSTEE OF THE
                           PLATT FAMILY TRUST U/D/T DATED
                           NOVEMBER 7, 2000

**EXHIBIT C**                    **Page 122**

**Co-Borrower: WAYNE H. PLATT**

**Closest Relative:** _____

**Address:** _____

**Home Phone No:** _____

**Work Phone No:** _____

Dated: _____    _____
                                    WAYNE H. PLATT

**EXHIBIT C**                                    **Page 123**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY) [Dkt. No. 170]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 10, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2**. **SERVED BY UNITED STATES MAIL**:
On **December 10, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE:** Honorable Sheri Bluebond, U.S. Bankruptcy Court, 255 E. Temple St., Suite 1534, Los Angeles, CA 90012
**OUST:** 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017

☐ Service information continued on attached page

**3**. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 10, 2019 | Victoria Castrellon | /s/ Victoria Castrellon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

# ADDITIONAL SERVICE LIST

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**ATTORNEY FOR CREDITOR BEVERLY LOAN COMPANY: Paul M Brent**    snb300@aol.com

**ATTORNEY FOR CHAPTER 7 TRUSTEE:  Carolyn A Dye**    trustee@cadye.com

**ATTORNEY FOR DEBTOR:  James R Felton**    jfelton@gblawllp.com, nknadjian@gblawllp.com

**ATTORNEY FOR CREDITOR HSBC BANK USA, N.A. AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS, INC. MORTGAGE PASS-THROUG CERTIFICATES, MLMI SERIES 2006-A1; MR. COOPER (fka NATIONSTAR MORTGAGE LLC) AS SERVICER: Todd S Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com

**ATTORNEY FOR CREDITOR PLATINUM LOAN SERVICING, INC.:  Lewis R Landau**    Lew@Landaunet.com

**ATTORNEY FOR UST:  Kenneth G Lau**    kenneth.g.lau@usdoj.gov

**CHAPTER 7 TRUSTEE:  Sam S Leslie (TR)**    sleslie@trusteeleslie.com, sleslie@ecf.axosfs.com;trustee@trusteeleslie.com

**INTERESTED PARTY:  David W. Meadows**    david@davidwmeadowslaw.com

**ATTORNEY FOR CREDITOR DAIMLER TRUST:  Randall P Mroczynski**    randym@cookseylaw.com

**ATTORNEY FOR DEBTOR:  Douglas M Neistat**    dneistat@gblawllp.com, mramos@gblawllp.com

**INTERESTED PARTY:  Valerie Smith**    claims@recoverycorp.com

**OUST:  United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

**ATTORNEY FOR CREDITOR ELDERLIFE FINANCIAL:  Alan I White**    aiwhitelaw@gmail.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**